No. 23-3787

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

LOURDES MATSUMOTO, et al.,

*Plaintiffs-Appellees,*

*v.*

RAÚL LABRADOR, in his capacity as
the Attorney General for the State of Idaho,

*Defendant-Appellant,*

On Appeal from the United States District Court
for the District of Idaho

No. 1:23-cv-00323-DKG
The Honorable Debora K. Grasham

## OPENING BRIEF OF APPELLANT

RAÚL R. LABRADOR
*Attorney General*

Idaho Office of the Attorney General
700 W. Jefferson St.
Suite 210
Boise, ID 83720
(208) 334-2400
josh.turner@ag.idaho.gov
james.craig@ag.idaho.gov
aaron.green@ag.idaho.gov

JOSHUA N. TURNER
*Acting Solicitor General*

James E. M. Craig
*Chief, Civil Litigation and
Constitutional Defense*

Aaron M. Green
*Deputy Attorney General*

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

JURISDICTIONAL STATEMENT ............................................................................ 3

ISSUES FOR REVIEW ............................................................................................ 4

STATEMENT OF THE CASE .................................................................................. 5

STANDARD OF REVIEW ........................................................................................ 8

SUMMARY OF THE ARGUMENT ........................................................................ 10

ARGUMENT ........................................................................................................... 11

I.    Plaintiffs' Claims Are Barred By The Eleventh Amendment .................... 11

II.   Plaintiffs Lack Article III Standing ............................................................ 16

      A. Plaintiffs lack a concrete and particularized injury ............................ 17

      B. Plaintiffs' alleged harms lack traceability and redressability ............. 19

III.  Plaintiffs Have Not Shown Entitlement To A Preliminary Injunction ..... 23

      A. Plaintiffs have no likelihood of success on the merits ....................... 23

      B. Plaintiffs have not demonstrated irreparable harm ............................. 35

      C. The balance of equities and public interest tip against Plaintiffs ....... 38

CONCLUSION ....................................................................................................... 38

# TABLE OF AUTHORITIES

## CASES

*Alfred L. Snapp & Son, Inc. v. P.R. ex rel Barez*,
 458 U.S. 592 (1982) ...................................................................38

*Allen v. Wright*,
 468 U.S. 737 (1984) ...................................................................19

*All. for the Wild Rockies v. Cottrell*,
 632 F.3d 1127 (9th Cir. 2011)....................................................37

*Alonso v. State*,
 228 So.3d 1093 (Ala. Crim. App. 2016) ....................................35

*Ariz. Dream Act Coal. v. Brewer*,
 757 F.3d 1053 (9th Cir. 2014).....................................................37

*Brandenburg v. Ohio*,
 395 U.S. 444 (1969) ...................................................................28

*Beauharnais v. People of Ill.*,
 343 U.S. 250 (1952) ...................................................................32

*Boyce Motor Lines v. United States*,
 342 U.S. 337 (1952) ...................................................................33

*California v. Texas*,
 141 S. Ct. 2104 (2021) ......................................................... 19, 20

*Cal. Pro-Life Council, Inc. v. Getman*,
 328 F.3d 1088 (9th Cir. 2003).....................................................36

*Cameron v. Johnson*,
 390 U.S. 611 (1968) ...................................................................33

*City of Erie v. Pap's A.M.*,
 529 U.S. 277 (2000) ...................................................................27

*Clapper v. Amnesty Int'l USA*,
 568 U.S. 398 (2013) ...................................................................20

*Commonwealth v. McGhee*,
   35 N.E.3d 329 (Mass. 2015) ........................................................................35

*DISH Network Corp. v. F.C.C.*,
   653 F.3d 771 (9th Cir. 2011) ........................................................................23

*Ex parte Ayers*,
   123 U.S. 443 (1887) ........................................................................12

*Ex parte Young*,
   209 U.S. 123 (1908) ........................................................................11, 12, 17

*Ford v. State*,
   262 P.3d 1123 (Nev. 2011) ........................................................................35

*Freedom to Travel Campaign v. Newcomb*,
   82 F.3d 1431 (9th Cir. 1996) ........................................................................33

*Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) ........................................................................17

*Garnier v. O'Connor-Ratcliff*,
   41 F.4th 1158 (9th Cir. 2022) ........................................................................9

*Giboney v. Empire Storage & Ice Co.*,
   336 U.S. 490 (1949) ........................................................................29

*Grayned v. City of Rockford*,
   408 U.S. 104 (1972) ........................................................................33

*Hans v. Louisiana.*,
   134 U.S. 1 (1890) ........................................................................11

*Hill v. Colorado*,
   530 U.S. 703 (2000) ........................................................................33

*Hum. Life of Wash. Inc. v. Brumsickle*,
   624 F.3d 990 (9th Cir. 2010) ........................................................................33

*Kolender v. Lawson*,
   461 U.S. 352 (1983) ........................................................................32

*Leavitt v. Jane L.*,
   518 U.S. 137 (1996) ........................................................................31

*Long v. Van de Kamp,*
    961 F.2d 151 (9th Cir. 1992) ..............................................................15

*Lopez v. Candaele,*
    630 F.3d 775 (9th Cir. 2010) ..............................................................18

*LA All. For Hum. Rts. v. Cnty. Of L.A.,*
    14 F.4th 947 (9th Cir. 2021) ....................................................... 8, 16

*L.A. Cnty. Bar Ass'n v. Eu,*
    979 F.2d 697 (9th Cir. 1992) ..............................................................12

*Lujan v. Defs. Of Wildlife,*
    504 U.S. 555 (1992) ...................................................................... 17, 19

*Marquez-Reyes v. Garland,*
    36 F.4th 1195 (9th Cir. 2022) ...................................................... 27, 37

*Matter of Doe,*
    170 Idaho 901, 517 P.3d 830 (2022) ..................................................20

*Nelson v. Evans,*
    170 Idaho 887, 517 P.3d 816 (2022) ..................................................20

*Newman v. Lance,*
    129 Idaho 98, 922 P.2d 395 (1996) ............................................. 12, 13

*Nordyke v. King,*
    319 F.3d 1185 (9th Cir. 2003) ............................................................28

*Noto v. United States,*
    367 U.S. 290 (1961) ...........................................................................28

*Parham v. J.R.,*
    442 U.S. 584 (1979) ..................................................................... 20, 38

*People v. Cardenas,*
    338 P.3d 430 (Colo. App. 2014) .........................................................35

*Planned Parenthood of Idaho, Inc. v. Wasden,*
    376 F.3d 908 (9th Cir. 2004) ....................................................... 14, 15

*Prince v. Massachusetts,*
    321 U.S. 158 (1944) ...........................................................................38

*P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*,
506 U.S. 139 (1993) ............................................................ 3, 12

*Rehaif v. United States*,
139 S. Ct. 2191 (2019) ............................................................ 19

*Santa Monica Food Not Bombs v. City of Santa Monica*,
450 F.3d 1022 (9th Cir. 2006) .......................................... 27, 28

*Seminole Tribe of Fla. v. Fla.*,
517 U.S. 44 (1996) .................................................................. 11

*Snoeck v. Brussa*,
153 F.3d 984 (9th Cir. 1998) ................................................. 18

*Spirit of Aloha Temple v. Cnty. Of Maui*,
49 F.4th 1180 (9th Cir. 2022) ............................................... 24

*State v. Bryant*,
953 So.2d 585 (Fla. App. 2007) ............................................ 35

*State v. Clark*,
135 Idaho 255, 16 P.3d 931 (2000) ....................................... 21

*State v. Manzanares*,
152 Idaho 410, 423-26, 272 P.3d 382, 395-98 (2012) ......... 29

*State v. Scotia*,
704 P.2d 289 (Ariz. App. 1985) ............................................ 35

*State v. Sindak*,
116 Idaho 185, 774 P.2d 895 (1989) ..................................... 21

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) .................................................................. 20

*Streit v. Cnty. Of L.A.*,
236 F.3d 552 (9th Cir. 2001) ................................................... 9

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ............................................................... 17

*Thomas v. Anchorage Equal Rts. Comm'n*,
220 F.3d 1134 (9th Cir. 2000) ......................................... 17, 18

*Trump v. New York,*
    141 S. Ct. 530 (2020) ................................................................. 16, 18

*Troxel v. Granville,*
    530 U.S. 57 (2000) ..............................................................................20

*Twitter, Inc. v. Holder,*
    183 F. Supp. 3d 1007 (N.D. Cal. 2016)..............................................20

*Udechime v. Faust,*
    846 Fed. App'x. 583 (9th Cir. 2021) ..................................................34

*United States v. Freeman,*
    761 F.2d 549 (9th Cir. 1985) ..............................................................25

*United States v. Jin Fuey Moy,*
    241 U.S. 394 (1916) ..............................................................................9

*United States v. Kilbride,*
    584 F.3d 1140 (9th Cir. 2009)............................................................32

*United States v. Mendelsohn,*
    896 F.2d 1183 (9th Cir. 1990)............................................................25

*United States v. Mozie,*
    752 F.3d 1271 (11th Cir. 2014)..........................................................35

*United States v. Palomar-Santiago,*
    593 U.S. 321 (2021) ..............................................................................9

*United States v. Salerno,*
    481 U.S. 739 (1987) .......................................................................... 9, 24

*United States v. Snead,*
    No. 21-4333, 2022 WL 17975015 (4th Cir. 2022).............................35

*United States v. Stevens,*
    559 U.S. 460 (2010) ............................................................................29

*United States v. Thirty-Seven (37) Photographs,*
    402 U.S. 363 (1971) ............................................................................31

*United States v. Thompson,*
    896 F.3d 155 (2d Cir. 2018) ..............................................................27

*United States v. White,*
  610 F.3d 956 (7th Cir. 2010) ................................................................27

*United States v. Williams,*
  553 U.S. 285 (2008) ..........................................................27, 32, 36

*Universal Life Church Monastery Storehouse v. Nabors,*
  35 F.4th 1021 (6th Cir. 2022) ............................................................13

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.,*
  455 U.S. 489 (1982) ..........................................................................33

*Wallis v. Spencer,*
  202 F.3d 1126 (9th Cir. 2000) ............................................................20

*Whole Woman's Health v. Jackson,*
  595 U.S. 30 (2021) ............................................................................13

*Winter v. Nat. Res. Def. Council, Inc.,*
  555 U.S. 7 (2008) ........................................................................23, 36

**STATUTES**

2023 Idaho Sess. Laws 947 ..........................................................................6

18 U.S.C. § 1590 ....................................................................................6, 25

18 U.S.C. § 1591 ..................................................................................34, 35

22 U.S.C. § 7102 ........................................................................................34

28 U.S.C. § 1292 ..........................................................................................3

28 U.S.C. § 1331 ..........................................................................................3

28 U.S.C. § 1343 ..........................................................................................3

42 U.S.C. § 1983 ..........................................................................................3

Ala. Code § 13A-6-152 ..............................................................................26

Ala. Code § 13A-6-153 ..............................................................................26

Ark. Code § 5-18-103 ................................................................................26

Cal. Penal Code § 778 ........................................................................30

Cal. Penal Code § 778a ......................................................................30

Cal. Penal Code § 781 ........................................................................30

Cal. Penal Code § 782 ........................................................................30

Cal. Penal Code § 784 ........................................................................30

Cal. Penal Code § 784.5 .....................................................................30

Colo. Rev. Stat. § 18-3-504 ................................................................26

Ga. Code Ann. § 16-5-46 ...................................................................26

Idaho Code § 16-1629 ........................................................................22

Idaho Code § 18-202 ..........................................................................30

Idaho Code § 18-616 ..........................................................................31

Idaho Code § 18-622 ..........................................................................22

Idaho Code § 18-623 ....................................................................*passim*

Idaho Code § 18-1509 ........................................................................21

Idaho Code § 18-1510 ........................................................................21

Idaho Code § 18-4501 ...................................................................21, 37

Idaho Code § 18-4506 ........................................................................21

Idaho Code § 31-2603 ........................................................................13

Idaho Code § 31-2227 ........................................................................12

Idaho Code § 67-1401 ........................................................................13

720 Ill. Comp. Stat. § 5/10-9 .............................................................26

Ind. Code § 35-42-3.5-1 .....................................................................26

Ind. Code § 35-42-3.5-1.1 ..................................................................26

Ind. Code § 35-42-3.5-1.2 ...................................................................26

Ind. Code § 35-42-3.5-1.3 ...................................................................26

Ind. Code § 35-42-3.5-1.4 ...................................................................26

Ky. Rev. Stat. § 529.110 .....................................................................26

La. Stat. Ann. § 14:46.2 ......................................................................26

La. Stat. Ann. § 14:46.3 ......................................................................26

Mass. Gen. L. Ann. 265 § 50 ...............................................................26

Mass. Gen. L. Ann. 265 § 51 ...............................................................26

Mich. Comp. L. Ann. § 750.462d .........................................................26

Mich. Comp. L. Ann. § 750. 462e .........................................................26

Miss. Code Ann. § 97-3-54.1 ...............................................................26

Mont. Code Ann. § 46-2-101 ...............................................................30

N.C. Gen. Stat. § 14-43.11 ..................................................................26

Neb. Rev. Stat. § 28-830 .....................................................................26

Nev. Rev. Stat. § 201.295 ....................................................................34

Nev. Rev. Stat. § 201.300 ................................................................5, 26

Nev. Rev. Stat. § 201.354 ....................................................................26

N.Y. Penal § 135.35 ............................................................................26

N.Y. Penal § 230.34 ............................................................................26

Ohio Rev. Code Ann. § 2905.32 ...........................................................26

Or. Rev. Stat. § 131.215 ......................................................................30

Or. Rev. Stat. § 163.266 ................................................................26, 34

Tenn. Code Ann. § 39-13-308 ..............................................................26

Tenn. Code Ann. § 39-13-309 ........................................................26

Tex. Penal § 20A.01 ............................................................. 26, 34

Utah Code Ann. § 76-1-201 ..........................................................30

Utah Code Ann. §§ 76-5-308 .........................................................26

Utah Code Ann. §§ 76-5-308.1 .......................................................26

Utah Code Ann. §§ 76-5-308.5 .......................................................26

Wash. Rev. Code § 9A.04.030 ........................................................30

Wash. Rev. Code 9A.40.100 ..........................................................26

Wis. Stat § 948.051 ................................................................26

Child Protective Act, ch. 16, title 16 Idaho Code...................................22

Edmund C. Shields, Compiler & Annotator,
    *Compiled Laws of the State of Michigan* §§ 15497-15500 (1915) .................31

James G. Sweeney, et al.,
    2 *Revised Laws of Nevada* § 6445 (1912) ......................................30

## OTHER AUTHORITIES

21 Am. Jur. 2d Criminal Law § 422 (Oct. 2023 Update)................................30

Att'y Gen. Op. 23-1 ...............................................................15

*Harbor,* Webster's Online Dictionary,
    http://tinyurl.com/2vhrumpx ...................................................34

Morgan Owen, *Idaho man charged with kidnapping after taking girlfriend to Bend for abortion,*
    The Bend Bulletin (Nov. 1, 2023) http://tinyurl.com/3s4jsk3m...................7

Nicole Blanchard, *Idaho girl went out of state for an abortion. Why her boyfriend faces a criminal
    charge,* The Seattle Times, (Nov. 22, 2023) http://tinyurl.com/4y6b9vtj........7

*Recruit,* Merriam Webster's Online Dictionary,
    http://tinyurl.com/bdhwpseh ...................................................34

Complaint, *State v. Kadyn Leo Swainston*,
    CR03-23-11293, Bannock Cnty., Idaho ........................................................ 6, 37

Complaint, *State v. Rachael Marie Swainston*,
    CR03-23-11290, Bannock Cnty ..................................................................... 6

*Transport,* Webster's Online Dictionary,
    http://tinyurl.com/3x5emvu8 ....................................................................... 34

## INTRODUCTION

The people of Idaho value and protect life, whether that life is held in the womb or has been born into the world. The people of Idaho also value the parent-child relationship as of fundamental importance. And their laws reflect these values. One such law is Idaho Code § 18-623, which makes it a crime for an adult to help a pregnant, unemancipated minor get an abortion by recruiting, harboring, or transporting the pregnant minor within Idaho and—importantly—to do so with the intent to conceal the abortion from the minor's parents or guardian. In Idaho, that unlawful conduct is called "abortion trafficking."

Plaintiffs have sued the Idaho Attorney General to enjoin him from enforcing Idaho's abortion trafficking statute. They say the law prevents them from helping pregnant minors in Idaho get an abortion in another state—something they want to do without informing the minor's parents or guardian. Plaintiffs are indeed correct that the law prohibits third-party adults from engaging in specified conduct in Idaho that ultimately leads a pregnant minor to abort her baby and that is done with the intent to conceal that fatal act from the minor's parents. But not much else about Plaintiffs' claims is correct.

Plaintiffs erroneously have sued the Attorney General—and only the Attorney General—but he has immunity under the Eleventh Amendment. He lacks the necessary connection to enforcement of Idaho Code § 18-623, so Plaintiffs' Complaint fails for that reason alone. Plaintiffs have also sued before the law has ever been enforced,

against them or anyone, and they have not made the required pre-enforcement showings. So they lack standing to pursue their First and Fourteenth Amendment claims. And even if the Court were to reach the merits of Plaintiffs' preliminary injunction, Idaho Code § 18-623 does not come close to violating Plaintiffs' speech or due process rights. The law employs commonly used language that has never been held to violate the First Amendment or Fourteenth Amendment. Plaintiffs don't get to traffic minors in Idaho just because they are doing so for purposes of procuring an abortion.

Accordingly, this Court should vacate the district court's preliminary injunction and remand for dismissal.

## JURISDICTIONAL STATEMENT

Plaintiffs allege federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 as an action under 42 U.S.C. § 1983. The Attorney General contests the district court's jurisdiction based on Eleventh Amendment sovereign immunity and the lack of a justiciable controversy under Article III. The district court found that, notwithstanding the Attorney General's sovereign immunity, it had jurisdiction over Plaintiffs' claims. It further found that Plaintiffs demonstrated an injury-in-fact.

On November 22, 2023, the Attorney General filed a notice of appeal, which was 14 days after the order denying his motion to dismiss in part and granting the preliminary injunction. This Court has jurisdiction over the order denying the motion to dismiss. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 147 (1993) ("We hold that States . . . may take advantage of the collateral order doctrine to appeal a district court order denying a claim of Eleventh Amendment immunity."). This Court also has jurisdiction over the order granting the preliminary injunction as an appeal of right. 28 U.S.C. § 1292(a)(1).

3

## ISSUES FOR REVIEW

1.      Is the Idaho Attorney General immune from suit under the Eleventh Amendment when the state law at issue does not authorize him to enforce it except under narrow circumstances that Plaintiffs do not allege are present?

2.      Do the Plaintiffs have standing to challenge a law when the Plaintiff's conduct remains illegal under other state laws not challenged?

3.      Idaho Code § 18-623 criminalizes the recruiting, harboring, and transporting of minors to procure an abortion by non-parents who have the intent to conceal the abortion from the minor's parents. Similar conduct is criminalized in nearly every jurisdiction, including in the United States Code. When applied to the issue of abortion, which is illegal in Idaho, did the Plaintiffs show that Idaho Code § 18-623 is likely to violate the First and Fourteenth Amendments and did they make the required showing on the remaining *Winter* factors?

## STATEMENT OF THE CASE

It is commonplace for the law to prevent one person from taking another person out of a state, into another state, for the purpose of engaging in conduct illegal in one or both of the states. In Ohio, for example, the law provides as follows:

> "No person shall knowingly *recruit*, lure, entice, isolate, *harbor*, *transport*, provide, obtain, or maintain, or knowingly attempt to *recruit*, lure, entice, isolate, *harbor*, *transport*, provide, obtain, or maintain, another person. . . ."

Ohio Rev. Code Ann. § 2905.32(A).

Nevada similarly prohibits such conduct:

> A person is guilty of sex trafficking if the person: Induces, causes, *recruits, harbors, transports*, provides, obtains or maintains a child to engage in prostitution, or to enter any place within this State in which prostitution is practiced, encouraged or allowed for the purpose of sexual conduct or prostitution.

Nev. Rev. Stat. § 201.300(2)(a)(1).

And in Washington State, a person commits trafficking in the first degree when a person:

> *recruits, harbors, transports*, transfers, provides, obtains, buys, purchases, or receives by any means another person knowing, or in reckless disregard of the fact, (A) that force, fraud, or coercion as defined in RCW 9A.36.070 will be used to cause the person to engage in . . . forced labor; involuntary servitude; [or sex acts and prostitution].

Wash. Rev. Code 9A.40.100(1).

Even federal law criminalizes trafficking using similar language:

> Whoever knowingly *recruits, harbors, transports*, provides, or obtains by any means, any person for labor or services in violation of this chapter shall be fined under this title or imprisoned not more than 20 years, or both.

5

18 U.S.C. § 1590(a). Like its state counterparts, the federal statute defines various modes and means of taking a person from one state to another for a certain purpose, and requires a knowing mens rea when doing so.

In the 2023 legislative session, the Idaho legislature passed a law that employs the same language and the same scheme as these federal and state trafficking statutes. That law is Idaho Code § 18-623, which became effective on May 5, 2023. 2023 Idaho Sess. Laws 947. The law criminalizes "abortion trafficking," making it illegal for an adult "with the intent to conceal an abortion from the parents or guardian of a pregnant, unemancipated minor" to "procure[] an abortion . . . or obtain[] an abortion-inducing drug for the pregnant minor to use for an abortion by recruiting, harboring, or transporting the pregnant minor within" the State of Idaho. Idaho Code § 18-623(1). The law nowhere criminalizes merely counselling, fundraising, associating, or talking about abortion with anybody, including a pregnant minor.

After Idaho Code § 18-623 became law, two people trafficked a pregnant 15-year-old girl expressly for the purpose of hiding an abortion from her parents. *See* Complaint, *State v. Rachael Marie Swainston*, CR03-23-11290, Bannock Cnty., Idaho, and Complaint, *State v. Kadyn Leo Swainston*, CR03-23-11293, Bannock Cnty., Idaho. As noted in the probable cause affidavits in those cases, which charged each of the defendants with kidnaping, the people who trafficked the victim were the man who raped the victim, and his mother, who together recruited the victim into aborting her

child. *See also* Nicole Blanchard, *Idaho girl went out of state for an abortion. Why her boyfriend faces a criminal charge*, The Seattle Times, (Nov. 22, 2023) http://tinyurl.com/4y6b9vtj. The traffickers dissuaded the girl from telling her parents about the pregnancy at all. *See id.* They transported the girl to Bend, Oregon, and harbored her over the three-day journey. *Id.* The traffickers admitted that they chose Bend, because the Planned Parenthood clinic there did not require parental notification to obtain an abortion. *See also* Morgan Owen, *Idaho man charged with kidnapping after taking girlfriend to Bend for abortion*, The Bend Bulletin (Nov. 1, 2023) http://tinyurl.com/3s4jsk3m. The girl was given a medication abortion by Planned Parenthood to kill the unborn child, before being returned to Idaho. *Id.*

The facts of the Swainston case are harrowing and heartbreaking. They demonstrate the type of conduct to which Idaho Code § 18-623 could apply, even though they were not charged under that statute. And they also show that such conduct does *not* involve First Amendment speech. It involves horrible actions that harm pregnant minors, and Idaho is well within its rights to protect parents and their pregnant minor children.

Plaintiffs filed their Complaint in the instant case on July 11, 2023. In the Complaint and declarations attached to their preliminary injunction motion, they allege that they have in the past, and wish to continue to, assist minors to obtain abortions in other states, whether or not the minor's parents are aware of the abortion. 4-ER-451-454; *see also* 4-ER-409 ¶¶ 48-49, 53; 4-ER-418-420; 4-ER-424-429. This assistance has

7

or will include providing shelter for minors (e.g., harboring); 4-ER-409 ¶ 49, transportation to minors, 4-ER-409 ¶ 48; 4-ER-418-420 ¶¶ 43, 50, 59; 4-ER-426 ¶¶ 19, 23; and funding for minors to pay for transportation and shelter for the minor to obtain an abortion (e.g. recruiting, harboring, and transporting). 4-ER-410 ¶ 56; 4-ER-418-420; 4-ER-426 ¶¶ 17-23. In essence, the Plaintiffs are seeking relief to allow them to continue acts that may constitute custodial interference, harboring a runaway child, and kidnapping, by asking the Court to declare that that Idaho Code § 18-623 is unconstitutional and to grant an injunction prohibiting the Attorney General from enforcing the statute. 4-ER-436.

Plaintiffs filed a motion for temporary restraining order and preliminary injunction in the alternative on July 24, 2023, solely on the basis that the law burdened their First Amendment rights and was void for vagueness. 4-ER-355. The Attorney General opposed the motion, 3-ER-246, and also moved to dismiss on Eleventh Amendment grounds and for failure to state a claim. 3-ER-198. The Court heard oral arguments on September 14, 2023, as to the preliminary injunction and declined to hear arguments on the motion to dismiss. 2-ER-079. The Court granted Plaintiffs' motion for a preliminary injunction and granted-in-part the Attorney General's motion to dismiss as to an intra-state commerce claim. This appeal followed. 4-ER-470.

## STANDARD OF REVIEW

This Court reviews orders granting a motion for preliminary injunction de novo as to issues of law. *LA All. For Hum. Rts. v. Cnty. Of L.A.*, 14 F.4th 947, 956 (9th Cir.

2021). Moreover, in First Amendment cases, the Court reviews "constitutional facts" de novo, and reviews the application of law to facts on free speech issues de novo. *Garnier v. O'Connor-Ratcliff*, 41 F.4th 1158, 1177, n.12 (9th Cir. 2022) (citations omitted). On a denial of a motion to dismiss based on Eleventh Amendment sovereign immunity, this Court reviews the district court's reasoning de novo. *Streit v. Cnty. Of L.A.*, 236 F.3d 552, 559 (9th Cir. 2001). "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Moreover, courts must "construe statutes 'to avoid not only the conclusion that [they are] unconstitutional, but also grave doubts upon that score.'" *United States v. Palomar-Santiago*, 593 U.S. 321, 328-29 (2021) (quoting *United States v. Jin Fuey Moy*, 241 U.S. 394, 401 (1916)).

## SUMMARY OF THE ARGUMENT

The district court erred by granting the motion for preliminary injunction and denying in part the motion to dismiss for three reasons. First, the Attorney General is immune from suit under the Eleventh Amendment—he has no enforcement authority concerning this statute under any circumstances that Plaintiffs have alleged.

Second, Plaintiffs lack an Article III injury sufficient to confer jurisdiction. They lack an injury in fact because they do not plead that they have ever, or will ever, violate the specific intent requirement of Idaho Code § 18-623—and thus have no realistic fear of prosecution under that statute. They lack traceability and redressability because, while not violating Idaho Code § 18-623, Plaintiffs' past conduct and planned future conduct *does* violate several Idaho child custody and kidnapping statutes. Their conduct will remain illegal under Idaho law even if the Attorney General is enjoined from enforcing the specific Abortion Trafficking statute that they have attacked.

Third, the district court erred in granting the preliminary injunction. The district court erred by finding that the Plaintiffs are likely to succeed on their claims that they suffer a cognizable First Amendment injury by having criminal conduct or speech incident to such conduct chilled. It further erred by finding that the Plaintiffs are likely to succeed on their Fourteenth Amendment void-for-vagueness claim. The words of the statute are shared with dozens of state and federal laws, found to give fair notice of their scope. The Court also erred in finding that the public interest lies in granting an

injunction to allow the Plaintiffs to continue their criminal conduct, thus putting the Court's imprimatur on that criminal conduct.

**ARGUMENT**

The district court erred in three ways. First, the district court wrongly held that the Attorney General was subject to suit in federal court despite lacking authority to enforce Idaho Code § 18-623 against Plaintiffs. Second, the district court wrongly exercised jurisdiction over Plaintiffs' claims despite their failure to show Article III standing. And third, the district court wrongly held that Idaho Code § 18-623 likely violates the First and Fourteenth Amendments by prohibiting Plaintiffs from "recruiting, harboring, or transporting" a pregnant minor to procure an abortion with the intent to conceal that abortion from the minor's parents, that Plaintiffs would be irreparably injured by the law, and that the balance of the equities and public interest weighed in favor of enjoining the law.

## I. Plaintiffs' Claims Are Barred By The Eleventh Amendment.

The Eleventh Amendment constitutionalizes the principle "that each State is a sovereign entity in our federal system; and . . . that '[i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent.'" *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 54 (1996) (quoting *Hans v. Louisiana.*, 134 U.S. 1, 11 (1890)). In keeping with the nature of sovereignty, state officials, including the Attorney General, may not generally be sued in federal court. *See Ex parte Young*, 209 U.S. 123 (1908). "The very object and purpose of the 11th Amendment were to prevent the

indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." *P.R. Aqueduct & Sewer Auth.*, 506 U.S. at 146 (quoting *Ex parte Ayers*, 123 U.S. 443, 505 (1887)).

Under *Ex parte Young*, a narrow exception to this principle permits an aggrieved party to seek prospective relief from the action of a state official in federal court. *Ex parte Young*, 209 U.S. at 157. This exception only applies where the state officer named in the complaint has "some connection with the enforcement of the act." *Id.* The connection to the enforcement of the statute must be "fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) (citations omitted).

As a general matter, the Idaho Attorney General lacks criminal enforcement authority. That power resides with county prosecutors, to whom Idaho law has given "the primary duty of enforcing all the penal provisions of any and all statutes of this state, in any court." Idaho Code § 31-2227(1). In limited and specified circumstances, the Attorney General may assist a county prosecutor, but he may not do so "to the exclusion of" a county prosecutor. *Newman v. Lance*, 129 Idaho 98, 102, 922 P.2d 395, 399 (1996). And Idaho law is clear that such assistance requires several necessary conditions before the Attorney General has any role in enforcing Idaho's criminal laws.

First, a county prosecutor must request the assistance of the Attorney General or it must be "required public service." *See Newman*, 129 Idaho at 101, 922 P.2d at 398;

Idaho Code § 67-1401(7). That has not happened here. Second, the Attorney General must accept the request of the county prosecutor. That has not happened here. Third, the county prosecutor must petition the court in which the criminal case is pending to appoint the Attorney General as a special assistant prosecutor. *See Newman*, 129 Idaho at 103, 922 P.2d at 400; Idaho Code § 31-2603. That has not happened here. And fourth, the court must actually appoint the Attorney General as a special assistant prosecutor. *Id.* That has not happened here. Absent these contingencies, the Attorney General has no "connection with the enforcement" of any criminal act.

To bypass the Eleventh Amendment and subject the Attorney General to suit, Plaintiffs' injunction must provide real, prospective relief. That means that Plaintiffs must "direct this Court to any enforcement authority the attorney general possesses in connection with [Idaho Code § 18-623] that a federal court might enjoin him from exercising." *See Whole Woman's Health v. Jackson*, 595 U.S. 30, 43 (2021). Plaintiffs cannot do that. Since Idaho law grants enforcement authority to county prosecutors, and they are not parties to this case, enjoining the Attorney General offers Plaintiffs no relief. *See Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1033 (6th Cir. 2022).

Nevertheless, the district court believed that the Attorney General has authority to enforce Idaho Code § 18-623 because that law grants the Attorney General "the authority, at the attorney general's sole discretion, to prosecute a person for a criminal violation of this section if the prosecuting attorney authorized to prosecute criminal violations of this section refuses to prosecute violations of any of the provisions of this

13

section by any person without regard to the facts or circumstances." Idaho Code § 18-623(4). But the district court misread that provision. It does not, as the district court held, give the Attorney General "the authority to prosecute a person in the absence of the county prosecutor doing so, at his sole discretion," or give the Attorney General "some concurrent legal authority to prosecute a person under Idaho Code Section 18-623." 1-ER-027. The district court believed that the "sole discretion" language gave the Attorney General absolute discretion to determine whether the prosecuting attorney has refused to prosecute any violations under Section 18-623, but the language plainly refers to the Attorney General's prosecutorial discretion in selecting cases to prosecute once the condition granting him enforcement authority is otherwise satisfied. That means that unless Plaintiffs allege that a prosecuting attorney has refused to enforce Idaho Code § 18-623 under any facts or circumstances, then the Attorney General has no enforcement authority. Period. And of course, Plaintiffs have not alleged that fact, nor could they.

The district court's reliance on *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908 (9th Cir. 2004), was also misplaced. In *Wasden*, a county prosecutor who could prosecute the challenged statute was a named defendant, and that fact was necessary to the Court's Eleventh Amendment analysis. There was no doubt that the county prosecutor was "a proper defendant with regard to those provisions creating the potential for prosecution." *Id.* at 919. Here, by contrast, Plaintiffs name no prosecutor over whom the district court has jurisdiction, and so *Wasden* is inapposite.

14

The *Wasden* Court's finding was further based on its conclusion that, "unless the county prosecutor objects," the "attorney general may in effect deputize himself (or be deputized by the governor) to stand in the role of a county prosecutor . . . . That power demonstrates the requisite causal connection for standing purposes." *Id.* at 920. However, Idaho law gives the Attorney General no power to deputize himself and he has further disavowed any authority to deputize himself to prosecute criminal laws in the absence of a county prosecutor's request for assistance, and a court order approving that assistance, unless that authority is specifically conferred by the legislature. Att'y Gen. Op. 23-1 at 1.

To the extent *Wasden* is relevant here, it confirms that the Attorney General is "not be a proper defendant" because he "cannot direct, in a binding fashion, the prosecutorial activities of the officers who actually enforce the law or bring his own prosecution." *Wasden*, 376 F.3d at 919. Further, he cannot bring his own prosecution without decisions made by independently elected officials, over whom the Attorney General has no supervisory authority. Thus, the Attorney General's connection to the enforcement of the law is insufficient for the *Ex parte Young* exception to apply.

Under *Ex parte Young*, the Plaintiffs must also show there is a "real likelihood" that the Attorney General will employ his authority "against plaintiffs' interests." *See Long v. Van de Kamp*, 961 F.2d 151, 152 (9th Cir. 1992) (per curiam). Otherwise "the Eleventh Amendment bars federal court jurisdiction." *Id.* As discussed above, the Attorney General has no independent prosecutorial authority. Any authority he does

have completely depends upon decisions made by independent government officials over whom he has no supervisory authority—facts and decisions that have not been pled by Plaintiffs. Given the lack of independent authority to prosecute violations of the act, there is no "real likelihood" that the Attorney General will employ his authority against the Plaintiffs' interests. *Id.*

The Act may only be enforced by county prosecutors yet unnamed. Because the Attorney General would have authority under this statute only based on actions of county prosecutors and state district judges that have not yet occurred, he is not a proper defendant under *Ex parte Young*, and retains his Eleventh Amendment immunity. *Cf. Trump v. New York*, 141 S. Ct. 530, 536 (2020) (concrete injury lacking due to contingent actions of third parties). The district court erred by concluding otherwise.

## II. Plaintiffs Lack Article III Standing.

"At the preliminary injunction stage, the plaintiffs must make a clear showing of each element of standing." *LA All. For Hum. Rts.*, 14 F.4th at 956 (internal quotation and citations omitted). "To have standing, Plaintiffs must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (internal quotations and citations omitted).

Plaintiffs have failed to make a clear showing that these factors have been met, and therefore lack standing for a preliminary injunction.

### A. Plaintiffs lack a concrete and particularized injury.

For an injury in fact, a plaintiff must make a clear showing of the existence of "an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000) (quoting *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61 (1992). Where a pre-enforcement challenge is brought based on threatened enforcement of a law, a plaintiff must also demonstrate that the plaintiff has "an intention to engage in a course of conduct arguably affected with a constitutional interest," that the intended future conduct is "arguably proscribed by the statute they wish to challenge," and that the threat of future enforcement is substantial. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161-64 (2014) (cleaned up).

Plaintiffs have failed to make a clear showing that there is a substantial threat of future enforcement by the Attorney General for the same reasons that are discussed in Section I. Not only that, but Plaintiffs "must" demonstrate that there is "genuine threat of imminent prosecution." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc) (citation omitted). To be subject to suit notwithstanding the Eleventh Amendment, the official sued "must have some connection with the enforcement of the act." *Ex parte Young*, 209 U.S. at 157. "That connection must be determined under state law depending on whether and under what circumstances a particular defendant has a connection with the challenged state law." *Snoeck v. Brussa*, 153 F.3d 984, 986 (9th Cir. 1998).

As discussed *supra*, the Attorney General, both at the time the Complaint was filed and as the facts currently stand, lacks the authority to enforce the law. That is because no prosecutor has refused (or is alleged to have refused) to enforce the law without regard to the facts or circumstances of a violation of the law, no county prosecuting attorney has asked (or is alleged to have asked) for the Attorney General's assistance to enforce the law, and no Idaho district court has, at the request of a county prosecuting attorney, appointed (or is alleged to have appointed) the Attorney General to assist a county prosecutor. *See Trump*, 141 S. Ct. at 536. Plaintiffs have simply failed to make the required showing on their pre-enforcement challenge: they "do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible," and so they have not alleged "a dispute susceptible to resolution by a federal court." *Thomas*, 220 F.3d at 1140 (citation omitted). Thus, there is no threat—let alone a substantial one—that the Attorney General will prosecute Plaintiffs, and they have failed to make a clear showing of any threat of future enforcement by the Attorney General.

Separately, Plaintiffs have not pled either a concrete plan to violate Idaho Code § 18-623 or identified past conduct that violates the law with anything approaching the specificity required. *Lopez v. Candaele*, 630 F.3d 775, 787 (9th Cir. 2010). That showing must be clear on a preliminary injunction. *Id.* at 785. With the law here, "mens rea is an element of a crime, rather than a means." *See United States v. Barai*, 55 F.4th 1245, 1252 (9th Cir. 2022); *see also Rehaif v. United States*, 139 S. Ct. 2191, 2196 (2019). Plaintiffs have

not pled with specificity that they have, or will, engage in prohibited conduct with the specific intent to hide the abortion from a minor's parents. 4-ER-451-454 ¶¶ 43, 47, 55, 57. Because Plaintiffs lack a concrete plan to violate the statute, they lack an Article III injury.

### B. Plaintiffs' alleged harms lack traceability and redressability.

Plaintiffs have also failed to clearly show that any injury they may have can be traced to the Attorney General's conduct. Similarly, an injunction against the Attorney General does not redress any injury they may have. This is because no county prosecutor has been enjoined from enforcing the law, and it is also because any conduct they intend to engage in that is proscribed by Idaho Code § 18-623 remains illegal under other unchallenged Idaho laws, notwithstanding the injunction.

To have standing under Article III, a plaintiff must show a "causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant." *Lujan*, 504 U.S. at 560 (cleaned up). It must also be "likely as opposed to merely speculative that the injury will be redressed by a favorable decision." *Id* at 561. (cleaned up). For an injury to be redressable, "a court will consider the relationship between 'the judicial relief requested' and the 'injury' suffered." *California v. Texas*, 141 S. Ct. 2104, 2115 (2021) (quoting *Allen v. Wright*, 468 U.S. 737, 753 (1984)). To allow a suit to go forward where Plaintiffs' injury would not be remedied by Plaintiffs' prayer is a request for "an advisory opinion without the possibility of any judicial relief," and would "threaten to grant unelected judges a general

authority to conduct oversight of decisions of the elected branches of Government." *California*, 141 S. Ct. at 2116 (citations omitted). The traceability and redressability requirements serve to marry "a cognizable Article III injury" with "an acceptable Article III remedy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998). While "causality examines the connection between the alleged misconduct and injury . . . redressability analyzes the connection between the alleged injury and requested judicial relief." *Twitter, Inc. v. Holder*, 183 F. Supp. 3d 1007, 1011 (N.D. Cal. 2016) (citation omitted). If Plaintiffs challenge one law arguably connected to their alleged injury but fail to challenge other laws that would also cause that same injury, they have not shown a traceable injury. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410-11 (2013).

In recognition of the Constitutional interest that parents have in raising their children, Idaho law strongly protects the rights of parents as a general matter. *See e.g.*, *Troxel v. Granville*, 530 U.S. 57, 66 (2000) (parental rights generally); *Parham v. J.R.*, 442 U.S. 584, 602 (1979) (consent to medical treatment); *Wallis v. Spencer*, 202 F.3d 1126, 1142 (9th Cir. 2000) (presence of parents at medical treatment); *Matter of Doe*, 170 Idaho 901, 907, 517 P.3d 830, 836 (2022) (right to care custody and control is fundamental); *Nelson v. Evans*, 170 Idaho 887, 894-95, 517 P.3d 816, 823-24 (2022) (presumption fit parents act in best interest of children). Idaho does this through various statutory protections, criminalizing the interference with such rights by third parties.

For example, Idaho Code § 18-1509(1) prohibits the enticing of children, which is defined as "attempt[ing] to persuade, or persuad[ing], whether by words or actions or

both, a minor child under the age of sixteen (16) years to" leave their home or school, enter a vehicle or building, or enter a structure concealing the child from public view.[1] Similarly, Idaho Code § 18-4506 prohibits child custody interference, which is the "tak[ing]" and "entic[ing] away" of a minor from a parent or institution having custody of that minor. And Idaho's kidnaping statute, Idaho Code § 18-4501(2), prohibits a person from "lead[ing], tak[ing], entic[ing] away or detain[ing] a child under the age of sixteen (16) years, with intent to keep or conceal" the child from the child's parent or guardian. Providing shelter to runaway children is also illegal in Idaho. That crime is defined as "knowingly and intentionally providing housing or other accommodations to a child seventeen (17) years or younger without the authority of" the parent or guardian of the child. Idaho Code § 18-1510(1). Plaintiffs' conduct of transporting children, harboring children, and recruiting children to take them out of state without parental permission violates all of these statutes, which have not been challenged, and therefore remains illegal under Idaho law.

Just as troubling is that Plaintiffs profess concern for those circumstances in which a child is the subject of abuse from parents or others, but they do not allege or otherwise provide any evidence that they comply with Idaho's laws to report this abuse to the proper authorities. 4-ER-453-454 ¶¶ 48, 55; 4-ER-408-409 ¶¶ 43-49. Idaho law

---

[1] The Idaho Supreme Court has expressly considered and rejected a challenge to this statute on the basis of vagueness and overbreadth. *State v. Sindak*, 116 Idaho 185, 187-88, 774 P.2d 895, 897-98 (1989) (abrogated on other grounds *State v. Clark*, 135 Idaho 255, 258, 16 P.3d 931, 934 (2000)).

requires anyone with a "reason to believe" that a child has been abused to report that abuse to law enforcement or the Idaho Department of Health and Welfare. Idaho Code § 16-1605(1). Idaho law then has a detailed statutory process for handling these reports, which could include, in appropriate circumstances, the Idaho Department of Health & Welfare becoming responsible for making medical decisions for the child.[2] *See generally* Child Protective Act, ch. 16, title 16 Idaho Code; *see also* Idaho Code § 16-1629(1), (8). Idaho law does not allow third parties in Plaintiffs' positions to take it upon themselves to make medical decisions for children and to transport those children out of state for medical procedures without proper authority, whether that comes from the parents or other authority authorized by state law.

Given all of these additional criminal statutes that Plaintiffs' conduct violates, Plaintiffs have failed to make a clear showing that their alleged injury can be traceable to the provisions of Idaho Code § 18-623.

For redressability, the Plaintiffs' proposed line of conduct remains illegal under numerous other statutes. An injunction against the Attorney General does not redress their claimed injuries. This is because they could still be prosecuted for violating the other statutes. Further, an injunction against the Attorney General does not prohibit those with actual authority to prosecute violations of Idaho Code § 18-623, the county

---

[2] Idaho Code § 18-622(2)(b) allows for an abortion in cases in which a minor becomes pregnant through rape or incest and reports that crime to a law enforcement agency or child protective services.

prosecuting attorneys, from prosecuting the Plaintiffs for violating Idaho Code § 18-623.

The Bannock County prosecution of the Swainstons demonstrates the traceability and redressability defects with Plaintiffs' claims. Plaintiffs have failed to make a clear showing that their alleged injury is traceable to conduct by the Attorney General and that it would be redressed by an injunction prohibiting the Attorney General from enforcing Idaho Code § 18-623. They therefore lack standing sufficient for them to be entitled to a preliminary injunction.

## III. Plaintiffs Have Not Shown Entitlement To A Preliminary Injunction.

To obtain a preliminary injunction, Plaintiffs must show a likelihood of success on the merits, irreparable injury in the absence of an injunction, that the balance of equities tips in their favor, and that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Plaintiffs bear the burden of "demonstrat[ing] that [they] meet all four of the [*Winter*] elements." *DISH Network Corp. v. F.C.C.*, 653 F.3d 771, 776 (9th Cir. 2011). Because Plaintiffs did not demonstrate any of these elements below, the district court erred by granting Plaintiffs' motion for a preliminary injunction.

### A. Plaintiffs have no likelihood of success on the merits.

Plaintiffs facially challenge Idaho Code § 18-623 under the First and Fourteenth Amendments. Facial challenges are "generally disfavored," and Plaintiffs face a heavy burden on both claims. *See Spirit of Aloha Temple v. Cnty. Of Maui*, 49 F.4th 1180, 1188

23

(9th Cir. 2022). That is because Plaintiffs "must establish that no set of circumstances exists under which" the statute would be valid. *Salerno*, 481 U.S. at 745. Any possibility that the law "might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." *Id.* at 745.

**Plaintiffs' First Amendment Claim Fails.** Plaintiffs' First Amendment challenge fails immediately out the gate because facial challenges "are allowed against laws aimed at expressive conduct but disallowed against laws of general application not aimed at conduct commonly associated with expression." *Spirit of Aloha*, 49 F.4th at 1188. This Court has been crystal clear that "a facial challenge is proper *only* if the statute by its terms seeks to regulate spoken words or patently expressive or communicative conduct, such as picketing or handbilling, or if the statute significantly restricts opportunities for expression." *Id.* (emphasis added) (citations omitted). Idaho Code § 18-623 does not target expressive conduct, and so Plaintiffs' First Amendment facial claim necessarily fails.

Here, Idaho Code § 18-623 does not "target speech or expressive conduct," plain and simple. The law criminalizes the act of "abortion trafficking." And abortion trafficking occurs when "[a]n adult who, with the intent to conceal an abortion from the parents or guardian of a pregnant, unemancipated minor, either procures an abortion, . . . or obtains an abortion-inducing drug for the pregnant minor to use for an abortion by recruiting, harboring, or transporting the pregnant minor within this state." Idaho Code § 18-623. The elements of this crime could be set out as follows:

(1) An adult;
(2) Who recruits, harbors, or transports a pregnant, unemancipated minor within Idaho;
(3) Who procures an abortion or obtains an abortion-inducing drug for the pregnant minor to use for an abortion; and
(4) Who acts with intent to conceal the abortion from the parents or guardian of a pregnant, unemancipated minor.

Plaintiffs assume that just because their purported planned conduct may include words that it necessarily constitutes expressive conduct protected by the First Amendment. Not so. Speech that is used to commit a crime is not protected by the First Amendment. *See United States v. Mendelsohn*, 896 F.2d 1183, 1185 (9th Cir. 1990) ("Where speech becomes an integral part of the crime, a First Amendment defense is foreclosed even if the prosecution rests on words alone."); *United States v. Freeman*, 761 F.2d 549, 551 (9th Cir. 1985) ("Words alone may constitute a criminal offense.").

The United States Code, as well as the codes of Idaho and every other state, are replete with crimes that, under Plaintiffs' theory, involve speech in their commission. For example, federal law prohibits human trafficking using the same verbs Idaho Code § 18-623 uses. *See* 18 U.S.C. § 1590(a) (prohibiting knowingly recruiting, harboring, or transporting any person in violation of the statute). The State of Oregon likewise criminalizes human trafficking by using the same verbs that allegedly make Idaho's law unconstitutional under the First and Fourteenth Amendments. *See* Or. Rev. Stat. § 163.266 (prohibiting trafficking persons by knowingly recruiting, harboring, or transporting persons who will be subjected to involuntary servitude or commercial sex

acts). Countless more examples from other states exist,[3] but the point is that the district court and Plaintiffs wrongly assume that because speech may be used in commission of the crime of abortion trafficking, then Idaho cannot constitutionally criminalize the act of abortion trafficking. That is flat-out wrong.

The First Amendment has never immunized persons from committing criminal acts so long as they do so with the assistance of words. "Many long established criminal proscriptions . . . criminalize speech (commercial or not) that is intended to induce or commence illegal activities." *United States v. Williams*, 553 U.S. 285, 298 (2008). To the

---

[3] *See, e.g.,* Ala. Code §§ 13A-6-152 (same for minor for sexual servitude), -153 (same for adult for labor or sexual servitude); Ark. Code § 5-18-103 (same for slavery, minors for prostitution, or pregnant women for selling child for adoption); Colo. Rev. Stat. § 18-3-504 (same for prostitution); Ga. Code Ann. § 16-5-46 (same for labor or sexual servitude); 720 Ill. Comp. Stat. § 5/10-9 (same for sexual servitude of minor); Ind. Code §§ 35-42-3.5-1-1.4 (same for labor, prostitution, child prostitution, and the promotion thereof); Ky. Rev. Stat. § 529.110 (same for promoting human trafficking); La. Stat. Ann. §§ 14:46.2 (same for slavery or prostitution), .3 (same for child prostitution); Mass. Gen. L. Ann. 265 §§ 50 (same for prostitution, child prostitution), 51 (same for slavery); Mich. Comp. L. Ann. §§ 750.462d (same for slavery or debt bondage), .462e (same for minor slavery and minor prostitution); Miss. Code Ann. § 97-3-54.1 (same for slavery, prostitution generally); N.C. Gen. Stat. § 14-43.11 (same for slavery or sexual servitude); Neb. Rev. Stat. § 28-830 (same for slavery, prostitution generally); Nev. Rev. Stat. § 201.300 (same for unlawful prostitution not excepted under Nev. Rev. Stat. § 201.354); N.Y. Penal §§ 135.35 (same for slavery), 230.34 (same for prostitution); Ohio Rev. Code Ann. § 2905.32 (same for slavery and prostitution, erotic performance, pornography); Tenn. Code Ann. §§ 39-13-308 (same for slavery) -309 (same for prostitution); Tex. Penal § 20A.01 (same for defining trafficking); Utah Code Ann. §§ 76-5-308 (same for slavery) -308.1 (prostitution) -308.5 (child prostitution or child pornography); Wash. Rev. Code § 9A.40.100 (same for slavery, prostitution or pornography or child prostitution/pornography); Wis. Stat § 948.051 (same for child prostitution).

extent that Idaho Code § 18-623 encompasses speech, it is only speech that is made in procuring an abortion by trafficking a minor, with the specific intent to conceal it from parents. This is "speech integral to criminal conduct" lacking any First Amendment protection, and properly proscribed. *United States v. White*, 610 F.3d 956, 960 (7th Cir. 2010).

Nor, just because a person claims their conduct is done for expressive reasons, is such conduct considered expressive under the First Amendment. *See City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000) ("state of nudity" not expressive); *see also Marquez-Reyes v. Garland*, 36 F.4th 1195, 1207 (9th Cir. 2022) (rejecting facial First Amendment challenge to immigration statute that makes it illegal to "encourage" illegal entry); *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1032 (9th Cir. 2006) (rejecting claim "food distribution" is expressive conduct on facial challenge). The Second Circuit's reasoning in *United States v. Thompson,* 896 F.3d 155 (2d Cir. 2018), is especially instructive. There, the court addressed a First Amendment challenge to a minor victim trafficking statute and explained that "[t]o the extent that the minor victim trafficking provision restricts the activities of charitable or religious groups, it places limits on the non-expressive conduct in which they may engage, rather than on their right to associate for the purpose of expressing their views." *Id.* at 165. The court further explained that "[w]hether [the statute] restricts the universe of activities [charitable] organizations may pursue—and whether [the statute] might incidentally curb their ability to help minors involved in the sex trade to find food and shelter—they have no

27

*First Amendment* right to engage in much of the conduct Thompson references." *Id.* The fact that such organizations might bring a well-taken as-applied challenge is of no help in the overbreadth context. *Id.* at n.9. As it happens, inquiry into whether a particular activity is expressive "is best suited to an as-applied challenge," which Plaintiffs do not bring. *Santa Monica*, 450 F.3d at 1032 (citing *Nordyke v. King*, 319 F.3d 1185, 1189 (9th Cir. 2003)).

The district court incorrectly adopted Plaintiffs' framing of essentially all conduct as "advocacy." 1-ER-066. This ignores the distinction between advocacy and imminent lawless action drawn by the United States Supreme Court in *Brandenburg v. Ohio*, 395 U.S. 444 (1969). In *Brandenburg*, defendants brought an as-applied challenge[4] to a syndicalism statute that prohibited advocating reform by violent means. *Id.* at 448. The Court, finding the law unconstitutional, noted that the law did not draw the distinction between abstract teaching and "preparing a group for violent action and steeling it to such action." *Id.* (quoting *Noto v. United States*, 367 U.S. 290, 295-98 (1961). The distinction is appropriately drawn in Idaho Code § 18-623. It is unlawful to recruit a minor *to procure* an abortion. Any speech prohibited is speech connected with the separate unlawful act—it is not abstract. *See also State v. Manzanares*, 152 Idaho 410, 423-26, 272 P.3d 382, 395-98 (2012) (statute criminalizing recruiting criminal gang members

---

[4] Again, demonstrating why Plaintiffs' facial claims are inappropriate—it is impossible for a court to say in advance whether words yet unspoken and unpled are likely to incite anything.

without a specific intent requirement does not criminalize speech itself but speech connected with unlawful act). It is not advocacy that is criminalized, but the acts and speech incident to taking a minor for an abortion with the intent to conceal the abortion from her parents, which Idaho undoubtedly may criminalize. The district court erred by finding this speech covered by the First Amendment. 1-ER-066.

The district court erred further by lumping together conduct, speech, and speech incident to criminal conduct. 1-ER-045-046. First, the district court took issue with recruitment, finding that because a person must use speech to recruit, constitutionally protected speech was implicated and subject to strict scrutiny. *Id.*; *see also* 1-ER-063-065. Again, this analysis ignores the exception for speech integral to criminal conduct. *United States v. Stevens*, 559 U.S. 460, 468-69 (2010) (citing *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949)). The court took issue with this application, because in the words of both Plaintiffs and the district court "abortion trafficking is not a thing" and such abortions out of state are lawful. 1-ER-010, 1-ER-063, 1-ER-067. But Idaho law has made abortion trafficking a thing, whether Plaintiffs want to accept that reality or not. And even though other states permit abortions and offer them to Idaho residents, Idaho may lawfully criminalize an adult person trafficking a pregnant, unemancipated minor within Idaho to procure an abortion—all the while intending to conceal that fact from the minor's parent.

Plaintiffs and the district court seem to think that if the abortion itself is provided in a jurisdiction where abortions are legal, then Idaho is powerless to regulate how a

minor within its borders ultimately procures such an abortion. That makes no sense and is inconsistent with the well-established police powers states exercise. Here, the criminal conduct is the procurement of an abortion for a minor with specific intent to conceal the abortion from the minor's parents or guardian. So long as an essential element of the charged offense takes place in Idaho (i.e., recruitment, harboring, or transportation) it is prosecutable in Idaho even if the abortion itself is legal in another state. *See* Idaho Code § 18-202; 21 Am. Jur. 2d Criminal Law § 422 (Oct. 2023 Update). Other states extend their jurisdiction to crimes for which an essential element occurs within their territory. *See e.g.* Wash. Rev. Code § 9A.04.030(1), (3); Or. Rev. Stat. § 131.215(1), (3), (4), (6); Mont. Code Ann. § 46-2-101(1), (2); Utah Code Ann. § 76-1-201(1)(a); Cal. Penal Code §§ 778, 778a(a), 781, 782, 784(b), 784.5.

That is why, if say, a Michigan resident transported a woman to Nevada for prostitution before Nevada had a law banning such transportation, it would not matter that the only element of the crime that took place in Michigan was transportation rather than prostitution. *Compare* James G. Sweeney, et al., 2 *Revised Laws of Nevada* § 6445 (1912) (trafficking illegal only for certain ages, conditions, and against woman's will) with Edmund C. Shields, Compiler & Annotator, *Compiled Laws of the State of Michigan* §§ 15497-15500 (1915) (prohibiting trafficking for prostitution altogether).

Or consider something like marijuana use that is not distorted as much as abortion is. Idaho could make it illegal to "recruit, harbor, or transport" a minor within Idaho to obtain marijuana with the intent to conceal that from the minor's parents.

Surely Plaintiffs and the district court would not argue that such "marijuana trafficking" violates the First and Fourteenth Amendments just because a neighboring state might have different regulations regarding marijuana use.

Assuming for the sake of argument that there is protected speech captured by the plain text of Idaho Code § 18-623, the district court made no attempt to "construe the section to bring it in harmony with constitutional requirements," and that failure alone is error. *United States v. Thirty-Seven (37) Photographs*, 402 U.S. 363, 368-69 (1971). If indeed some recruitment is advocacy, the district court should have construed the statute in light of that finding instead of simply striking the statute. *See* 1-ER-066-067. If there is *any* constitutional infirmity, the district court erred by failing to conduct a severance analysis and leaving prohibitions on unprotected speech and conduct intact as Idaho law requires. Idaho Code § 18-616 (severability as to abortion law); *see also Leavitt v. Jane L.*, 518 U.S. 137, 138-40 (1996) (severability is a matter of state law).

For all these reasons, the district court erred in finding a likelihood of success as to the First Amendment claims.

**Idaho Code § 18-623 Does Not Violate Due Process.** As an initial matter, Plaintiffs' facial vagueness challenge fails because they admit that Idaho Code § 18-623 is *not* vague as applied to their intended conduct—whatever that may be. They must allege and argue for purposes of standing on their pre-enforcement challenge that they intend to engage in conduct proscribed by the law. Given that, they cannot also argue that Idaho Code § 18-623 is unconstitutionally vague. *See Marquez-Reyes*, 36 F.4th at

1207 ("Marquez-Reyes admits that his actions are covered by the statute, and his vagueness challenge therefore fails.").

Even if the Court were to reach the merits of Plaintiffs' vagueness challenge, it fails. Here, the district court found vagueness on the basis that the words "recruit, harbor, or transport" are vague. 1-ER-069. This was error. "A statute is unconstitutionally vague on its face if it 'fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.'" *United States v. Kilbride*, 584 F.3d 1240, 1257 (9th Cir. 2009) (quoting *Williams*, 553 U.S. at 304 (2008)). "[D]ue process does not require 'impossible standards' of clarity." *Kolender v. Lawson*, 461 U.S. 352, 361 (1983) (citation omitted). A court does not, in reviewing for vagueness, "parse the statute as grammarians or treat it as an abstract exercise in lexicography." *Beauharnais v. People of Ill.*, 343 U.S. 250, 253 (1952). "[S]peculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications.'" *Hum. Life of Wash. Inc. v. Brumsickle*, 624 F.3d 990, 1021 (9th Cir. 2010) (quoting *Hill v. Colorado*, 530 U.S. 703, 733 (2000) (citation omitted)). And "a scienter requirement," as exists here, "may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982).

"Condemned to the use of words, we can never expect mathematical certainty from our language." *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972) (footnote omitted). "[F]lexibility and reasonable breadth, rather than meticulous specificity" will not doom a statute. *Id.* (citation omitted). Courts may look to dictionaries, usage in other statutes, and to decisions of other courts to determine whether the words used by a statute give adequate notice of prohibited conduct. *Id.* at 111 (caselaw); *Cameron v. Johnson*, 390 U.S. 611, 616 (1968) (word challenged was "widely used and well understood" thus not vague). "[N]o more than a reasonable degree of certainty can be demanded. Nor is it unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." *Boyce Motor Lines v. United States*, 342 U.S. 337, 340 (1952).

The district court's vagueness analysis is inconsistent with this Court's and the Supreme Court's approach. First, the court held that because the operative verbs are undefined in a definitions section, this makes them vague. 1-ER-051, 1-ER-065, 1-ER-069. But this Court has held that the undefined use of a term does not render a statute unconstitutionally vague. *See Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431, 1440 (9th Cir. 1996) ("Even undefined, this term is not unconstitutionally vague."); *see also Udechime v. Faust*, 846 Fed. App'x. 583, 584 (9th Cir. 2021) ("Simply because a term is not defined does not render the statute unconstitutional.").

Second, the district court ignored that the words have clear meaning both contextually and from dictionary definitions. *Recruit*, Merriam Webster's Online

33

Dictionary, (last visited December 20, 2023), http://tinyurl.com/bdhwpseh; *Harbor, id.* http://tinyurl.com/2vhrumpx; *Transport, id.* http://tinyurl.com/3x5emvu8. Not to mention, these words, are used repeatedly in dozens of state and federal laws and regulations.[5] A person has recourse to the ordinary meaning of these statutes as a matter of law to determine how these words are used in the ordinary course. Notably, only *one* of these statutes includes a definitions section expressly defining any of these words. *See* Nev. Rev. Stat. § 201.295(7) (defining "transports"). Indeed, the Texas statute and federal statutes use "recruit" "harbor" and "transport" *to define* the act of trafficking. Tex. Penal Code § 20A.01; 22 U.S.C. § 7102(11)(B), (12). A number of these statutes include a more capacious prohibition on engaging trafficked persons "by any means." *See e.g.* Or. Rev. Stat. § 163.266(1). This does not make this element of the crime vague. If someone under 18 U.S.C. § 1591 could not argue that they do not understand the line between merely "counselling" or "informing" a person about a prostitution ring and "recruiting" the person to join the ring and be trafficked, Plaintiffs cannot do so here. 4-ER-379; *cf. Ford v. State*, 262 P.3d 1123, 1132-33 (Nev. 2011) (failure to define operative verbs does not render a statute unconstitutionally vague).

Third, as numerous courts have held, these laws are not unconstitutionally vague for the use of these verbs as a matter of law. *See e.g., United States v. Mozie*, 752 F.3d 1271 (11th Cir. 2014) (18 U.S.C. § 1591(a)) (superseded on other grounds by statute);

---

[5] *See, supra,* n.3.

34

*Commonwealth v. McGhee*, 35 N.E.3d 329, 339 (Mass. 2015); *United States v. Snead*, No. 21-4333, 2022 WL 17975015 at *4 (4th Cir. 2022); *Alonso v. State*, 228 So.3d 1093, 1101-02 (Ala. Crim. App. 2016); *State v. Scotia*, 704 P.2d 289, 290 (Ariz. App. 1985) (collecting cases); *State v. Bryant*, 953 So.2d 585, 587 (Fla. App. 2007) (reversing trial court finding "transport" vague); *see also People v. Cardenas*, 338 P.3d 430, 436-37 (Colo. App. 2014) (listing additional statutes using recruiting or transporting among other verbs).

On a facial challenge, it is Plaintiffs' burden to demonstrate the law failed to give a person of reasonable intelligence fair notice as to what conduct is prohibited or that the law lacked standards for enforcement. Against the weight of dozens of state statutes, interpretive caselaw, and dictionary definitions, they offer their own subjective *ipse dixit*. 4-ER-452-454. This is not good enough.

Like Plaintiffs, the district court's "basic mistake lies in the belief that the mere fact that close cases can be envisioned renders a statute vague. That is not so. Close cases can be imagined under virtually any statute. The problem that poses is addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt." *Williams*, 553 U.S. at 305-06 (citation omitted). By addressing close cases by enjoining the statute, the court erred.

## B. Plaintiffs have not demonstrated irreparable harm.

A plaintiff seeking a preliminary injunction must allege not merely a possibility but "a likelihood of irreparable injury." *Winter*, 555 U.S. at 21. Before the district court, Plaintiffs' counsel was asked directly to confirm that the district court did not have the

authority to enjoin the forty-four county prosecutors who are charged with enforcement of Idaho Code § 18-623. Plaintiffs agreed that was so. 2-ER-092. Indeed, Plaintiffs' counsel was quite candid at oral argument—the point of pursuing an injunction against the Attorney General was to avoid the expense of pursuing an injunction against county prosecutors. 2-ER-90:22-2-ER-93:1. Because county prosecutors are in no way enjoined from continued enforcement of Idaho Code § 18-623—even against Plaintiffs specifically—Plaintiffs have failed to show irreparable harm under *Winter*.

Separately, Plaintiffs do not plead or show that they have been chilled from speaking. The closest they come is a conclusory allegation of a generic "chilling effect" in their request for relief. But "[t]he self-censorship door . . . does not open for every plaintiff." *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1095 (9th Cir. 2003) (applied to standing). And "nakedly asserting that his or her speech was chilled by the statute" is not enough. *Id.* They do not plead or show that they have actually been unable to engage in any oral advocacy as a result of the act, and they instead rely on an abstract fear of prosecution. *See* 4-ER-408-410 ¶¶ 47, 53-55; 4-ER-417-420, ¶¶ 40, 60; 4-ER-425 ¶ 14, 4-ER-428-429, ¶¶ 39, 40. For that matter, Plaintiffs do not allege or show that they have ceased any speech or conduct because of the acts of the Attorney General. The speculative fear they generically assert is not sufficient to show a likelihood of irreparable harm.

36

Moreover, because Plaintiffs' proposed conduct is illegal under numerous Idaho laws other than just Idaho Code § 18-623, the only law they challenge does not irreparably injure them. A movant must establish that irreparable harm is not only possible but is likely. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). "Irreparable harm is harm for which there is no adequate legal remedy." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014).

Here, the effect of the injunction against enforcement of Idaho Code § 18-623 on Plaintiffs' alleged harms is minimal. To the extent that Plaintiffs allege that their fear of enforcement of laws that prohibit the recruitment, transportation or harboring of minors to procure an abortion in another state is the harm, these harms arise from other statutes that remain unchallenged. Kidnapping, again, is charged when a person merely "leads, takes, entices away or detains a child under sixteen . . . years, with intent to keep or conceal it from" the parent or guardian. Idaho Code § 18-4501. This law is the basis for prosecuting the rapist and his mother who took a fifteen-year-old girl to Bend, Oregon to get an abortion and conceal it from the girl's parents. Complaint, *State v. Kadyn Leo Swainston*, CR03-23-11293, Bannock Cnty., Idaho. Idaho's kidnapping law makes no distinctions based on the supposedly benevolent intent of the kidnapper, and so Plaintiffs' legal jeopardy remains live based on their pled intentions. To the extent they plead harm, it predates Section 18-623 and persists following the injunction. The district court erred by finding a likelihood of any irreparable harm based on the statute at issue.

37

**C. The balance of equities and public interest tip against Plaintiffs.**

The balance of equities plainly favors Idaho. States have a concrete interest both in protecting the rights of parents to their children and enforcing democratically enacted criminal statutes. *See e.g. Prince v. Massachusetts*, 321 U.S. 158, 166 (1944) (parental rights constitutionalized); *Parham*, 442 U.S. at 604 (parental rights to make medical decisions); *Alfred L. Snapp & Son, Inc. v. P.R. ex rel Barez*, 458 U.S. 592, 601 (1982) (state sovereign power in enforcing legal code). Plaintiffs assert only the non-existent rights of third parties to intrude on the fundamental relationship between parents and children. Neither the public interest nor equity favors allowing Plaintiffs to interfere in the medical decision making of someone else's child. This balance does not favor Plaintiffs and the district court erred by ruling otherwise.

CONCLUSION

This Court should vacate the preliminary injunction and remand this case for dismissal.

Respectfully submitted,

December 20, 2023.

HON. RAÚL R. LABRADOR
Attorney General

/s/ *Joshua N. Turner*
Joshua N. Turner
Acting Solicitor General
James E. M. Craig
Division Chief, Civil Litigation
and Constitutional Defense
Aaron M. Green
Deputy Attorney General

*Attorneys for Appellant*

## CERTIFICATE OF COMPLIANCE FOR BRIEFS

9th Circuit Case No.:                23-3787

I am the attorney representing Appellant.

**This brief contains 9,695 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief complies with the word limit of Cir. R. 32-1.

/s/ *Joshua N. Turner*                          December 20, 2023
Joshua N. Turner

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing/attached documents on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

Description of Documents:

Opening Brief of Appellant

/s/ *Joshua N. Turner*                                    December 20, 2023
Joshua N. Turner