No. 23-3787

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

LOURDES MATSUMOTO, et al.,

*Plaintiffs-Appellees,*

*v.*

RAÚL LABRADOR, in his capacity as
the Attorney General for the State of Idaho,

*Defendant-Appellant,*

On Appeal from the United States District Court
for the District of Idaho

No. 1:23-cv-00323-DKG
The Honorable Debora K. Grasham

## EXCERPTS OF RECORD VOLUME 1

RAÚL R. LABRADOR
 *Attorney General*

Idaho Office of the Attorney General
700 W. Jefferson St.
Suite 210
Boise, ID 83720
(208) 334-2400
josh.turner@ag.idaho.gov
james.craig@ag.idaho.gov
aaron.green@ag.idaho.gov

JOSHUA N. TURNER
 *Acting Solicitor General*

James E. M. Criag
 *Chief, Civil Litigation and*
 *Constitutional Defense*

Aaron M. Green
 *Deputy Attorney General*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LOURDES MATSUMOTO, NORTHWEST ABORTION ACCESS FUND, and INDIGENOUS IDAHO ALLIANCE, | Case No. 1:23-cv-00323-DKG |
| Plaintiffs, | |
| | MEMORANDUM DECISION AND ORDER |
| v. | |
| RAÚL LABRADOR, in his capacity as the Attorney General for the State of Idaho, | |
| Defendant. | |

## INTRODUCTION

Before the Court is Defendant's Motion to Dismiss. (Dkt. 35.) The motion is fully briefed. (Dkt. 37, 39.) Having carefully reviewed the submissions and the entire record, the Court finds the facts and legal arguments relevant to Defendant's Motion to Dismiss are adequately presented in the record. Accordingly, in the interest of avoiding delay, and because the decisional process would not be significantly aided by oral argument,

MEMORANDUM DECISION AND ORDER - 1

Defendant's Motion will be decided based on the record. For the reasons explained below, the Court will grant in part and deny in part Defendant's Motion.[1]

## BACKGROUND

In this lawsuit, Plaintiffs contest the constitutionality of Idaho's criminal abortion trafficking statute, Idaho Code Section 18-623. (Dkt. 1.)[2] The statute provides that: "[a]n adult who, with the intent to conceal an abortion from the parents or guardian of a pregnant, unemancipated minor, either procures an abortion, as described in Section 18-604, Idaho Code, or obtains an abortion-inducing drug for the pregnant minor to use for an abortion by recruiting, harboring, or transporting the pregnant minor within this state commits the crime of abortion trafficking." Idaho Code § 18-623(1). The offense is punishable by imprisonment for no less than two years and no more than five years. Idaho Code § 18-623(5). The statute allows for an affirmative defense where a parent or guardian of the pregnant minor consented. Idaho Code § 18-623(2). It is not an affirmative defense "that the abortion provider or the abortion-inducing drug provider is located in another state." Idaho Code § 18-623(3). The statute was signed into law by

---

[1] The parties have consented to proceed before a United States Magistrate Judge in this matter pursuant to 28 U.S.C. § 636(c)(1) and Local Civil Rule 72.1(a)(1). (Dkt. 26.)

[2] The statute will be referred to by the title used in Idaho Code Section 18-623 – "abortion trafficking."

MEMORANDUM DECISION AND ORDER - 2

Idaho Governor Brad Little on April 5, 2023, and went into effect May 5, 2023 due to its emergency clause.[3]

On July 11, 2023, Plaintiffs Lourdes Matsumoto, Northwest Abortion Access Fund, and Indigenous Idaho Alliance (collectively Plaintiffs) filed this action under 42 U.S.C. Section 1983 against Defendant Raúl Labrador, in his official capacity as the Attorney General for the State of Idaho. (Dkt. 1.) Plaintiffs are an individual and two organizations who provide assistance to pregnant people, including minors, who are located within and outside of Idaho, with accessing legal abortion care.

The Complaint raises four claims challenging Idaho Code Section 18-623. (Dkt. 1.) Claim one asserts the statute is unconstitutionally void for vagueness in violation of Plaintiffs' due process rights protected by the Fourteenth Amendment. Claim two asserts the statute infringes on the Plaintiffs' fundamental right to interstate travel. Claim three asserts the statute infringes on the Plaintiffs' fundamental right to intrastate travel. Claim four asserts the statute infringes on the Plaintiffs' First Amendment rights to freedom of speech, assembly, association, and petition. Plaintiffs seek a declaratory judgment concluding that, among other things, Idaho Code Section 18-623 is unconstitutional, and to enjoin Defendant Labrador from enforcing the statute.

---

[3] The statute was introduced first as House Bill 98, and later amended and reintroduced as House Bill 242. It was codified as Idaho Code Section 18-623 on July 1, 2023.

MEMORANDUM DECISION AND ORDER - 3

On July 24, 2023, Plaintiffs filed a Motion for Temporary Restraining Order or, in the alternative, a Preliminary Injunction. (Dkt. 12.) Defendant filed an opposition to Plaintiffs' Motion. (Dkt. 32.) The Attorney General for the State of Washington, on behalf of nineteen states and the District of Columbia (collectively Amici States), submitted an amici curiae brief in support of Plaintiffs' Motion. (Dkt. 20, 31.) Following a hearing, the Court granted Plaintiffs' Motion and preliminarily enjoined Defendant from enforcing Idaho Code Section 18-623. (Dkt. 40.) On September 12, 2023, Defendant filed the Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), that is presently before the Court. (Dkt. 35.)

## LEGAL STANDARDS

### 1.      Motion to Dismiss Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), an action may be dismissed for lack of subject matter jurisdiction. Challenges to Article III standing are properly raised in a Rule 12(b)(1) motion to dismiss. *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) ("Standing is a threshold matter central to our subject matter jurisdiction."); *Planned Parenthood Arizona, Inc. v. Brnovich*, 172 F.Supp.3d 1075, 1086-87 n. 9 (D. Ariz. 2016).

Motions made under Rule 12(b)(1) may be factual or facial. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A factual attack presents extrinsic evidence disputing the truth of the allegations of the complaint that would otherwise invoke federal jurisdiction, whereas a facial attack challenges that the allegations contained in the complaint are

MEMORANDUM DECISION AND ORDER - 4

insufficient on their face to invoke federal jurisdiction. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Here, Defendant's motion to dismiss presents both factual and facial challenges. *See* (Dkt. 35, 39) (relying on Attorney General Opinion 23-1, dated April 27, 2023, and challenging the pleadings).

For factual challenges, the Court may consider factual information presented outside of the pleading, including affidavits or other evidence, without converting the motion to a motion for summary judgment and need not presume the truthfulness of the allegations in the complaint. *Safe Air*, 373 F.3d at 1039; *White*, 227 F.3d at 1242.[4]

For facial challenges, the allegations in the Complaint are accepted as true and inferences are drawn in favor of Plaintiffs when determining whether the allegations are sufficient to invoke the Court's jurisdiction. *Jones v. L.A. Central Plaza LLC*, 74 F.4th 1053, 1056, n. 1 (9th Cir. 2023); *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013). To survive a Rule 12(b)(1) facial challenge at the pleading stage, the Complaint must "clearly allege facts demonstrating each element" of standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

---

[4] The jurisdictional issue presented here is separate from the merits of the case. *See Jones v. L.A. Central Plaza LLC*, 74 F.4th 1053, 1057 n. 2 (9th Cir. 2023) ("Where the jurisdictional issue is separable from the merits of the case," a court presented with a factually-based motion to dismiss "may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary.").

MEMORANDUM DECISION AND ORDER - 5

Additionally, "[i]n determining constitutional standing, 'it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing.'" *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975) (in assessing standing, the court may consider "the complaint and any other particularized allegations of fact in affidavits or in amendments to the complaint")); *see also Reeves v. Nago*, 535 F.Supp.3d 943, 950. In doing so, the court "'must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party'" when "'ruling on a motion to dismiss for want of standing.'" *Reeves*, 535 F.Supp.3d at 950 (quoting *Warth*, 422 U.S. at 501 and citing *Confederated Tribes & Bands of Yakama Nation v. Yakima Cnty.*, 963 F.3d 982, 989 (9th Cir. 2020)).

## 2.    Motion to Dismiss Rule 12(b)(6)

Motions made under Rule 12(b)(6) test the legal sufficiency of the allegations underlying the claims made in a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When assessing the sufficiency of a complaint, all well-pleaded factual allegations are taken as true and construed in the light most favorable to the nonmoving party, *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018), and all reasonable inferences are to be drawn in favor of that party as well. *Caltex Plastics, Inc. v. Lockheed Martin Corp*., 824 F.3d 1156, 1159 (9th Cir. 2016). To overcome a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is

MEMORANDUM DECISION AND ORDER - 6

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## DISCUSSION

Defendant moves to dismiss all claims for lack of subject matter jurisdiction and because Plaintiffs' have failed to state plausible claims for relief. (Dkt. 35, 39.) Defendant's subject matter jurisdiction arguments are substantively the same as those raised in response to Plaintiffs' Motion for Preliminary Injunction. (Dkt. 32, 35, 39.) The Court considered and denied Defendant's subject matter jurisdiction assertions in its Order granting a preliminary injunction. (Dkt. 40.) For the reasons stated in the prior Order, Defendant's Motion to Dismiss under Rule 12(b)(1) will be denied.[5] The Court will discuss below Defendant's Motion to Dismiss under Rule 12(b)(6).

Plaintiffs' claims are brought under 42 U.S.C. Section 1983. (Dkt. 1.) To state a claim under Section 1983, Plaintiffs must plead sufficient facts to establish that "(1) the defendant[ ] acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes." *Williams v. California*, 764 F.3d 1002, 1009 (9th Cir. 2014) (quoting *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986)).

_____

[5] The Court's Order granting a preliminary injunction is expressly incorporated herein as it considered and discussed the same arguments raised by the parties related to subject matter jurisdiction, justiciability, and the first and fourth claims for relief. (Dkt. 40.)

MEMORANDUM DECISION AND ORDER - 7

1. **Claims One and Four – Vagueness and First Amendment**

Defendant moves to dismiss claims one and four alleging violations of the First and Fourteenth Amendments. These claims were the subject of the Court's Order granting the preliminary injunction. (Dkt. 40.) Defendant's arguments for dismissal under Rule 12(b)(6) contest the merits of the claims and are substantively the same as the arguments raised in response to Plaintiffs' request for an injunction – asserting Idaho Code Section 18-623 is not unconstitutionally vague and does not infringe on Plaintiffs' First Amendment Rights. (Dkt. 32, 35, 39.)

For the reasons discussed in the preliminary injunction decision, the Court finds Plaintiffs have stated plausible claims that Idaho Code Section 18-623 violates their constitutional rights under the First and Fourteenth Amendments. While the standards for a preliminary injunction and Rule 12(b)(6) differ, the reasons underlying the Court's preliminary injunction decision also establish that Plaintiffs' first and fourth claims are based on cognizable legal theories and are supported by sufficient facts. *See Zamani v. Carnes*, 491 F.3d 990, 996-97 (9th Cir. 2007); *accord Ashcroft*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Namely, that terms used in Idaho Code Section 18-623 fail to provide fair notice of what conduct is proscribed and invite arbitrary enforcement; and its proscriptions infringe on Plaintiffs' constitutionally protected speech and expression.

MEMORANDUM DECISION AND ORDER - 8

Defendant's arguments challenging the merits of the claims are unavailing on this Motion. "A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro*, 250 F.3d at 732. "The relevant inquiry ... is not whether the plaintiff has demonstrated a likelihood of success on the merits" but whether "there is no cognizable legal theory or absence of sufficient facts alleged to support a cognizable legal theory." *Zamani*, 491 F.3d at 996. The Court will briefly address two of Defendant's contentions.

Defendant asserts the first and fourth claims fail because accepting Plaintiffs' position would invalidate other criminal statutes that use the same terms. (Dkt. 35 at 5.) The fundamental flaw in Defendant's reasoning is that the other statutes he refers to involve transportation of individuals for a <u>criminal</u> purpose; namely, human and sex trafficking. Here, Plaintiffs desire and intent is to assist minors in procuring and obtaining <u>lawful</u> abortions. As Plaintiffs astutely point out: "abortion trafficking is not a thing," because abortion remains legal in states outside of Idaho. (Dkt. 34 at 7-8, and Dkt. 37 at 10-11.) That the abortion trafficking statute criminalizes lawful activity and, even more egregious, proscribes constitutionally protected activity, makes it wholly different from the other criminal statutes Defendant attempts to liken it to.

Defendant further argues that Idaho Code Section 18-623 is not vague because its terms are found in other criminal statutes – "recruiting, harboring, transporting." (Dkt. 39 at 2-3.) That the statute adopts the same words used in other criminal statutes does not mean the words are "clear" in all applications, nor does it automatically render the statute constitutional, as Defendant suggests. (Dkt. 39 at 2.) Just the opposite, the Complaint is

MEMORANDUM DECISION AND ORDER - 9

replete with allegations that are more than sufficient to plausibly claim the statute is unconstitutionally vague and violates Plaintiffs' constitutional rights protected by the First and Fourteenth Amendments. (Dkt. 1 at ¶¶ 60-68, 72, 82-101, 122-132.)

For these reasons, the Court finds Plaintiffs have stated plausible claims under the First and Fourteenth Amendments. Defendant's Motion to Dismiss as to the first and fourth claims in the Complaint will be denied.

**2. Claim Two – Right to Interstate Travel**

The Supreme Court has long-recognized the right to interstate travel. *United States v. Guest*, 383 U.S. 745, 757-58 (1966); *Shapiro v. Thompson*, 394 U.S. 618, 629-30 (1969).[6] The Ninth Circuit has further confirmed that "[t]he constitution guarantees the fundamental right to interstate travel." *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 944 (9th Cir. 1997) (citing *Shapiro*, 394 U.S. at 629). Thus, where a state law burdens the right to travel, strict scrutiny applies. *Attorney Gen. of N.Y. v. Soto-Lopez*,

---

[6] The right to go from one place to another, including the right to cross state borders while en route, was recognized in *Edwards v. California*, 314 U.S. 160 (1941), and was reaffirmed in *United States v. Guest*, 383 U.S. 745 (1966). *Saenz v. Roe*, 526 U.S. 489, 500-01 (1999) (discussing *Edwards* and *Guest*). In *Edwards*, the court invalidated a state law that impeded the free interstate passage of the indigent. *Id.* In *Guest*, the court "afforded protection to the 'right to travel freely to and from the State of Georgia and to use highway facilities and other instrumentalities of interstate commerce within the State of Georgia.'" *Id.* More recently, one member of the Supreme Court recognized the right to interstate travel applies in the very context presented here. *Dobbs v. Jackson Women's Health Org.*, 142 S.Ct. 2228, 2309 (2022) (J. Kavanaugh concurring) (stating it is "not especially difficult" to conclude that a state may not bar its residents from traveling to another state to obtain an abortion, "based on the constitutional right to interstate travel.").

MEMORANDUM DECISION AND ORDER - 10

476 U.S. 898, 904-905 and n. 4 (1986) (citations omitted); *accord Saenz v. Roe*, 526 U.S. 489, 499 (1999).

The right to travel embraces at least three components: 1) the right to enter one state and leave another; 2) the right to be treated as a welcome visitor rather than an "unfriendly alien" when temporarily present in another state; and 3) the right to be treated equally to native-born citizens when becoming a permanent resident of a state. *Saenz*, 526 U.S. at 500. Only the first component is implicated in this lawsuit - the right to enter one state and leave another. (Dkt. 35 at 4, and Dkt. 37 at 6.)

"A state law implicates the right to travel when it actually deters such travel, …when impeding travel is its primary objective,… or when it uses any classification which serves to penalize the exercise of that right." *Soto-Lopez*, 476 U.S. at 902 (citations and marks omitted); *see also Matsuo v. United States*, 586 F.3d 1180, 1182 n. 2 (9th Cir. 2009) (same). Here, Defendant argues Idaho Code Section 18-623 does not deter or prevent Plaintiffs from entering or leaving the state and, therefore, the second claim for relief is not plausible as a matter of law. (Dkt. 35 at 4-5.) Plaintiffs maintain the statute's predominate purpose and effect impedes and deters interstate travel and, therefore, they have stated a plausible claim. (Dkt. 37 at 7-10.) Construing the factual allegations as true, the Court finds Plaintiffs have stated a plausible claim for relief.

The Complaint alleges Idaho Code Section 18-623 unreasonably burdens Plaintiffs' right to enter and leave a state; was enacted to restrict the travel of both Plaintiffs and the pregnant minors they serve; and deters travel, including travel by

MEMORANDUM DECISION AND ORDER - 11

Plaintiffs who seek to assist pregnant minors. (Dkt. 1 at ¶¶ 73-75, 79, 105-107.) Plaintiffs allege they fear prosecution under Idaho Code Section 18-623 for traveling with a pregnant minor from Idaho to another state, which has chilled their constitutionally protected conduct. (Dkt. 1 at ¶¶ 108-109.)

The legislative materials quoted in the Complaint are evidence going to show that Idaho Code Section 18-623 was enacted for the purpose of prohibiting and deterring interstate travel. (Dkt. 1 at ¶¶ 12, 13, 75.) The quoted statements in the materials initially represent that the statute is a "parents' rights bill," and insist it "does not impair interstate travel." (Dkt. 1 at ¶¶ 12, 13.)[7] However, the remainder of the statements quite clearly demonstrate that the statute's intended purpose is to impede interstate travel, stating: "this does have to do with abortion trafficking and that would be…taking a minor from Idaho and trafficking that minor to another state to receive an abortion," and "[HB 242] seeks only to prevent unemancipated minor girls from being taken across state lines for an abortion without the knowledge and consent of her parent or guardian." (Dkt. 1 at ¶¶ 12, 13.) More than bare conclusions or mere assertions, these statements establish a plausible claim that Idaho Code Section 18-623 was enacted for the purpose of impeding interstate travel. Defendant's arguments to the contrary may be relevant to a later motion, but do

_____

[7] The state has a legitimate interest in protecting parent's rights and minors. *See Troxel v. Granville*, 530 U.S. 57, 65 (2000). That interest is not at issue on this Motion, however.

MEMORANDUM DECISION AND ORDER - 12

not defeat the plausibility of the claim stated in the Complaint for purposes of this

Motion. (Dkt. 39 at 4) (arguing the statute is intended to protect parental rights).

Further, Plaintiffs have plausibly alleged that the statute facially impedes and

deters their right to interstate travel by unreasonably burdening their ability to enter and

leave the state, and by criminalizing travel to another state with a pregnant minor to

procure or obtain lawful abortion services. (Dkt. 1 at ¶¶ 72, 79, 103-105, 107-109.) For

example, Idaho Code Section 18-623 plainly prohibits adults from transporting a

pregnant minor to procure an abortion or obtain an abortion inducing drug. Plaintiffs

allege the statute prevents them from traveling within Idaho to reach a state where

abortion is lawful and has deterred Plaintiffs' travel in to and out of Idaho with a pregnant

minor. (Dkt. 1 at ¶¶ 73-74.) Plaintiffs further allege the vagueness of the statute has

deterred and chilled them from traveling with minors to procure legal abortion services.

(Dkt. 1 at ¶¶ 30, 42-44, 71-73, 108.) The Court finds these allegations state a plausible

claim of infringement on Plaintiffs' right to interstate travel.

### 3. Claim Three – Right to Intrastate Travel

The third claim for relief alleges Idaho Code Section 18-623 unreasonably

burdens, impermissibly restricts, and deters Plaintiffs' right to intrastate travel and

freedom of movement. (Dkt. 1 at ¶¶ 115, 116, 117.) Plaintiffs state they have in the past

assisted pregnant minors with obtaining lawful abortion care by driving the minor

wherever they need to go, which necessarily requires traveling on public roads within

MEMORANDUM DECISION AND ORDER - 13

Idaho. (Dkt. 1 at ¶¶ 41, 42, 116-119.) Plaintiffs allege they desire to continue these activities but fear prosecution under the statute. (Dkt. 1 at ¶¶ 26, 115, 118-119.)

This claim appears to arise from the substantive Due Process Clause of the Fourteenth Amendment, which provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV, § 1.[8] To plead a substantive due process violation, a plaintiff must allege facts showing a government deprivation of a protected life, liberty, or property interest in a manner that "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty." *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998). Here, Plaintiffs have not satisfied the threshold requirement of showing a liberty interest protected by the Constitution. *Id.; Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006).

Unlike the right to interstate travel, "neither the Supreme Court nor the Ninth Circuit has recognized a constitutional right to intrastate travel." *Mendoza v. Garrett*, 358 F.Supp.3d 1145, 1173 (D. Or. 2018) (citing *Nunez ex rel.*, 114 F.3d at 944 n.7; *Mem'l Hosp. v. Maricopa Cty.*, 415 U.S. 250, 255-56 (1974) (declining to decide whether the

---

[8] The Complaint does not expressly identify the constitutional provision that Plaintiffs allege is the source for the right to intrastate travel claim. However, the allegations and federal caselaw cited in the Complaint in relation to the right to travel or freedom of movement claim are based on the Fourteenth Amendment's substantive due process clause. (Dkt. 1 at ¶¶ 69-81, 113-119.) Yet, some of the allegations supporting the claim appear to arise from other sources: right to access to public roads and highways, and the First Amendment. (Dkt. 1 at ¶¶ 115, 119.) To the extent the claim arises from a basis different from substantive due process, the Court finds the allegations in the Complaint lacks sufficient definiteness to plead a plausible claim for violation of a right to intrastate travel.

MEMORANDUM DECISION AND ORDER - 14

Constitution guarantees the fundamental right of intrastate travel)); *see also Potter v. City of Lacey*, 46 F.4th 787, 800 (9th Cir. 2022) (J. Bennett dissenting) (same).

Other Circuits are split on whether there is a federal constitutional right to intrastate travel. *Ramos v. Town of Vernon*, 353 F.3d 171, 176 (2d Cir. 2003) (finding a right to intrastate travel or the right to free movement under the Equal Protection Clause); *Johnson v. City of Cincinnati*, 310 F.3d 484, 493-98 (6th Cir. 2002) (holding the Constitution protects a right to travel locally); *Lutz v. City of York*, 899 F.2d 255, 267 (3d Cir. 1990) (holding the Due Process Clause protects the right to intrastate travel); *McCraw v. City of Oklahoma City*, 973 F.3d 1057, 1080-81 (10th Cir. 2020) (acknowledging other circuits have found a fundamental right to freedom of movement, but concluding the fundamental right to freedom of movement applies only to interstate travel); *Hammel v. Tri-County Metro. Transp. Dist. of Or.*, 955 F.Supp.2d 1205, 1210 (D. Or. 2013) (citing cases). District Courts in the Ninth Circuit have declined to recognize a right to intrastate travel. *Disbar Corp. v. Newsom*, 508 F.Supp.3d 747, 753 (E.D. Cal. 2020) (declining to find a fundamental right to travel within the community); *Hammel*, 955 F.Supp.2d at 1210; *Daly v. Harris*, 215 F.Supp.2d 1098, 1114 (D. Haw. 2002); *Klock v. Cain*, 813 F.Supp. 1430, 1433 (C.D. Cal. 1993); *Fruitts v. Union Cty.*, No. 2:14-cv-00309-SU, 2015 WL 5232722, at *6 (D. Or. Aug. 17, 2015) (finding no constitutional right to intrastate travel and that district courts in the Ninth Circuit have "refused to expand" the constitutional interest in interstate travel to include such a right under the due process clause).

MEMORANDUM DECISION AND ORDER - 15

Nevertheless, Plaintiffs ask this Court to recognize the right to intrastate travel or freedom of movement as a fundamental right, and to find that Idaho Code Section 18-623 unconstitutionally infringes upon that right. (Dkt. 1 at 23-24, n. 26.) The Court respectfully declines Plaintiffs' invitation.

Courts are cautioned to "exercise the utmost care" when asked to expand the substantive due process liberty protections. *Brittain*, 451 F.3d at 990-91; *Nunez*, 147 F.3d at 871 n. 4 (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) ("[T]he Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.")); *Willis v. Town of Marshall, N.C.*, 426 F.3d 251, 265 (4th Cir. 2005) (declining to decide whether the rights to intrastate travel or accessing a public forum are fundamental rights, as courts "must be reluctant to expand the concept of substantive due process."). While the Court does not find Plaintiffs' intrastate travel claim is brought in bad faith or frivolous given the caselaw from other Circuits, there is simply no authority in this Circuit at this time upon which to recognize a liberty interest in the right to intrastate travel, let alone a fundamental right. For this reason, the Court will grant Defendant's Motion and will dismiss the third claim for relief. The dismissal will be without prejudice and subject to a motion for leave to amend if new authority or a different basis exists upon which the claim can be plausibly stated. Fed. R. Civ. P. 15(a)(2), 41(b).

MEMORANDUM DECISION AND ORDER - 16

The Court notes that the Complaint cites one Idaho case in support of the intrastate travel claim: *Adams v. City of Pocatello*, 416 P.2d 46, 48 (Idaho 1966). (Dkt. 1 at ¶¶ 76, 115.) There, the Idaho Supreme Court stated: "[t]he right to operate a motor vehicle upon the public streets and highways is not a mere privilege. It is a right or liberty, the enjoyment of which is protected by the guarantees of the federal and state constitutions." *Adams*, 416 P.2d at 48 (citing cases).

Where "a violation of state law causes the deprivation of a right protect by the United States Constitution, that violation may form the basis for a Section 1983 action." *Lovell ex rel. Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 370 (9th Cir. 1996). "However, Section 1983 limits a federal court's analysis to the deprivation of rights secured by the federal 'Constitution and laws.'" *Lovell*, 90 F.3d at 370 (quoting 42 U.S.C. § 1983). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." *Id.* at 370-71. As discussed above, the Ninth Circuit and the Supreme Court do not presently recognize a right to intrastate travel protected by federal law. Thus, to the extent Plaintiffs' third claim for relief is based on state law, it is not redressable under Section 1983.

Further, Idaho courts have recognized the right found in *Adams* is subject to reasonable regulation, and have applied a rational basis standard of review. *Adams*, 416 P.2d at 48; *State v. Wilder*, 67 P.3d 839, 841 (Idaho Ct. App. 2003) (asking whether the driver's license requirement is a reasonable regulation in furtherance of the state's police

MEMORANDUM DECISION AND ORDER - 17

power); *Gordon v. State*, 697 P.2d 1192, 1193 (Idaho Ct. App. 1985) (finding vehicle registration requirement is reasonably related to a legitimate state interest). Thus, even if Idaho recognizes an intrastate right to travel, it is not a fundamental right subject to strict scrutiny as Plaintiffs seek here.

### ORDER

THEREFORE IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (Dkt. 35) is **GRANTED IN PART AND DENIED IN PART**. The Motion is granted as to the third claim for relief, which is **DISMISSED WITHOUT PREJUDICE**. The Motion is denied as to the first, second, and fourth claims for relief.

DATED: November 8, 2023

Honorable Debora K. Grasham
United States Magistrate Judge

MEMORANDUM DECISION AND ORDER - 18

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LOURDES MATSUMOTO, NORTHWEST ABORTION ACCESS FUND, and INDIGENOUS IDAHO ALLIANCE, | Case No. 1:23-cv-00323-DKG |
| Plaintiffs, | MEMORANDUM DECISION AND ORDER |
| v. | |
| RAÚL LABRADOR, in his capacity as the Attorney General for the State of Idaho, | |
| Defendant. | |

## INTRODUCTION

Before the Court is Plaintiffs' Motion for Temporary Restraining Order, or, in the alternative, a Preliminary Injunction. (Dkt. 12.) Plaintiffs seek to enjoin the Defendant from enforcing Idaho's abortion trafficking statute, Idaho Code Section 18-623. The Motion is fully briefed and at issue. On September 14, 2023, the Court heard oral argument and took the Motion under advisement.

MEMORANDUM DECISION AND ORDER - 1

Having carefully reviewed and considered the entire record and the parties' arguments, the Court will grant Plaintiff's Motion and will preliminarily enjoin Defendant from enforcing Idaho Code Section 18-623. For the reasons explained below, the Court finds Plaintiffs have named the proper Defendant, demonstrated both subject matter jurisdiction and Article III justiciability, and established the requirements for a preliminary injunction.[1]

## BACKGROUND

In this lawsuit, Plaintiffs contest the constitutionality of Idaho's criminal abortion trafficking statute, Idaho Code Section 18-623. (Dkt. 1.)[2] The statute provides that: "[a]n adult who, with the intent to conceal an abortion from the parents or guardian of a pregnant, unemancipated minor, either procures an abortion, as described in Section 18-604, Idaho Code, or obtains an abortion-inducing drug for the pregnant minor to use for an abortion by recruiting, harboring, or transporting the pregnant minor within this state commits the crime of abortion trafficking." Idaho Code § 18-623(1). The offense is punishable by imprisonment for no less than two years and no more than five years. Idaho Code § 18-623(5). The statute allows for an affirmative defense where a parent or

---

[1] The parties have consented to proceed before a United States Magistrate Judge in this matter pursuant to 28 U.S.C. § 636(c)(1) and Local Civil Rule 72.1(a)(1). (Dkt. 26.)

[2] The statute is entitled "abortion trafficking" in the Idaho Code. *See* Idaho Code § 18-623. However, other descriptions have been used to refer to the statute, including: abortion travel ban, parental consent bill, and parents' rights bill. (Dkt. 1, 12, 32, 34.) In this Order, the statute will be referred to by the title used in Idaho Code Section 18-623.

MEMORANDUM DECISION AND ORDER - 2

guardian of the pregnant minor consented. Idaho Code § 18-623(2). It is not an

affirmative defense "that the abortion provider or the abortion-inducing drug provider is

located in another state." Idaho Code § 18-623(3). The statute was signed into law by

Idaho Governor Brad Little on April 5, 2023, and went into effect May 5, 2023, due to its

emergency clause.[3]

On July 11, 2023, Plaintiffs Lourdes Matsumoto, Northwest Abortion Access

Fund, and Indigenous Idaho Alliance (collectively Plaintiffs)[4] filed this action under 42

U.S.C. Section 1983 against Defendant Raúl Labrador, in his official capacity as the

Attorney General for the State of Idaho. (Dkt. 1.) Plaintiffs are an individual and two

organizations who provide assistance to pregnant people, including minors, who are

located both within and outside of Idaho, with accessing legal abortion care.

The Complaint raises four claims challenging Idaho Code Section 18-623. (Dkt.

1.) Claim one asserts the statute is unconstitutionally void for vagueness in violation of

Plaintiffs' due process rights protected by the Fourteenth Amendment. Claim two asserts

the statute infringes on the Plaintiffs' fundamental right to interstate travel. Claim three

asserts the statute infringes on the Plaintiffs' fundamental right to intrastate travel. Claim

four asserts the statute infringes on the Plaintiffs' First Amendment rights to freedom of

---

[3] The statute was introduced first as House Bill 98, and later amended and reintroduced as House Bill 242. It was codified as Idaho Code Section 18-623 on July 1, 2023.

[4] When referring to all three of the named Plaintiffs collectively, the Court will use the term "Plaintiffs." When discussing a particular Plaintiff, the Court will use the party's name or initials.

MEMORANDUM DECISION AND ORDER - 3

speech, assembly, association, and petition. Plaintiffs seek a declaratory judgment

concluding that, among other things, the abortion trafficking statute is unconstitutional,

and to enjoin Defendant Labrador from enforcing the statute.

On July 24, 2023, Plaintiffs filed a Motion for Temporary Restraining Order or, in

the alternative, a Preliminary Injunction. (Dkt. 12.) Plaintiffs' Motion is supported by the

declaration of Plaintiffs' counsel and declarations of each of the Plaintiffs. (Dkt. 12-2, 12-

7, 12-8, and 12-9.) Defendant was granted an extension of time to file a response, and

Plaintiffs filed a timely reply. (Dkt. 27, 31, 34.) On July 31, 2023, the Attorney General

for the State of Washington, on behalf of nineteen states and the District of Columbia

(collectively Amici States), filed a Motion for Leave to submit an amici curiae brief in

support of Plaintiffs' Motion. (Dkt. 20.) Neither party opposed the Amici States' Motion,

and the Court granted the same on August 22, 2023. (Dkt. 30, 31.) Having taken

Plaintiffs' Motion under advisement, the Court now finds as follows.

### LEGAL STANDARD

Temporary restraining orders and preliminary injunctions generally serve the same

purpose of "preserv[ing] the status quo ante litem pending a determination of the action

on the merits." *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d

1197, 1200 (9th Cir. 1980); Fed. R. Civ. P. 65. "A preliminary injunction is 'an

extraordinary and drastic remedy, one that should not be granted unless the movant, by a

clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072

(9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

MEMORANDUM DECISION AND ORDER - 4

"A party seeking a preliminary injunction must establish: (1) a likelihood of success on the merits; (2) likely irreparable harm in the absence of a preliminary injunction; (3) that the balance of equities weighs in favor of an injunction; and (4) that an injunction is in the public interest." *Hecox v. Little*, 479 F.Supp.3d 930, 971 (D. Idaho 2020) (quoting *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008)). When the government is a party, the last two factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). The Court may consider and rely upon declarations in deciding a motion for preliminary injunction. *Earth Island Institute v. Muldoon*, 630 F.Supp.3d 1312, 1335 n. 10 (E.D. Cal. 2022); *Brinton Bus. Ventures, Inc. v. Searle*, 248 F.Supp.3d 1029, 1032 (D. Or. 2017) ("[I]n deciding a motion for a preliminary injunction, the Court has broad discretion to consider all arguments and evidence, including hearsay and other inadmissible evidence, [and] declarations from interested parties[.]") (citing *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009); *Lane v. Dep't of Interior*, 523 F.3d 1128, 1140 (9th Cir. 2008)).[5]

## DISCUSSION

Federal courts are courts of limited jurisdiction and may only hear cases as authorized by Article III of the United States Constitution and statutes enacted by

---

[5] Defendant has not submitted any counter-declarations that substantially controvert the factual allegations in the Complaint or contest the declarations submitted by Plaintiffs. Thus, the factual allegations in the Complaint and Plaintiffs' declarations may serve as the basis for a preliminary injunction. *See McCormack v. Hiedeman*, 694 F.3d 1004, 1019 (9th Cir. 2012).

MEMORANDUM DECISION AND ORDER - 5

Congress. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Thus, federal courts cannot consider claims for which they lack jurisdiction. *Wang ex rel. United States v. FMC Corp.*, 975 F.2d 1412, 1415 (9th Cir. 1992). The burden is on the party invoking the court's jurisdiction to prove that the case is properly in federal court. *McCauley v. Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001).

Because subject matter jurisdiction and Article III justiciability are prerequisites to a federal court exercising its authority to adjudicate a case, the Court will first address those challenges raised by Defendant before turning to the Plaintiffs' request for injunctive relief. *Kokkonen*, 511 U.S. at 377; C*ity of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) ("[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy."); *Wang*, 975 F.2d at 1415 ("Federal courts have no power to consider claims for which they lack subject matter jurisdiction.").

## 1.    Subject Matter Jurisdiction and Justiciability

Defendant contends Plaintiffs have not shown an injury in fact or threat of prosecution, which are fatal to subject matter jurisdiction under both the Eleventh Amendment and Article III. (Dkt. 32.) Plaintiffs maintain they have demonstrated the requirements for Article III jurisdiction and named the proper Defendant. (Dkt. 12, 34.)

### A.    Eleventh Amendment Sovereign Immunity Exception

The Eleventh Amendment bars federal jurisdiction over suits by individuals against a State and its instrumentalities, including official-capacity suits, absent the State

MEMORANDUM DECISION AND ORDER - 6

consenting to waive its sovereign immunity or Congress's abrogation. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984). "However, under *Ex parte Young*,…this immunity is subject to an exception for actions for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law so long as the state officer has some connection with enforcement of the act." *Mecinas v. Hobbs*, 30 F.4th 890, 903 (9th Cir. 2022) (marks and citations omitted); *see also Sullivan v. Ferguson*, 636 F.Supp.3d 1276, 1287 (W.D. Wash. 2022) ("*Ex parte Young* provides an exception to state sovereign immunity by permitting parties to sue state officials in their official capacity for prospective injunctive and declaratory relief from unconstitutional state laws so long as there is some connection between the officer and enforcement of the allegedly unconstitutional act.") (citing *Ex parte Young*, 209 U.S. 123, 157 (1908)).

"The 'connection' required under *Ex parte Young* demands merely that the implicated state official have a relevant role that goes beyond 'a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision.'" *Mecinas*, 30 F.4th at 903-04 (quoting *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004)). While the connection to the enforcement of the challenged act must be "fairly direct," the Ninth Circuit describes this as a "modest requirement." *Id.* In the context of a state attorney general, the requisite connection exists where the attorney general can "direct, in a binding fashion, the prosecutorial activities of the officers who actually enforce the law or bring his own

MEMORANDUM DECISION AND ORDER - 7

prosecution." *Wasden*, 376 F.3d at 919. Concurrent legal authority to prosecute is sufficient to establish a connection with enforcement of the act being challenged. *Id.*

Under Idaho law, the Attorney General does not generally direct or exercise supervisory powers over county prosecutors, but may be appointed to assist in the prosecution of a criminal case at the request of the county prosecutor and upon the approval of the district court. Idaho Code § 31-2603. However, the statute challenged in this lawsuit expressly gives the Attorney General the authority, at his sole discretion, to prosecute a person for a criminal violation of the statute if the county prosecutor refuses to do so. Idaho Code § 18-623(4). That provision of the statute plainly vests the Attorney General with the authority to prosecute a person in the absence of the county prosecutor doing so, at his sole discretion. As such, the Attorney General possesses at least some concurrent legal authority to prosecute a person under Idaho Code Section 18-623. That, the Court finds, establishes Attorney General Labrador has "some connection with enforcement of the act" as required under *Ex parte Young*. *Mecinas*, 30 F.4th at 903; *Wasden*, 376 F.3d at 919-20. Accordingly, the Attorney General is not entitled to Eleventh Amendment immunity under *Ex parte Young*.

In his response brief, Defendant argues he "*has no authority* to threaten criminal prosecutions of the Abortion Trafficking Ban at this time." (Dkt. 32 at 26) (emphasis in original). During the hearing, defense counsel further argued that Attorney General Labrador has "disavowed" his authority to deputize himself, as the decision in *Wasden*

MEMORANDUM DECISION AND ORDER - 8

demands. (Dkt. 36 at 48-50.)[6] In support of his position, Defendant points to his April 27, 2023 opinion (AG Opinion 23-1), discussing his authority to prosecute violations of Idaho Code Sections 18-622 and 18-623. (Dkt. 32-2, Dec. Wilson, Ex. 1.)[7] Defendant argues his "definitive construction of the limits of his own powers supersedes the Ninth Circuit's interpretation of Idaho law in *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908 (9th Cir. 2004)...." (Dkt. 32 at 26.)[8] The Court respectfully disagrees.

Attorney General Labrador's opinion does not "supersede" Ninth Circuit caselaw. "Supersede" is defined as "[t]o annul, make void, or repeal by taking the place of...." Black's Law Dictionary (11th ed. 2019). Ninth Circuit caselaw, however, can only be overturned or superseded by the Ninth Circuit itself, or by the United States Supreme Court. *See e.g., Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001) ("Circuit law...binds all courts within a particular circuit," and "[o]nce a panel resolves an issue in a precedential opinion, the matter is deemed resolved, unless overruled by the court itself sitting en banc, or by the Supreme Court."). Thus, while the Attorney General may

---

[6] The transcript of the September 14, 2023 hearing is filed at Docket Number 36.

[7] Idaho Code Section 18-622 makes it a crime for any person to perform or attempt to perform an abortion except in certain enumerated circumstances. The Attorney General is presently enjoined from enforcing Idaho Code Section 18-622. *Planned Parenthood Greater Northwest v. Labrador, et al.* (*Planned Parenthood GNW*), Case No. 1:23-cv-00142-BLW, 2023 WL 4864962 (D. Idaho July 31, 2023). That decision is currently on appeal.

[8] Attorney General Labrador has also argued the Ninth Circuit's decision in *Wasden* is "immaterial" and "inapplicable" to the sovereign immunity issue. *See* (Dkt. 32-2, AG Op. 23-1 at 4, n. 2); *Planned Parenthood GNW*, 2023 WL 4864962, at *8. For the reasons stated herein, the Court finds to the contrary.

MEMORANDUM DECISION AND ORDER - 9

disagree with Ninth Circuit caselaw, his opinion concerning his authority to prosecute under Idaho Code Section 18-622, let alone Idaho Code Section 18-623, does not "supersede" the Ninth Circuit's caselaw concerning waiver of sovereign immunity.

Nor is Attorney General Labrador the final arbiter of Idaho law. *Oregon Clinic, PC v. Fireman's Fund Insur. Co.*, 75 F.4th 1064, 1069 (9th Cir. 2023) (quoting *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 889 (9th Cir. 2021) ("When interpreting state law, [federal courts] are bound to follow the decisions of the state's highest court, and when the state supreme court has not spoken on an issue, we must determine what result the court would reach based on state appellate court opinions, statutes and treatises."); *Doe v. Wasden*, 558 F.Supp.3d 892, 906 (D. Idaho 2021) ("When determining whether a state statute is constitutional the court should defer to the state supreme court's interpretation of the statute. This is because a State's highest court is the final judicial arbiter of the meaning of state statutes.") (internal citations and marks omitted). Nevertheless, the Attorney General's opinion, while not final or binding on this Court, undoubtedly should be and will be considered in deciding the issues presented.

A careful review of AG Opinion 23-1 makes clear that Attorney General Labrador is not entitled to Eleventh Amendment immunity under *Ex parte Young*. The opinion was written in response to a request related to a different statute, Idaho Code Section 18-622, not Idaho Code Section 18-623.[9] In distinguishing the two statutes, the opinion expressly

---

[9] In *Planned Parenthood GNW*, the Court concluded that Attorney General Labrador was not entitled to Eleventh Amendment immunity under *Ex parte Young*. *Planned Parenthood GNW*, 2023 WL

MEMORANDUM DECISION AND ORDER - 10

recognizes that the Idaho Legislature has conferred prosecutorial authority to the

Attorney General to prosecute violations of Idaho Code Section 18-623 if the county

prosecuting attorney refuses to do so. (Dkt. 32-2, Dec. Wilson, Ex. 1.)

Defendant's briefing likewise recognizes the existence of the Attorney General's

prosecutorial authority, albeit couched as a "limited legislative grant of prosecutorial

authority." (Dkt. 32 at 27.) Further, during the hearing, defense counsel conceded that

Attorney General Labrador has not disavowed his authority to prosecute should either

circumstance provided for in the statute present itself. (Dkt. 36 at 53-54.) It is self-evident

from AG Opinion 23-1, the plain language of the abortion trafficking statute, and

Defendant's own arguments in this lawsuit, that the Attorney General does in fact possess

the authority to prosecute violations of Idaho Code Section 18-623, under certain

conditions. (Dkt. 32-2, Dec. Wilson, Ex. 1); Idaho Code § 18-623(4) ("The Idaho

attorney general has the authority, at the attorney general's sole discretion, to prosecute a

person for a criminal violation of this section if the prosecuting attorney authorized to

prosecute criminal violations of this section refuses to prosecute violations of any of the

provisions of this section by any person without regard to the facts or circumstances."). It

---

4864962, at *7-9 (discussing *Wasden*, 376 F.3d at 919). However, as Defendant notes, AG Op. 23-1 was
not considered in *Planned Parenthood GNW* for reasons particular to that case, which are not present
here. (Dkt. 32 at 27, n. 2); *Planned Parenthood of GNW*, Case No. 1:23-cv-00142-BLW, at Dkt. 114.

MEMORANDUM DECISION AND ORDER - 11

necessarily follows that the Attorney General can threaten to exercise that authority, which is the case here.[10]

Defendant maintains that he is without prosecutorial authority "at this time" because the two conditions required for the Attorney General to prosecute a violation of Idaho Code Section 18-623 – referral by a county prosecutor, or a specific legislative grant – are not currently present. (Dkt. 32 at 26-28.) As discussed above, the statute itself contains a legislative grant of prosecutorial authority to the Attorney General. That a county prosecutor has not referred or refused to prosecute a case "at this time," does not "limit" the Attorney General's authority to prosecute a person if either event transpires. Nor does it minimize the Attorney General's threat to do so, which is apparent based on his written Opinions and failure to disavow prosecution of Plaintiffs if the circumstances provided in the statute arise. (Dkt. 12-4, 12-5.) Indeed, defense counsel stated as much during the hearing. (Dkt. 36 at 53-54.)[11]

---

[10] The threat of future prosecution is discussed more fully below as it relates to Article III standing.

[11] It is that threat of enforcement and refusal by the Attorney General to disavow his authority to prosecute if the circumstances provided for in the statute arise, which has caused Plaintiffs' alleged injury – refraining from engaging in constitutionally protected speech and expression out of fear of prosecution. This belies Defendant's arguments that Plaintiffs have not shown an injury in fact and that standing did not exist at the time this litigation was filed. The threat of enforcement is discussed more fully below as it relates to standing.

MEMORANDUM DECISION AND ORDER - 12

For these reasons, the Court finds Attorney General Labrador is properly named as the Defendant in this lawsuit under *Ex parte Young* because he has a fairly direct connection to the enforcement of the challenged state law.

## B.     Article III Justiciability

Article III of the Constitution confines the jurisdiction of federal courts only to "cases" and "controversies" – known as "justiciability" – which, as relevant here, encompasses standing and ripeness.[12] The requirements of standing and ripeness are applied "less stringently in the context of First Amendment claims," such as Plaintiffs' claims here. *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022).

### i.     Standing

Standing ensures a plaintiff has a "personal stake in the outcome of the controversy" by requiring that the plaintiff establish: 1) an injury in fact that is concrete and particularized, and actual or imminent; 2) the injury is fairly traceable to the challenged conduct of the defendant; and 3) the injury would likely be redressed by a favorable decision. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (An injury in fact is "an invasion

_____

[12] Article III justiciability also includes considerations of mootness. "A case becomes moot—and therefore no longer a case or controversy for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) (internal quotation marks omitted). Neither party presents arguments related to mootness. For completeness, the Court has reviewed the record and finds the issues presented are live disputes and the parties have a legally cognizable interest in the outcome.

MEMORANDUM DECISION AND ORDER - 13

of a legally protected interest…."). "Each element of standing 'must be supported with the manner and degree of evidence required at the successive stages of the litigation.'" *Unified Data Servs., LLC v. Fed. Trade Comm'n*, 39 F.4th 1200, 1209 (9th Cir. 2022) (quoting *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011)).

Here, Plaintiffs are an individual and two organizations. (Dkt. 1.) The standing inquiry is the same for individuals and organizations, directing the Court to evaluate the three aforementioned requirements to ensure a plaintiff has "'alleged such a personal stake in the outcome of the controversy as to warrant…invocation of federal-court jurisdiction.'" *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 662 (9th Cir. 2021) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982)). Where "at least one plaintiff has standing, the suit may proceed." *Biden v. Nebraska*, 143 S.Ct. 2355, 2365 (2023) (citing *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 53 n. 2 (2006) ("[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement.")); *see also Isaacson v. Mayes*, ___ F.4th ___, No. 23-15234, 2023 WL 7121091, at *3 n. 3 (9th Cir. Oct. 30, 2023).

MEMORANDUM DECISION AND ORDER - 14

### a. Injury in Fact

Plaintiffs' claims raise pre-enforcement challenges to Idaho Code Section 18-623, arguing the statute is facially unconstitutional in violation of the First and Fourteenth Amendments. (Dkt. 1, 12.)[13]

"First Amendment challenges 'present unique standing considerations' because of the 'chilling effect of sweeping restrictions' on speech." *Porter v. Martinez*, 68 F.4th 429, 437 (9th Cir. 2023) (quoting *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1171 (9th Cir. 2018) (quoting *Ariz. Right to Life Pol. Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003))); *see also Tingley v. Ferguson*, 47 F.4th 1055, 1066-67 (9th Cir. 2022). To avoid this chilling effect, the "Supreme Court has endorsed what might be called a 'hold your tongue and challenge now' approach rather than requiring litigants to speak first and take their chances with the consequences." *Italian Colors Rest.*, 878 F.3d at 1171 (citing *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965)); *see also Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 (9th Cir. 2003) (recognizing "[o]ne does not have to await the consummation of threatened injury to obtain preventive relief."). The inquiry tilts "'dramatically toward a finding of standing' when a plaintiff brings a pre-enforcement challenge," because the "chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury." *Tingley*, 47 F.4th at 1066-67 (quoting

---

[13] Because Plaintiffs' motion for injunctive relief raises arguments only as to the First and Fourteenth Amendment claims, the Court will not discuss the claims involving the right to travel in deciding Plaintiffs' Motion.

MEMORANDUM DECISION AND ORDER - 15

*Lopez v. Candaele*, 630 F.3d 775, 781 (9th Cir. 2010); and *Libertarian Party of L.A. Cnty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013)).

In pre-enforcement challenges, "a plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Susan B. Anthony List*, 573 U.S. at 159 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (2014)). Under this relaxed standard, a plaintiff asserts a justiciable injury in fact affecting a constitutional interest by arguing the challenged law burdens their intended protected First Amendment activity. *Tingley*, 47 F.4th at 1067. The relaxed standard also applies to pre-enforcement vagueness challenges based on the Fourteenth Amendment where First Amendment interests are implicated. *Arce v. Douglas*, 793 F.3d 968, 987-88 (9th Cir. 2015); *Isaacson*, 2023 WL 7121091, at *6.

The mere existence of a proscriptive statute alone is insufficient to establish a justiciable claim. *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc). Rather, to establish standing, a plaintiff must demonstrate the existence of a concrete plan to engage in protected activities violating the challenged law, and a credible threat of enforcement. *Id*.

Here, Defendant argues Plaintiffs are without standing because they lack a cognizable and justiciable injury. (Dkt. 32.) Plaintiffs maintain they satisfy all of the requirements for standing and, as relevant to Defendant's contention, assert their injury is

MEMORANDUM DECISION AND ORDER - 16

the invasion of their constitutional rights under the First and Fourteenth Amendment.

(Dkt. 12, 34.)

### 1. Intent to Engage in a course of conduct affecting a constitutional interest, but proscribed by the challenged statute

Plaintiffs allege that their past and desired future activities are affected with a

constitutional interest proscribed by the abortion trafficking statute. Specifically, that

Idaho Code Section 18-623 causes Plaintiffs to self-censor their speech and expressive

activities due to fear of prosecution in violation of the First Amendment, and because the

statute is unconstitutionally vague in violation of the Fourteenth Amendment.

The First Amendment to the Constitution of the United States provides that

"Congress shall make no law... abridging the freedom of speech." U.S. CONST. AMEND. I.

"[A]s a general matter, the First Amendment means that government has no power to

restrict expression because of its message, its ideas, its subject matter, or its content."

*United States v. Stevens*, 559 U.S. 460, 468 (2010) (quoting *Ashcroft v. American Civil

Liberties Union*, 535 U.S. 564, 573 (2002)). The United States Supreme Court recently

reaffirmed that the First Amendment's protections encompass the right to freedom of

speech and expression. *See e.g.*, *303 Creative LLC v. Elenis*, 143 S.Ct. 2298, 2311-12

(2023) (discussing cases recognizing the freedom to think, speak, and acts of expressive

MEMORANDUM DECISION AND ORDER - 17

association).[14] These principles are applicable to the states under the Fourteenth Amendment. *See Promotions, Ltd. v. Conrad*, 420 U.S. 546, 547 (1975).

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV, § 1. A state violates due process by depriving an individual of their life, liberty, or property under a law "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015).

Here, Plaintiffs' intended activities involve providing information, funding, assistance, and other forms of support to minors located in Idaho who seek to procure or obtain legal abortion services in other states, without ensuring the knowledge of or obtaining the consent of the minors' parents or guardians. (Dkt. 1 at ¶¶ 1-6, 40-57, 84-89,94-98, 124-126); (Dkt. 12-7, 12-8, 12-9). Defendant recognizes as much in his response brief. (Dkt. 32 at 9) (describing Plaintiffs' declarations as "clear" evidence "that Plaintiffs want to violate the specific intent requirement…."). Plaintiffs undertook these

---

[14] Plaintiffs allege the statute infringes on their right of association. (Dkt. 1 at ¶ 126.) The right to associate is protected under the First Amendment. *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984) ("[I]mplicit in the right to engage in activities protected by the First Amendment" is "a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends."). The Court need not resolve this aspect of the First Amendment claim at this time, because the rights to speech and expression found herein are sufficient to find standing.

MEMORANDUM DECISION AND ORDER - 18

activities in the past and desire to do so in the future based on their core beliefs, missions, and purposes of protecting the rights of individuals, including minors, in maintaining their personal bodily autonomy, seeking reproductive justice, and accessing all reproductive options. (Dkt. 12-7, 12-8, 12-9.)

Plaintiffs' activities aimed at providing information, support, and assistance about reproductive health options, including legal abortion services, to pregnant individuals constitute protected speech. *Bigelow v. Virginia*, 421 U.S. 809, 824-825 (1975) (holding an advertisement providing information about legal abortion services available in other states was constitutionally protected speech). Plaintiffs have demonstrated an intention to continue to speak, advocate, fundraise, and use their funds to communicate their core beliefs and missions of ensuring the availability of and support for individual's seeking reproductive options, including legal abortion services. Such activities are inherently protected speech. *See e.g.*, *Bigelow*, 421 U.S. at 824; *Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc*., 487 U.S. 781, 789 (1988) ("[T]he solicitation of charitable contributions is protected speech[.]"); *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010) ("[A] prohibition on corporate independent expenditures is thus a ban on speech.").

Further, the assistance and supportive activities Plaintiffs provide to pregnant minors clearly encompass expressive activity in furtherance of Plaintiffs' beliefs,

MEMORANDUM DECISION AND ORDER - 19

missions, and purposes.[15] "[C]onduct may be 'sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments'" where "[a]n intent to convey a particularized message was present, and…the likelihood was great that the message would be understood by those who viewed it." *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (quoting *Spence v. Washington*, 418 U.S. 405, 409 (1974)); *Nunez v. Davis*, 169 F.3d 1222, 1226 (9th Cir. 1999). However, not all forms of conduct "can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *Knox v. Brnovich*, 907 F.3d 1167, 1181 (9th Cir. 2018) (collecting early ballots is not expressive conduct). Context is determinative of whether others will likely understand the intended message conveyed through expressive conduct. *Edge v. City of Everett*, 929 F.3d 657, 669 (9th Cir. 2019).

Here, Plaintiffs' intended activities are protected expression that communicates their particularized messages of support and solidarity for individuals seeking legal

---

[15] The Court finds instructive the Supreme Court's recent decision finding a plaintiff's anticipated expressive acts of designing wedding websites consistent with her beliefs were "pure speech" protected by the First Amendment sufficient to confer standing in the First Amendment pre-enforcement context. *See 303 Creative*, 143 S.Ct. at 2312. There, the Supreme Court recognized the breadth of the First Amendment's protections, stating: "The framers designed the Free Speech Clause of the First Amendment to protect the 'freedom to think as you will and to speak as you think.'" *Id.* at 2310 (quoting *Boy Scouts of America v. Dale*, 530 U.S. 640, 660-61 (2000)). And, that the "First Amendment protects an individual's right to speak his [or her] mind regardless of whether the government considers [their] speech sensible and well-intended or deeply 'misguided.'" *Id.* at 2312. While that case involved government compelled speech, which is not at issue in this litigation, these general principles still hold true here. Plaintiffs planned activities are speech and expressive activities intended to communicate their particular beliefs, purposes, and missions regarding bodily autonomy and reproductive rights and should be afforded the same broad First Amendment protections afforded the website designer in *303 Creative* sufficient to confer standing in the pre-enforcement context. (Dkt. 12-7, 12-8, 12-9.)

MEMORANDUM DECISION AND ORDER - 20

reproductive options, including abortion, through the exchange of information, assistance, funding, and other practical support. (Dkt. 1, 12-7, 12-8, 12-9.) A discussion of each Plaintiff follows.

### a. Lourdes Matsumoto

The individually named Plaintiff, Lourdes Matsumoto, works as an attorney, advocate, and trusted resource for advocates and survivors of sexual and gender violence and abuse. (Dkt. 1 at ¶ 1 and Dkt. 12-7 at ¶¶ 10, 16, 22-24, 28.) In those roles, Matsumoto expresses her belief in bodily autonomy for all individuals and solidarity with abuse survivors through her words and actions. (Dkt. 1 at ¶¶ 1, 40, 43 and Dkt. 12-7 at ¶¶ 12, 16.) Matsumoto engages in expressive activities in her professional capacity when representing private clients; providing advice on how to legally and properly advise abuse survivors; speaking to and working with other advocates; and speaking at conferences and training seminars on topics related to domestic, sexual, and gender violence. (Dkt. 1 at ¶¶ 1, 43 and Dkt. 12-7.) Matsumoto would like to continue providing support and assistance to pregnant minors seeking to obtain an abortion, without the consent of the parents, in the form of communicating the existence of reproductive options counseling, transportation, and temporary shelter; and would further like to provide financial assistance to organizations that support pregnant minors seeking abortions as she has done in the past. (Dkt. 1 at ¶ 43 and Dkt. 12-7.) Matsumoto alleges she is unable to speak about legal abortion care or engage in her desired activities expressive of her personal beliefs and professional obligations because she is unsure about what activities would

MEMORANDUM DECISION AND ORDER - 21

violate Idaho Code Section 18-623, and because she fears an imminent threat of criminal prosecution. (Dkt. 1 at ¶¶ 1, 43, 95-98, 124-130 and Dkt. 12-7 at ¶¶ 47-50.) Further, Matsumoto alleges that but for the statute's lack of clarity and her fear of imminent prosecution, she would assist minors in traveling to other states to get a lawful abortion. (Dkt. 1 at ¶ 68 and Dkt. 12-7 at ¶¶ 47-50.) The Court finds Matsumoto has shown her intended activities affect a constitutional interest for purposes of Article III standing. *Tingley*, 47 F.4th at 1066-67.

### b. Entity Plaintiffs

Each of the entity Plaintiffs, Northwest Abortion Access Fund (NWAAF) and Indigenous Idaho Alliance (IIA), engage in activities to assist pregnant individuals, including minors, with procuring and obtaining abortion services in furtherance of their beliefs and missions. (Dkt. 1 at ¶¶ 2-6, 44-56.) Notably, IIA and NWAAF describe their past methods for providing support and assistance to pregnant minors seeking abortion services, which did not include notification, knowledge, or the consent of the minors' parent or guardian. (Dkt. 1 at ¶¶ 2-6, 44-56 and Dkt. 12-8, 12-9.)

NWAAF is a non-profit independent abortion fund serving the Pacific Northwest. (Dkt. 1 at ¶ 44 and Dkt. 12-9 at ¶¶ 4, 7.) NWAAF provides emotional, financial, logistical, practical, and informational assistance to pregnant individuals considering abortion, including minors without the knowledge or consent of their parents. (Dkt. 12-9 at ¶¶ 4, 9, 13.) NWAAF's activities include providing information, travel funds, travel logistics and organization, and actually driving patients, to legal abortion providers. (Dkt.

MEMORANDUM DECISION AND ORDER - 22

12-9 at ¶¶ 6, 12, 14, 15.) NWAAF provides these services in support of and as part of its mission, commitment, and beliefs in reproductive justice, which recognizes and supports the human right to maintain personal bodily autonomy, to have children or not, and to parent children in safe and sustainable communities. (Dkt. 12-9 at ¶¶ 9, 10.) NWAAF provides these services as a way to communicate its mission to the community. (Dkt. 12-9 at ¶ 11.) NWAAF states that Idaho Code Section 18-623 "directly impacts the mission and work of NWAAF" (Dkt. 12-9 at ¶ 20.) NWAAF alleges it desires to continue these forms of assistance as it has in the past, but fears prosecution under Idaho Code Section 18-623. (Dkt. 1 at ¶¶ 3, 7, 68 and Dkt. 12-9.)

IIA is a non-profit organization working to pursue justice for victims of gender-based violence, ensuring individuals' rights to bodily autonomy, and promoting reproductive choice. (Dkt. 12-8.) In furtherance of its mission and purpose, IIA provides assistance to pregnant minors, with obtaining abortion services without obtaining the knowledge or consent of the minors' parents. IIA alleges it is unsure of what conduct the statute prohibits and that it would continue its activities assisting pregnant Idaho minors in obtaining legal abortions in states outside of Idaho, but is uncertain whether it would be prosecuted for such actions. (Dkt. 1 at ¶¶ 68, 95-98 and Dkt. 12-8.)

NWAAF and IIA allege the statute has and will continue to have a chilling impact on their ability to uphold their missions and may undermine their relationships with donors and members, and their ability to recruit and retain volunteers. (Dkt. 1 at ¶ 128 and Dkt. 12-8, 12-9.) Both entity Plaintiffs allege they receive charitable donations and

MEMORANDUM DECISION AND ORDER - 23

use their funds in furtherance of their missions for activities proscribed by the statute. (Dkt. 1 at ¶¶ 84, 86 and Dkt. 12-8, 12-9.) Both entities state their ability to engage in these activities in furtherance of their missions, as they have in the past, relies on the support of donors and volunteers. (Dkt. 12-8 at ¶ 45 and Dkt. 12-9 at ¶¶ 24, 28.)

### c.  Conclusion

The Court finds the Plaintiffs' intended activities are sufficiently imbued with elements of communication to fall within the First Amendment. Plaintiffs have demonstrated an intention to convey particularized messages through their actions – preservation and availability for all individuals to reproductive justice and bodily autonomy -  and a great likelihood that their messages will be understand by others when considering the context in which Plaintiffs will perform their expressive activities. *Texas v. Johnson*, 491 U.S. at 404.

Matsumoto is well-known and regularly asked for advice and to speak on her beliefs about the importance of bodily autonomy and for providing assistance and solidarity for abuse survivors seeking reproductive options, including abortion. (Dkt. 1 at ¶¶ 1, 43-56.) NWAAF receives volunteer and financial support from donors based on the contributors' shared belief in the NWAAF's purpose and work ensuring that all individuals are able to access the full range of reproductive options, including abortion. (Dkt. 1 at ¶¶ 2-3, 44-52, 125-128.) IIA likewise has shown that to serve its mission, IIA affiliates with and recruits others to assist pregnant individuals, including minors, to access abortion care and to communicate its message that abuse survivors are not alone

MEMORANDUM DECISION AND ORDER - 24

and have support. (Dkt. 1 at ¶¶ 6, 40-41, 56, 125-128.) Importantly, the context of Plaintiffs' activities - speaking publicly, receiving donations intended to support their particularized missions, recruitment of others to work in furtherance of their beliefs, and using their funds to advance their missions - are indicative of expressive communication that conveys each of the Plaintiffs' intended messages. Plaintiffs have therefore shown that their intended activities are constitutionally protected expressive conduct as their particularized messages conveyed through their actions are understood by others.

While Idaho Code Section 18-623 does not overtly prohibit speech or expression, it plainly prevents Plaintiffs from engaging in their intended protected activities of communicating information, advocacy, support, assistance, funding, and association with minors located in Idaho who are seeking to procure or obtain legal abortion services. The statute's prohibition on procuring or obtaining abortion services for minors by "recruiting, harboring, or transporting" necessarily forbids, and has chilled, Plaintiffs from continuing to provide information, practical and emotional support, funding, and assistance to pregnant minors in Idaho who seek to obtain lawful abortion services as they have in the past and intend to do in the future but for the threat of prosecution by Defendant.

Moreover, the Court finds Plaintiffs' facial vagueness challenge further establishes a constitutional interest upon which Article III standing can be tested pre-enforcement. *Isaacson*, 2023 WL 7121091, at *6. As more fully explained below in the discussion of the likelihood of success, Idaho Code Section 18-623 presents serious due process

MEMORANDUM DECISION AND ORDER - 25

concerns. Where, as here, there is an imminent threat of future harm, Plaintiffs' liberty interests are implicated for purposes of Article III, because a violation of Idaho Code Section 18-623 could result in imprisonment. *Id.*

For these reasons, the Court finds Plaintiffs have clearly shown they intend to engage in a course of conduct affecting a constitutional interest proscribed by the statute. Namely, to assist pregnant minors in obtaining lawful abortion services by engaging in activities that could constitute "recruiting, harboring, or transporting," without requiring the knowledge or consent of the minors' parents or guardians. Plaintiffs activities are undertaken as an expression of their core beliefs, particularized messages, and purposes. The statute's proscriptions encompass the very expressive activities Plaintiffs have performed in the past and that they seek to continue in the future. Further, the statute fails to provide notice of the point at which Plaintiffs' intended activities violate the statute and allows for arbitrary enforcement. Consequently, Plaintiffs have refrained from engaging in their constitutionally protected activities due to fear of prosecution under Idaho Code Section 18-623, a violation of which could result in imprisonment. This undeniably establishes an injury in fact for standing purposes. *Susan B. Anthony List*, 573 U.S. at 162-63; *Tingley*, 47 F.4th at 1067 (Plaintiff need only demonstrate a threat of enforcement will cause him or her to self-censor.).

Defendant's contentions - that no constitutional interest is proscribed because the statute "affects conduct" not speech, and because the specific intent requirement satisfies constitutional scrutiny - are unavailing to defeat standing. (Dkt. 32 at 11-19); (Dkt. 36 at

MEMORANDUM DECISION AND ORDER - 26

35, 39-41, 56-57.) Idaho Code Section 18-623 clearly and substantially affects Plaintiffs'

constitutionally protected speech and expressive activities.

Despite Defendant's assurances that Plaintiffs are free to talk about abortion and

provide truthful information to minors about abortion services, nothing in the language of

Idaho Code Section 18-623 limits its reach as Defendant contends. Indeed, defense

counsel acknowledged during the hearing that "recruitment" in violation of Idaho Code

Section 18-623 "could be through speech" and by "talk[ing] to people." (Dkt. 36 at 36)

(stating recruitment could include speech where "you could also talk to people. Hey, I

can get you an abortion. Let's go get you an abortion as well."). Further, defense counsel

conceded during the hearing that some of Plaintiffs' intended expressive activities would

violate the statute. (Dkt. 36 at 30-31, 36) (stating that transporting a minor to an abortion

facility in another state and paying for an abortion with the intent to conceal it from the

minor's parents would constitute procuring an abortion in violation of the statute). By

Defendant's own admissions, the statute is not limited to conduct.

Defendant's contention that the statute's specific intent requirement limits any

unconstitutional restriction on speech goes to the merits of Plaintiffs' claims, not Article

III standing.[16] *See E. Bay Sanctuary Covenant*, 993 F.3d at 665 ("[A] plaintiff can have

standing despite losing on the merits.") (citation omitted); *Maya v. Centex Corp.*, 658

_____

[16] The merits of Plaintiffs' claims are addressed below, where the Court finds Plaintiffs have
shown a substantial likelihood of success on their First Amendment claim.

MEMORANDUM DECISION AND ORDER - 27

F.3d 1060, 1068 (9th Cir. 2011) ("[T]he threshold question of whether plaintiff has standing (and the court has jurisdiction) is distinct from the merits of his claim. Rather, the jurisdictional question of standing precedes, and does not require, analysis of the merits.") (brackets and citations omitted)); *Cath. League for Religious & C.R. v. City & County of San Francisco*, 624 F.3d 1043, 1049 (9th Cir. 2010) (en banc) ("Nor can standing analysis, which prevents a claim from being adjudicated for lack of jurisdiction, be used to disguise merits analysis, which determines whether a claim is one for which relief can be granted if factually true.").

For these reasons, the Court finds Plaintiffs have satisfied the first requirement for pre-enforcement standing by demonstrating they intend to engage in a course of conduct affected with a constitutional interest that is proscribed by the statute.

## 2.  Credible Threat of Future Prosecution

The Court now turns to the second requirement for pre-enforcement standing – a credible threat of prosecution. To assess whether a claimed threat of prosecution is genuine enough to confer an Article III injury, the Ninth Circuit applies a three factor inquiry asking: "(1) whether the plaintiff has a 'concrete plan' to violate the law, (2) whether the enforcement authorities have 'communicated a specific warning or threat to initiate proceedings,' and (3) whether there is a 'history of past prosecution or enforcement.'" *Tingley*, 47 F.4th at 1066-67 (quoting *Thomas*, 220 F.3d at 1139).

MEMORANDUM DECISION AND ORDER - 28

Defendant challenges the credibility of the claimed threat of prosecution under the first and second *Thomas* factors: 1) whether Plaintiffs have a concrete plan to violate the law; and 2) whether there is a credible threat of prosecution. (Dkt. 32.)[17]

### a.  Concrete Plan to Violate the Law

First, relying on *Lopez v. Candaele*, 630 F.3d 775 (9th Cir. 2010), Defendant argues Plaintiffs' have not shown a sufficiently specific and particularized intention to violate Idaho Code Section 18-623, and therefore have not established an injury in fact. Defendant's reliance on *Lopez* is misplaced. In *Lopez*, the court stated pre-enforcement plaintiffs must show an intention to violate the challenged law by giving "some degree of concrete details" about future conduct. *Lopez*, 630 F.3d at 786-87. However, specific details of future plans are not required to establish a concrete plan to violate the law where plaintiff demonstrates having "already violated the law in the past" or describes "specific past instances" of having undertaken actions that would violate the law. *Tingley*, 47 F.4th at 1068 (plaintiffs do not need to specify when, who, where, or under what circumstances they intend to violate the law.). *Id.* Rather, in the First Amendment

---

[17] Although Defendant does not contest the third *Thomas* factor, the Court has considered the factor to ensure jurisdiction is appropriate. The history of enforcement carries "little weight" given the statute is newly enacted. *See Tingley*, 47 F.4th at 1068 ("The third factor, concerning the history of enforcement, carries 'little weight' when the challenged law is 'relatively new' and the record contains little information as to enforcement."). While it appears there have been no prosecutions in the short time since Idaho Code Section 18-623 was enacted, the minimal weight afforded to the third factor does not discredit the genuineness of the threat of enforcement found herein based on the other *Thomas* factors, which the Court finds sufficient for standing purposes.

MEMORANDUM DECISION AND ORDER - 29

context, a plaintiff need only show that a threat of potential enforcement caused them to self-censor. *Id.*

Here, Plaintiffs' declarations establish a concrete plan to violate Idaho Code Section 18-623. Plaintiff Matsumoto is an attorney and advocate who previously provided assistance to minors seeking abortion services in the form of information, support, advocacy, and other forms of assistance. (Dkt. 12-7 at ¶¶ 47, 50, 53.) Matsumoto provided this assistance unaware of whether the minor's parents or guardian knew about the abortions. Matsumoto desires to continue providing the same kind of assistance to pregnant minors in Idaho who seek abortion in the same ways she did before the enactment of Idaho Code Section 18-623. Further, Matsumoto states she would like to provide minors seeking reproductive options, including abortion, with counseling, transportation, temporary shelter, and practical financial and logistical assistance in the future. (Dkt. 12-7 at ¶¶ 48, 49, 53, 56.)

Plaintiff NWAAF provides emotional, financial, logistical, practical, and informational assistance to pregnant minors seeking abortion services in the form of information, travel funds, travel logistics and organization, driving patients to abortion providers, and food and lodging assistance. (Dkt. 12-9 at ¶¶ 4-6, 8, 12, 15, 17, 18.) These actions have been provided by NWAAF without requiring or obtaining the knowledge and consent of parents or guardians of the minors. (Dkt. 12-9 at ¶¶ 13, 19.) NWAAF desires to continue providing these services to pregnant minors without seeking or obtaining consent from any parent or guardian. (Dkt. 12-9 at ¶¶ 14, 21-23, 37, 40.)

MEMORANDUM DECISION AND ORDER - 30

Plaintiff IIA has provided pregnant minors with information about reproductive health care options, including abortion, and assisted with accessing abortion services. (Dkt. 12-8 at ¶¶ 37, 38.) IIA has coordinated transportation of pregnant minors to obtain lawful abortion care; provided financial assistance to pay for travel, meals, and medical care expenses incurred in the process of obtaining abortions where they are legal; and obtained and distributed abortion-inducing drugs to minors. (Dkt. 12-8 at ¶¶ 41, 43, 49, 52.) IIA provides these services without obtaining the consent or knowledge of the minor's parents or guardian. (Dkt. 12-8 at ¶¶ 39, 50, 53.) IIA seeks to continue providing these services without fear of imprisonment. (Dkt. 12-8 at ¶¶ 37, 40, 42, 58-59, 61.)

Plaintiffs' declarations detail their past activities providing assistance and support to pregnant minors seeking to obtain abortion services without requiring the consent or knowledge of the minors' parents or guardians, which would violate Idaho Code Section 18-623, and their desire to continue those activities but have not because of fear of prosecution. *Tingley*, 47 F.4th at 1067-68. This is sufficient for Article III standing. *Id.*

The Court is not required to speculate or guess as to the Plaintiffs' intended course of conduct or the content of their message. *Lopez*, 630 F.3d at 787. Their declarations makes clear that if it were legal to do so, Plaintiffs would engage in protected activities proscribed by Idaho Code Section 18-623. Namely, providing information, assistance, funding, transportation, housing, support, and the like to pregnant minors in Idaho seeking lawful abortion services without obtaining the consent of the parents or guardians. This establishes more than a mere generalized, hypothetical

MEMORANDUM DECISION AND ORDER - 31

intention to violate the law and is sufficient to demonstrate a concrete plan necessary for standing. *Thomas*, 220 F.3d at 1139. Plaintiffs have modified their speech and expressive activities by refraining from engaging in the specified actions which they have previously undertaken because of a credible threat of prosecution under Idaho Code Section 18-623. *Italian Colors Rest.*, 878 F.3d at 1174. Defendant's assertions to the contrary are unpersuasive and demand more than is required here to find a concrete plan to violate the law sufficient for Article III standing. *See Tingley*, 47 F.4th at 1067-68 (allegations of past work and expected future work sufficient to show a plan to violate the law).

That Plaintiffs have a concrete plan to violate the specific intent required under Idaho Code Section 18-623 is further evidenced by their vagueness claim. There, Plaintiffs again argue that they ceased their expressive speech and activities out of fear of prosecution because they do not know whether their past or intended future activities fall within the statute's prescription on "recruiting," which is undefined.[18] Plaintiffs further allege it is unknown what culpability attaches to communications or lack thereof with a pregnant minor's parents or guardians, what is required by the intent to conceal provision, and what is needed to invoke the statute's affirmative defense. (Dkt. 1 at ¶¶ 63-64, 97-98); (Dkt. 12 at 16); (Dkt. 34 at 8-10).

---

[18] The statute prohibits "recruiting, harboring, and transporting." Plaintiffs argue all three terms, as well as other terms and aspects of the statute, are unconstitutionally vague and violate their First Amendment rights. For purposes of this motion, the Court will primarily discuss the argument's related to the term "recruiting," as it is the obvious and strongest support for finding Plaintiffs have standing and have shown a likelihood of success on the merits.

MEMORANDUM DECISION AND ORDER - 32

Based on the foregoing, the Court finds that the Complaint and Plaintiffs' Declarations establish Plaintiffs have a concrete and particularized intention to engage in activities proscribed by Idaho Code Section 18-623, including violating the specific intent element. *See e.g.*, (Dkt. 1 at ¶¶ 26-32, 47, 55, 63-64, 98); (Dkt. 12-7, 12-8, 12-9).

### b. Threat to Initiate Proceedings

Next, Defendant argues Plaintiffs have not shown the Attorney General made a specific warning or threat to initiate prosecution proceedings under the statute. (Dkt. 32 at 25-28.)

In the pre-enforcement context, a plaintiff asserting a First Amendment claim "need only demonstrate that a threat of potential enforcement will cause him [or her] to self-sensor." *Tingley*, 47 F.4th at 1068 (quoting *Protectmarriage.com-YES on 8 v. Bowen*, 752 F.3d 827, 839 (9th Cir. 2014)). "[W]here a plaintiff has refrained from engaging in expressive activity for fear of prosecution under the challenged statute, such self-censorship is a constitutionally sufficient injury as long as it is based on an actual and well-founded fear that the challenged statute will be enforced." *Libertarian Party of L.A.*, 709 F.3d at 870 (quoting *Human Life of Wash. Inc. v. Brumsickle*, 624 F.3d 990, 1001 (9th Cir. 2010)).

However, "[i]n the free speech context, such a fear of prosecution will only inure if the plaintiff's intended speech arguably falls within the statute's reach." *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1095 (9th Cir. 2003). A claim of future harm lacks credibility when the challenged statute, by its terms, does not apply to plaintiff, or

MEMORANDUM DECISION AND ORDER - 33

the enforcing authority has disavowed the applicability of the challenged law. *Lopez*, 630
F.3d at 788; *Barke v. Banks*, 25 F.4th 714, 719-20 (9th Cir. 2022). However, the
government's failure to disavow enforcement of the law weighs in favor of standing.
*Tingley*, 47 F.4th at 1068.

Here, Plaintiffs' intended activities fall within the reach of Idaho Code Section 18-
623. By its terms, Idaho Code Section 18-623 criminalizes "recruiting, harboring, or
transporting" a pregnant minor in Idaho for the purpose of procuring an abortion or an
abortion-inducing drug. Those acts – "recruiting, harboring, or transporting" pregnant
minors to obtain abortion services – plainly encompass the very speech and expressive
activities which Plaintiffs have declared that they have engaged in in the past and, were it
not for Idaho Code Section 18-623, would continue to engage in today and in the future,
as expressive of their core beliefs and purposes in advocating for and supporting
reproductive freedom. (Dkt. 12-7, 12-8, 12-9.) Thus, Plaintiffs' fear of prosecution is
well-founded as their intended speech falls within the statute's reach.

Critically, Attorney General Labrador has not disavowed his authority to prosecute
Plaintiffs under the statute if any county prosecutor refuses to do so, or refers a case.
*Holder v. Humanitarian Law Project*, 561 U.S. 1, 16 (2010) (government's non-
disavowal of future enforcement is a relevant factor in determining standing). Defense
counsel expressly acknowledged during the hearing that Attorney General Labrador has
not disavowed his authority to prosecute if a case is referred to his office. (Dkt. 36 at 53-
54.)

MEMORANDUM DECISION AND ORDER - 34

Further evidence of a genuine threat to initiate prosecution is Attorney General Labrador's legal opinion dated March 13, 2023, which concludes: House Bill 242, later enacted as Idaho Code Section 18-623, is constitutional; a proper exercise of the State's broad police power; and enforceable in all respects. (Dkt. 12-5.) The opinion expressly recognizes the statute's provision "which authorizes the Attorney General to prosecute violations of Idaho Code section[]…18-623 if the local prosecuting attorney refuses to." (Dkt. 12-5 at 3 n. 2.)

Similarly, Attorney General Labrador has indicated his intent to enforce Idaho's criminal abortion ban where the abortion occurs in another state. In a now withdrawn letter dated March 27, 2023, Attorney General Labrador stated "Idaho law prohibits an Idaho medical provider from either referring a woman across state lines to access abortion services or prescribing abortion pills for the woman to pick up across state lines" as such actions violate Idaho Code Section 18-622. (Dkt. 12-4.) The March 27, 2023 letter was recently found to constitute a genuine threat of enforcement by Attorney General Labrador against medical providers for violations of Idaho Code Section 18-622 sufficient for Article III standing. *Planned Parenthood GNW*, 2023 WL 4864962. While the letter is not determinative of Article III standing for the parties and statute at issue in this lawsuit, the Attorney General's broad position concerning enforcement of Idaho's criminal abortion statutes is telling and lends support to the legitimacy of Plaintiffs' fear of being prosecuted by the Attorney General under Idaho Code Section 18-623.

MEMORANDUM DECISION AND ORDER - 35

Based on the foregoing, the Court finds Plaintiffs have established an injury in fact that is sufficiently concrete, particular, and imminent sufficient to establish Article III standing in this pre-enforcement context.

### b. Causal Connection and Redressability

Turning to the remaining two elements of Article III standing – a fairly traceable causal connection and redressability – Defendant does not contest these elements independent from the injury in fact and Eleventh Amendment inquires, which are addressed elsewhere in this decision. Still, the Court has an independent obligation to ensure all of the requirements for the exercise of its jurisdiction exist. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); *Washington v. Trump*, 847 F.3d 1151, 1159 (9th Cir. 2017).

As to traceability, Plaintiffs' alleged injury - violation of their First and Fourteenth Amendment rights - stems from their legitimate fear of prosecution by Attorney General Labrador if they engage in their past and intended future activities of assisting Idaho minors with obtaining legal abortion services without the knowledge or consent of the parents or guardians.[19] Consequently, Plaintiffs have refrained from pursuing activities that involve their constitutionally protected freedoms of speech, expression, and association. Further, Plaintiffs claim they have self-censored their expressive activities

---

[19] For the reasons discussed herein, the Court finds Plaintiffs have establish Attorney General Labrador has the authority to prosecute under the statute, in certain circumstances, and that the threat of future enforcement by Attorney General Labrador is substantial.

MEMORANDUM DECISION AND ORDER - 36

because the statute is unconstitutionally vague such that it is unknown what is prohibited, and it allows for and encourages arbitrary enforcement. This, the Court finds, establishes a substantial likelihood of future enforcement that is fairly traceable to Defendant. *California v. Texas*, 141 S.Ct. 2104, 2114 (2021) (The fairly traceable requirement for Article III standing to challenge the constitutionality of a statute, requires a plaintiff to assert an injury that is the result of the statute's actual or threatened enforcement, whether today or in the future, and in the absence of contemporary enforcement, plaintiffs must show that the likelihood of future enforcement is substantial) (quoting *Susan B. Anthony List*, 573 U.S. at 164).

As to redressability, Plaintiffs have demonstrated that they have suffered an injury which would be redressed by enjoining Attorney General Labrador from exercising his enforcement powers under Idaho Code Section 18-623. "To determine whether an injury is redressable, a court will consider the relationship between 'the judicial relief requested' and the 'injury'" suffered. *California v. Texas*, 141 S.Ct. at 2115 (quoting *Allen v. Wright*, 468 U.S. 737, 753, n. 19 (1984)). Here, Plaintiffs seek to enjoin Attorney General Labrador from enforcing Idaho Code Section 18-623, to the extent he has the authority to do so, and, thereby, alleviate Plaintiffs' genuine concerns of being prosecuted by Defendant for exercising their constitutionally protected rights. The Court finds the relief requested is sufficiently redressable for standing purposes.

Granting the requested relief would preclude Attorney General Labrador from enforcing Idaho Code Section 18-623, to the extent he has authority, and thus relieve a

MEMORANDUM DECISION AND ORDER - 37

discrete injury by ensuring Plaintiffs will not be prosecuted for abortion trafficking by

Defendant if a county prosecutor refuses to do so or refers a case to the Attorney General.

*See Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982) ("[A] plaintiff satisfies the

redressability requirement when he shows that a favorable decision will relieve a discrete

injury to himself. He need not show that a favorable decision will relieve his every

injury."). That there is a possibility of Plaintiffs being prosecuted by county prosecutors,

does not nullify the redress Plaintiffs will receive by the Court enjoining Attorney

General Labrador in this matter. The existence of other obstacles to complete relief does

not foreclose standing, as plaintiffs are "not required to solve all roadblocks

simultaneously and [are] entitled to tackle one roadblock at a time." *Ibrahim v. Dep't of

Homeland Sec.*, 669 F.3d 983, 993 (9th Cir. 2012).

For these reasons, the Court finds Plaintiffs meet all of the requirements for

standing. Plaintiffs have demonstrated a causal connection between the harm alleged and

the conduct complained of that is fairly traceable to Defendant, and that the relief they

seek is redressable by a favorable decision.

### c. Entity Standing

Plaintiffs NWAAF and IIA assert both associational and organizational standing.

(Dkt. 1 at ¶¶ 3-6, and Dkt. 12 at 10.) The Court will address the particulars of these

Plaintiffs' standing at this juncture, before concluding the discussion of standing.

"Organizations can assert standing on behalf of their own members [associational

MEMORANDUM DECISION AND ORDER - 38

standing], or in their own right [organizational standing]." *E. Bay Sanctuary Covenant*, 993 F.3d at 662 (citations omitted).

Associational standing exists where a plaintiff establishes that: "(1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1096 (9th Cir. 2021). Organizational standing exists where a plaintiff "establishes that the defendant's behavior has frustrated its mission and caused it to divert resources in response to that frustration of purpose," or "by showing that [it] would have suffered some other injury had [it] not diverted resources to counteracting the problem." *Fellowship of Christian Athletes v. San Jose Unified School Dist. Bd. Of Ed.*, 82 F.4th 664, 682-83 (9th Cir. 2023) (citations omitted).

Here, both entities have identified a member with standing to sue in their own right. Named in the Complaint is IIA founder and organizer, Tai Simpson. (Dkt. 1 at ¶¶ 5, 6.) Simpson submitted a Declaration attesting that she and members of IIA have in the past provided assistance to pregnant minors to procure or obtain abortion services in furtherance of and as expression of their core beliefs, which align with those of IIA. (Dkt. 12-8.) Simpson states that she wants to keep providing this assistance, but fears prosecution. (Dkt. 12-8.) For its part, NWAAF submitted a declaration of Megan Kovacs, a board member. (Dkt. 12-9.) Kovacs states that she shares the mission and purpose of

MEMORANDUM DECISION AND ORDER - 39

NWAAF and that she wants to continue providing the same assistance and services to minors seeking to obtain abortions, but fears prosecution. (Dkt. 12-9 at ¶¶ 14, 21-23, 29.)

Like Plaintiff Matsumoto, Simpson and Kovacs have expressed an intention to engage in speech and expressive activities in furtherance of their particularized beliefs, which are consistent with their respective organizations, but are prohibited to do so by the challenged statute. Thus, Simpson and Kovacs would have individual standing to sue in their own right.

Further, the claims raised here are clearly germane to their organizations purposes and missions. IIA is a non-profit organization established in 2012, who's work includes pursuing justice for victims of gender-based violence, ensuring individual bodily autonomy, and promoting reproductive choice. (Dkt. 12-8.) IIA's mission activities include assisting pregnant individuals, including minors, with procuring and obtaining abortion services, without the knowledge or consent of parents. (Dkt. 1 at ¶¶ 6, 55, and Dkt. 12-8.) Similarly, NWAAF is a non-profit, independent abortion fund that provides emotional, financial, logistical, practical, and informational assistance to pregnant individuals, including minors, seeking abortion as an option. (Dkt. 1 at ¶¶ 2-3 and Dkt. 12-9 at ¶ 4.) NWAAF provides these services as part of its "commitment and support of reproductive justice, which recognizes and supports the human right to maintain personal bodily autonomy" and to decide whether to have or not have children. (Dkt. 12-9 at ¶ 9.) Both entities engage in these activities as an expression of their beliefs, missions, and purposes, but now fear prosecution if they continue to do so. (Dkt. 1 at ¶¶ 40-41, 56, 84-

MEMORANDUM DECISION AND ORDER - 40

86, and Dkt. 12-8, 12-9.) Neither the claims asserted nor the relief requested requires the

participation of the individual members in the lawsuit. Accordingly, the Court finds

Plaintiffs NWAAF and IIA have established associational standing.

      **ii.**   **Ripeness**

      The next justiciability requirement of ripeness is "peculiarly a question of timing."

*Thomas*, 220 F.3d at 1138 (quoting *Regional Rail Reorg. Act Cases*, 419 U.S. 102, 140

(1974)). "The 'basic rationale' of the ripeness requirement is 'to prevent the courts,

through avoidance of premature adjudication, from entangling themselves in abstract

disagreements.'" *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022). Ripeness is

separated into constitutional and prudential components. *Id.*; *Tingley*, 47 F.4th at 1070.

      "[T]he constitutional component of ripeness is synonymous with the injury-in-fact

prong of the standing inquiry," addressed above. *Twitter*, 56 F.4th at 1173 (quoting *Cal.*

*Pro-Life Council, Inc.*, 328 F.3d at 1094 n. 2); *see also Thomas*, 220 F.3d at 1138 (noting

that "in many cases, ripeness coincides squarely with standing's injury in fact prong").

Based on the standing discussion above, the Court finds Plaintiffs have established the

constitutional component for ripeness.

      The prudential component considers "the fitness of the issues for judicial decision,

and the hardship to the parties of withholding court consideration." *Tingley*, 47 F.4th at

1070 (quoting *Thomas*, 220 F.3d at 114). Fitness of the issues is established when "the

issues raised are primarily legal, do not require further factual development, and the

challenged action is final." *Id.* Hardship requires looking at whether the challenged law

MEMORANDUM DECISION AND ORDER - 41

"requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance." *Id.* at 1071.

Defendant argues Plaintiffs have not shown a specific and credible threat of adverse action or, stated differently, "a genuine threat of imminent prosecution." (Dkt. 32 at 25, 28.) Further, Defendant contends this case is not fit for judicial review because any individuals with whom the Plaintiffs intend to engage are not 'identifiable' and the case presents no 'concrete factual scenario' to which the law applies." (Dkt. 32 at 28.) The Court finds otherwise.

As to fitness of the issues, the claims raised in this lawsuit are purely legal facial challenges to the constitutionality of Idaho Code Section 18-623. No further factual development is required and the challenged action is final because the claims involve alleged infringement on Plaintiffs' First and Fourteenth Amendment rights based on the threat of prosecution by Defendant under a statute that has been enacted into law. *Tingley*, 47 F.4th at 1070. Such contests are properly raised pre-enforcement. *Id.* at 1067.

The hardship requirement is easily met here. Plaintiffs immediately and significantly changed their activities upon the enactment of Idaho Code Section 18-623, most notably by refraining from specified constitutionally protected activities due to fear of prosecution. (Dkt. 12-7, 12-8, 12-9.) Each of the Plaintiffs have demonstrated a desire to resume their expressive actions without fear of being prosecuted. For these reasons, the Court finds Plaintiffs have demonstrated that they will suffer significant hardship without judicial consideration of their claims.

MEMORANDUM DECISION AND ORDER - 42

Based on the foregoing, the Court finds Plaintiffs' claims are ripe for adjudication.

**2.    Preliminary Injunction**

Turning to the merits of the Motion for Preliminary Injunction, the Court finds Plaintiffs have demonstrated that: 1) they are likely to succeed on the merits of their First and Fourteenth Amendment claims; 2) they are likely to suffer irreparable harm in the absence of preliminary relief; 3) the balance of equities tips in their favor; and 4) an injunction is in the public interest.

**A. Likelihood of Success on the Merits**

**i.      First Amendment Claim**

Plaintiffs assert that Idaho Code Section 18-623 is facially overbroad in violation of the First Amendment. In this type of facial challenge, "a law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449, n. 6)). The first step in the overbreadth analysis is to construe the challenged statute. *Id.* at 474 (quoting *United States v. Williams*, 553 U.S. 285, 293 (2008)). Where a law regulates expression based on content, it is "'presumptively invalid,' and the Government bears the burden to rebut the presumption.'" *Id.* at 468 (2010) (quoting *United States v. Playboy Entm't Grp., Inc*., 529 U.S. 803, 817 (2000)).

MEMORANDUM DECISION AND ORDER - 43

Here, Plaintiffs claim Defendant's threatened enforcement of the abortion trafficking statute violates their First Amendment rights of speech and expression by preventing them from providing information, assistance, advocacy and monetary support to individuals seeking lawful reproductive options and has chilled Plaintiffs' ability to uphold their missions. (Dkt. 12 at 10-12.) In opposition, Defendant argues the statute does not prohibit speech or expression. Rather, Defendant contends Idaho Code Section 18-623 is narrowly tailored to prohibit only conduct that "intentionally causes a pregnant minor's abortion with an intent to conceal the abortion from the minor's parents" and therefore does not threaten Plaintiffs' First Amendment rights. (Dkt. 32 at 6.)

The Court finds Idaho Code Section 18-623 is a content-based regulation of protected speech and expression.[20] The statute plainly regulates expression based on content by restricting adults from engaging in activities that advocate, assist, and communicate information and support to pregnant minors about legal abortion options. Namely, the abortion trafficking statute forbids adults from "recruiting, harboring, or transporting" a pregnant minor to "procure" an abortion or "obtain" abortion-inducing drugs – the very constitutionally protected activities that Plaintiffs have performed in the

---

[20] Even if the statute is viewed as content-neutral, Plaintiffs have demonstrated a likelihood of showing the statute fails the standard articulated in *United States v. O'Brien*, 391 U.S. 367, 376 (1968), because Idaho Code Section 18-623 imposes more than an incidental restriction on Plaintiffs' constitutionally protected speech and expressive activities, and its restrictions are greater than necessary to further the state's interest. As discussed throughout this decision, the statute substantially affects Plaintiffs' First Amendment activities and is sweepingly overbroad.

MEMORANDUM DECISION AND ORDER - 44

past and intend to engage in in the future. (Dkt. 12-8, 12-8, 12-9.) In particular, the statute's restriction on "recruiting" squarely quashes Plaintiffs' speech and expression about abortion as a viable and legal reproductive option. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (A speech regulation is content-based if it "target[s] speech based on its communicative content."). Indeed, that the statute targets certain speech and expression is evident from the fact that it excludes from its prohibitions "the providing of information regarding a health benefit plan." Idaho Code § 18-623(1). By its own terms, the statute expressly allows some speech about a health benefit plan, but forbids other speech about abortion options. A law restricting speech or expression about a particular topic or viewpoint is unmistakably content-based. *See National Inst. of Fam. & Life Advocs. v. Becerra*, 138 S.Ct. 2361, 2378 (2018) (The Supreme Court's "precedents are deeply skeptical of laws that 'distinguish among different speakers, allowing speech by some but not others.'"); *Reed*, 576 U.S. at 163-64 (holding a speech regulation is content-based, and thus presumptively invalid, if it "draws distinctions based on the message a speaker conveys."). Because the statute is a content-based regulation of constitutionally protected expression, it is subject to strict scrutiny. *Stevens*, 559 U.S. at 468; *Holder*, 561 U.S. at 26-28 (applying strict scrutiny where the conduct triggering coverage under the statute consists of communicating a message).

Under strict scrutiny, a law must be narrowly tailored to serve a compelling state interest. *Reed*, 576 U.S. at 163. At this preliminary stage of the litigation, the Court finds Defendant has failed to show that Idaho Code Section 18-623 is narrowly tailored to

MEMORANDUM DECISION AND ORDER - 45

serve a compelling state interest. *Id.* at 155. The statute's broad restrictions on "procuring" or "obtaining" abortion services, and "recruiting, harboring, and transporting" encompass a wide swath of protected activities and are not narrowly tailored to serve the state's stated interests in protecting parental rights.[21]

Nothing in the statute defines or narrows the breadth of activities encompassed in the proscriptions on "recruiting, harboring, and transporting," or "procuring" and "obtaining" abortion services - including the specific intent provision that Defendant relies upon. (Dkt. 32 at 18.) To be sure, the statute contains several elements that must be met for a person to be convicted. However, the existence of other elements needed to complete the crime does not narrow or limit the spectrum of activities encompassed within the crime of abortion trafficking, particularly when the language of the statute is undefined and vague. To the extent the intent to conceal requirement provides any limitation on the statute's sweeping restrictions, it is not sufficiently narrow.[22] Rather, the statute's broad and undefined proscriptions on "recruiting, harboring, and transporting," and "procuring" or "obtaining" abortion services, easily capture Plaintiffs' protected speech and expressive activities within their reach.

---

[21] The state has a legitimate interest in protecting parental rights, which is discussed more fully below.

[22] That the specific intent element fails to narrow the reach of the statute is further evidenced by the statute's vagueness, as discussed next.

MEMORANDUM DECISION AND ORDER - 46

The Court further finds Plaintiffs have demonstrated a colorable claim that their constitutionally protected speech and expressive activities have been infringed, or are threatened with infringement, by the abortion trafficking statute. The statute's broad restrictions on "recruiting, harboring, and transporting" cast a wide net that ensnares in its prohibitions Plaintiffs' speech and expressive activities that are plainly permissible and protected under the First Amendment. *Bigelow*, 421, U.S. at 824-25; *Texas v. Johnson*, 491 U.S. at 404. Most tellingly, many of Plaintiffs' speech and expressive activities fall within the prescription on "recruiting." For instance, Plaintiffs' constitutionally protected activities advocating for reproductive choice and bodily autonomy by providing emotional, symbolic, and practical support to assist minors with procuring or obtaining legal abortion services without the minor's parents being notified or having knowledge. This advocacy necessarily includes speech and expressive activities falling within the statute's reach. (Dkt. 36 at 36) (Defendant arguing that <u>talking</u> to people, offering rides, and paying for an abortion in another state all can constitute recruiting.). Similarly, the statute forbids "procur[ing]" or "obtain[ing]" an abortion or an abortion inducing drug for a pregnant minor. Both are activities Plaintiffs have engaged in in the past and want to continue in the future as an expression of their beliefs in bodily autonomy and reproductive choice, and their missions and messages communicating their support to those who seek reproductive options - such as survivors of abuse and minors. Plaintiffs have ceased and refrained from engaging in their protected expressive activities due to fear of being prosecuted for abortion trafficking.

MEMORANDUM DECISION AND ORDER - 47

This, the Court finds, demonstrates Plaintiffs are likely to establish that the statute is unconstitutionally overbroad in a substantial number of its applications by restricting Plaintiffs from engaging in expressive activities that are at the very core of their beliefs, missions, and messages – assisting pregnant minors in procuring and obtaining lawful abortion services without obtaining the knowledge or consent of the minors' parents or guardians. (Dkt. 12-7, 12-8, 12-9.) The burden on Plaintiffs' protected speech is disproportionate to any legitimate sweep of the statute. Without the ability to engage in their protected activities and to provide the services and support prohibited by Idaho Code Section 18-623, Plaintiffs are effectively muted from meaningfully communicating and expressing their messages and beliefs consistent with their missions and purposes.

For these reasons, the Court finds Plaintiffs have shown a likelihood of success on the merits of their First Amendment claim. Plaintiffs have demonstrated that their First Amendment rights have been infringed and that the number of impermissible unconstitutional applications swept up in the statute's proscriptions are substantial when viewed in relation to the statute's stated purpose of protecting parental rights. Further, the statute's proscriptions are not narrowly tailored to serve a compelling government interest.

### ii.    Fourteenth Amendment Claim

Plaintiffs also facially challenge Idaho Code Section 18-623 as unconstitutionally vague in violation of the Fourteenth Amendment. "The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair

MEMORANDUM DECISION AND ORDER - 48

enforcement—depends in part on the nature of the enactment." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc*., 455 U.S. 489, 498 (1982). Relevant here, criminal laws are subject to the most exacting scrutiny because "[t]he essential purpose of the 'void for vagueness' doctrine is to warn individuals of the criminal consequences of their conduct." *Jordan v. De George*, 341 U.S. 223, 230 (1951). Likewise, vagueness concerns are heightened where a statute "threatens to inhibit the exercise of constitutionally protected rights." *Village of Hoffman Estates*, 455 U.S. at 499. "[W]hen a statute 'interferes with the right of free speech or of association, a more stringent vagueness test should apply.'" *Holder*, 561 U.S. at 18 (quoting *Village of Hoffman Estates*, 455 U.S. at 499).

A statute is unconstitutionally vague if it fails to provide "a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008). "But, 'perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity.'" *Williams*, 553 U.S. at 304 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)). The vagueness doctrine is comprised of two theories: fair notice and arbitrary enforcement. *Tingley*, 47 F.4th at 1089. Plaintiffs argue both here.

As to the first, "[t]he operative question under the fair notice theory is whether a reasonable person would know what is prohibited by law." *Tingley*, 47 F.4th at 1089. "But where First Amendment freedoms are at stake, an even greater degree of specificity

MEMORANDUM DECISION AND ORDER - 49

and clarity of laws is required, and courts ask whether language is sufficiently murky that speakers will be compelled to steer too far clear of any forbidden areas." *Edge v. City of Everett*, 929 F.3d 657, 664 (9th Cir. 2019) (internal citations and marks omitted). "This enhanced standard protects against laws and regulations that might have the effect of chilling protected speech or expression by discouraging participation." *Id*. Additionally, "[w]here a statute imposes criminal sanctions, a more demanding standard of scrutiny applies" *Hunt v. City of Los Angeles*, 638 F.3d 703, 712 (9th Cir. 2011) (internal quotation marks omitted). Both bases for enhanced scrutiny apply here.

As to the second, the vagueness doctrine's restriction on "arbitrary and discriminatory enforcement," demands that laws "provide explicit standards for those who apply them." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). A law that "relies on a subjective standard," or "lacks any ascertainable standard for inclusion and exclusion" is "constitutionally suspect." *Tingley*, 47 F.4th at 1090; *Edge*, 929 F.3d at 665.

Here, Idaho Code Section 18-623 fails to provide fair notice or ascertainable standard of what is and what is not abortion trafficking. The terms "recruiting, harboring, or transporting" are undefined, overbroad, and vague, making it impossible for a reasonable person to distinguish between permissible and impermissible activities. Indeed, the co-sponsor of the legislation recognized as much during testimony to the Idaho Senate State Affairs Committee. (Dkt. 12-6, Dec. Olson, Ex. 4) (Sen. Todd Lakey's March 27, 2023 Testimony on Idaho H.B. 242 that "recruiting, harboring, and

MEMORANDUM DECISION AND ORDER - 50

transporting, those are descriptive words, I guess the court would have to decide if the conduct constitutes one of those three things.").

Most notably, as relevant to Plaintiff's intended activities, there is no definition for what constitutes "recruiting." Defense counsel argued during the hearing that something more than merely providing information about abortion services is required to violate the statute, and listed examples of conduct that he believed could amount to recruiting – offering rides to abortion clinics, paying for an abortion, and encouraging or offering to help an individual get an abortion. (Dkt. 36 at 30, 36.) However, nothing in the statute itself defines "recruiting" or provides any objective measure of what constitutes "recruiting" as proscribed by the statute.

Moreover, the statute expressly excludes "providing information regarding a health benefit plan" from its prohibitions. Idaho Code Section 18-623(1). It is entirely unclear whether the exclusion means that other acts of "providing information" fall within the statute's proscriptions. And, there is no definition of what constitutes a "health benefit plan." The statute offers no clear guidance to individuals or those charged with its enforcement as to what actions violate the statute. For example, it is unknown whether the provision of information about abortion services to a minor, unrelated to a health benefit plan, is itself a violation of the statute assuming the other elements of the statute are met. The statute's indefinite language and inconsistent provisions belies defense counsel's assurances that Plaintiffs are free to speak and provide truthful information about abortion services without fear of prosecution.

MEMORANDUM DECISION AND ORDER - 51

Further, the intent to conceal element and affirmative defense are inconsistent and unconstitutionally vague. The lack of clarity in these provisions is best evidenced by Defendant's varied and conflating arguments concerning when culpability attaches. Defendant's briefing asserts the statute's specific intent requirement is violated where the minor's parents are not notified, informed, or have knowledge that their minor child is seeking to procure abortion services. (Dkt. 32 at 3, 9, 18, 23.) During the hearing, defense counsel argued that intent to conceal required a union of act and intent determined by looking at the totality of the circumstances – suggesting that intent to conceal requires something more than failure to notify the parents and that a parent's knowledge would defeat finding an intent to conceal. (Dkt. 36 at 32-35.) However, the intent to conceal an abortion turns on the mind of the individual charged, not notification or knowledge of the minor's parent. Further, parental notification or knowledge does not save an individual from being convicted under Idaho Code Section 18-623. The only affirmative defense to the statute requires that a parent <u>consented</u> to trafficking of the minor. Idaho Code § 18-623(2).

Accordingly, the Court finds Plaintiffs have shown a likelihood of success on their Fourteenth Amendment claim that the statute fails to provide a reasonable person with fair notice of what conduct is forbidden and what activities are lawful, and allows for arbitrary enforcement. *Johnson*, 576 U.S. at 595; *Tingley*, 47 F.4th at 1089.

MEMORANDUM DECISION AND ORDER - 52

### B.  Irreparable Harm

"Irreparable harm is relatively easy to establish in a First Amendment case." *CTIA – The Wireless Ass'n v. City of Berkley*, 928 F.3d 832, 845 (9th Cir. 2019). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury[.]" *Planned Parenthood GNW*, 2023 WL 4864962, at *22 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Where a plaintiff establishes "a colorable First Amendment claim, they have demonstrated that they likely will suffer irreparable harm." *American Beverage Assn. v. City and Cnty. of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019) (citing *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014) ("A colorable First Amendment claim is irreparable injury sufficient to merit the grant of relief.")). Indeed, where an alleged deprivation of any constitutional right is involved, courts will generally find irreparable injury. *See e.g. Campbell v. Miller*, 373 F.3d 834, 840 (7th Cir. 2004).

Plaintiffs have demonstrated that without injunctive relief, they have been and will continue to be chilled from providing minors in Idaho with information about lawful abortion services, referrals to legal abortion providers, and assistance on how and where to travel to obtain a lawful abortion. (Dkt. 12 at 17.) Plaintiffs' speech and expressive conduct are clearly implicated, if not targeted, by the statute such that Plaintiffs have ceased engaging in their expressive speech and activities protected under the First Amendment. This establishes irreparable harm. *Sanders Cty. Republican Cent. Comm. v. Bullock*, 698 F.3d 741, 748 (9th Cir. 2012) (where Plaintiffs' "First Amendment rights

MEMORANDUM DECISION AND ORDER - 53

[are] being chilled daily, the need for immediate injunctive relief without further delay is, in fact, a direct corollary of the matter's great importance.").

### C.   Balance of Equities and Public Interest

Where, as here, Plaintiffs have "raised serious First Amendment questions compels a finding that…the balance of hardships tip sharply in [Plaintiffs'] favor." *Am. Bev. Assn.*, 916 F.3d at 758 (quoting *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007) (internal quotation marks omitted)). Indeed, the Ninth Circuit has "'consistently recognized the significant public interest in upholding First Amendment principles.'" *California Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468 (9th Cir. 2022) (quoting *Doe*, 772 F.3d at 583); *see also Am. Bev. Assn.*, 916 F.3d at 758. Moreover, Plaintiffs have also established a likelihood of showing the statute is unconstitutionally vague in violation of their Due Process rights. "It is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quotation marks and citations omitted).

However, this case presents important countervailing interests that must be considered. Namely, protecting parent's rights and minors. *See e.g., Prince v. Massachusetts*, 321 U.S. 158, 166 (1944) ("It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder."); *Bellotti v. Baird*, 443 U.S. 622, 633-34 (1979) (Recognizing three reasons that "the constitutional rights of children cannot be equated with those of adults: the peculiar vulnerability of

MEMORANDUM DECISION AND ORDER - 54

children; their inability to make critical decisions in an informed, mature manner; and the importance of the parental role in child rearing."); *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (recognizing parents have a liberty interest "in the care, custody, and control of their children."); *Wallis v. Spencer*, 202 F.3d 1126 (9th Cir. 2000) (recognizing a parental right to consent to the medical treatment of one's minor child.); *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 951-952 (9th Cir. 1997) (recognizing parent's fundamental right to rear their children without undue interference). While these interests have long been recognized, they are not without limitation.

Courts have allowed restrictions and interventions on parental rights in certain situations. *Troxel*, 530 U.S. at 68 (parental rights may be limited where the parent is unfit or fails to provide adequate care for their child); *Parents for Privacy v. Barr*, 949 F.3d 1210, 12031-33 (9th Cir. 2020) (parental rights do not extend to educational policies); *Mueller v. Auker*, 576 F.3d 979, 995 (9th Cir. 2009) (holding state may compel medical treatment over parents' objection where there is reasonable cause to believe the child is in imminent danger); *Branch-Noto v. Sisolak*, 576 F.Supp.3d 790, 799 (D. Nev. 2021) (discussing cases concluding that parents do not have a fundamental right to direct public education policy or undermine public health efforts.).

Here, the interest asserted by Defendant in protecting parental rights, while important, cannot be advanced by enacting and enforcing an unconstitutional statute.

MEMORANDUM DECISION AND ORDER - 55

(Dkt. 32.)[23] The same is true of the State's interest in enforcing its own laws. There is simply no legitimate equitable or public interest in the enforcement of a statute that has been shown likely to violate the Constitution.

On balance, the Court finds the equities and public interest weigh in favor of granting preliminary injunctive relief because Plaintiffs have demonstrated a likelihood of success on the merits of their First and Fourteenth Amendment claims challenging the constitutionality of Idaho Code Section 18-623. *Padilla*, 953 F.3d at 1141 (merging the last two factors when the government is a party). In so concluding, the Court does not find the rights and interests asserted by Plaintiffs are more important or more sincere than any other right or interest. Rather, the determination here is based on the strong showing that the statute does not pass constitutional muster and, as such, cannot be upheld even if it was intended to promote and secure recognized and important parental rights and interests.

## CONCLUSION

This lawsuit is not about the right to an abortion.[24] It is about much more. Namely, long-standing and well recognized fundamental rights of freedom of speech, expression,

―――――――――――――――――

[23] Further, Idaho has statutes in place to protect these interests. *See e.g.*, Idaho Code §§ 16-1605, 18-1509, 18-1510, 18-4501, 18-4506, 32-1011. Defendant recognizes as much in his briefing. (Dkt. 32 at 2, 14.) That these interests receive protection from existing laws weighs in favor of granting the injunction.

[24] That Idaho Code Section 18-623 applies to abortion is not dispositive here. The Court's analysis, reasoning, and conclusions would be the same were the challenged statute a prohibition on

MEMORANDUM DECISION AND ORDER - 56

due process, and parental rights. These are not competing rights, nor are they at odds. No one right is more important than another. Indeed, these rights can co-exist in harmony as they have for decades with existing child protection laws and criminal laws protecting the important rights of parents, while still preserving the fundamental rights of all individuals to due process and freedom of expression. The State can, and Idaho does, criminalize certain conduct occurring in its own borders such as abortion, kidnapping, and human trafficking. What the state cannot do is craft a statute muzzling the speech and expressive activities of a particular viewpoint with which the state disagrees under the guise of parental rights, as Idaho Code Section 18-623 does here. Nor can the state enact a criminal law that is so unconstitutionally vague that ordinary individuals, including the proponents of the legislation themselves, are without fair notice of what conduct is proscribed and that subjects individuals to arbitrary enforcement.

For all of the reasons stated herein, the Court finds Plaintiffs have named the proper defendant, demonstrated both subject matter jurisdiction and Article III justiciability, and established the requirements for a preliminary injunction. Accordingly, the Court will grant Plaintiffs' motion and will preliminarily enjoin Attorney General Labrador from enforcing Idaho Code Section 18-623.

---

obtaining or procuring different services or products legally available outside of Idaho – e.g., prenatal care, non-abortion obstetrical care, or gynecological care.

MEMORANDUM DECISION AND ORDER - 57

The Court will not require Plaintiffs to post a bond, as there appears no realistic likelihood of harm to Attorney General Labrador from issuance of the preliminary injunction. *See* Fed. R. Civ. P. 65(c) ("[t]he court may issue a preliminary injunction or temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."); *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) ("[T]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.").

## ORDER

NOW, THEREFORE IT IS HEREBY ORDERED that Plaintiffs' Motion for Preliminary Injunction (Dkt. 12) is **GRANTED**. Attorney General Raúl Labrador, in his official capacity as Attorney General of the State of Idaho, is **HEREBY ENJOINED** from enforcing Idaho Code Section 18-623, effective as of the date of this order and lasting until otherwise ordered by the Court.

DATED: November 8, 2023

Honorable Debora K. Grasham
United States Magistrate Judge

MEMORANDUM DECISION AND ORDER - 58