*Appeal No. 23-3787*

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

LOURDES MATSUMOTO, et al.,

*Plaintiffs-Appellees,*

v.

RAÚL LABRADOR, in his capacity as the Attorney General for the State of Idaho,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the District of Idaho
Hon. The Honorable Debora K. Grasham
Case No. 1:23-cv-00323-DKG

## RESPONSE BRIEF OF APPELLEES

WENDY J. OLSON
wendy.olson@stoel.com
STOEL RIVES LLP
101 S. Capitol Boulevard, Suite 1900
Boise, ID  83702
Telephone:  208.389.9000
Facsimile:  208.389.9040

WENDY S. HEIPT
(admitted pro hac vice)
wheipt@legalvoice.org
LEGAL VOICE
907 Pine Street, #500
Seattle, WA  98101
Telephone:  206.954.6798

KELLY O'NEILL, Bar No. 9303
koneill@legalvoice.org
LEGAL VOICE
P.O. Box 50201
Boise, ID 83705

JAMILA A. JOHNSON
(admitted pro hac vice)
jjohnson@lawyeringproject.org
THE LAWYERING PROJECT
3157 Gentilly Blvd. #2231

Telephone:  208.649.4942

New Orleans, LA  70122
Telephone:  347.706.4981

PAIGE SUELZLE
(admitted pro hac vice)
psuelzle@lawyeringproject.org
THE LAWYERING PROJECT
158 SW 148th Street #1198
Burien (Seattle), WA 98166
Telephone: 347.515.6073

*Attorneys for Appellees*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................iv

INTRODUCTION ................................................................................1

JURISDICTIONAL STATEMENT ......................................................2

STATEMENT OF ISSUES ON APPEAL ............................................3

STATEMENT OF THE CASE..............................................................4

    I.    Factual Overview ...................................................................4

    II.    The Challenged Law ..............................................................5

    III.    Defendant's Enforcement Role ...........................................7

    IV.    Impact of Idaho Code § 18-623 on Plaintiffs......................8

SUMMARY OF THE ARGUMENT ...................................................12

STANDARD OF REVIEW ................................................................14

ARGUMENT ....................................................................................15

    I.    The district court properly found Article III standing.......................15

        A.    Plaintiffs have an injury in fact that is concrete and particularized............................................................18

            1.    Plaintiffs meet the pre-enforcement standard for showing injury in fact. ....................................20

            2.    Defendant's mens rea argument is frivolous. ...............21

            3.    Defendant is the final stop for enforcement and there is a threat of prosecution from his office.............23

        B.    Plaintiffs' harms are traceable. ...............................24

        C.    Plaintiffs' harms are redressable.............................25

122085768.1 0099880-01499

# TABLE OF CONTENTS
## (continued)

Page

D. Defendant's allegations of Plaintiffs' "criminality," while irrelevant, are also baseless.....................................................27

II. The Attorney General has express enforcement authority under Idaho Code § 18-623(4), and is not entitled to Eleventh Amendment immunity...........................................................29

    A. This case is a prime example of an appropriate exception to Ex parte Young. ....................................................30

    B. Defendant's arguments about Ex parte Young lack merit.......31

III. The district court properly enjoined the Attorney General from enforcing Idaho Code § 18-623...........................................36

    A. Plaintiffs are likely to succeed on the merits of their First and Fourteenth Amendment claims. ..........................................37

        1. The district court properly found that Plaintiffs are likely to succeed on the merits of their claim that Idaho Code § 18-623 infringes on their First Amendment rights. ........................................37

            a. Idaho Code § 18-623 targets speech, expressive conduct, and association based on content, and thus is subject to strict scrutiny. ................................................38

            b. Defendant presented no evidence to suggest Idaho Code § 18-623 would survive strict scrutiny. ................................................44

            c. Defendant cannot skirt the First Amendment by saying the speech is criminal..........................45

        2. The district court properly found that Plaintiffs are likely to succeed on the merits of their claim that Idaho Code § 18-623 is unconstitutionally vague. ........48

-ii-

## TABLE OF CONTENTS
### (continued)

**Page**

B.     Plaintiffs will be irreparably harmed absent preliminary injunctive relief that prevents constitutional injury. ................54

C.     The balance of equities and public interest weigh in favor of enjoining the statute and preventing constitutional injury. .......................................................................56

CONCLUSION ...................................................................................57

122085768.1 0099880-01499

# TABLE OF AUTHORITIES

**Page**

## Cases

*303 Creative LLC v. Elenis,*
143 S. Ct. 2298 (2023)................................................................40, 47

*Am. Beverage Ass'n v. City & Cnty. of S.F.,*
916 F.3d 749 (9th Cir. 2019) .......................................................54, 56

*Ams. for Prosperity Found. v. Bonta,*
141 S. Ct. 2373 (2021)........................................................................42

*Arce v. Douglas,*
793 F.3d 968 (9th Cir. 2015) ............................................................20

*Babbitt v. United Farm Workers National Union,*
442 U.S. 289 (1979)...........................................................18, 20, 21

*Barahona-Gomez v. Reno,*
167 F.3d 1228 (9th Cir. 1999) ..........................................................15

*Biden v. Nebraska,*
143 S. Ct. 2355 (2023)........................................................................16

*Bigelow v. Virginia,*
421 U.S. 809 (1975)............................................................................37

*Bolden-Hardge v. Office of Cal. State Controller,*
63 F.4th 1215 (9th Cir. 2023) ...........................................................15

*Boy Scouts of Am. v. Dale,*
530 U.S. 640 (2000)............................................................................37

*Brandenburg v. Ohio,*
395 U.S. 444 (1969) (per curiam)......................................................47

*Brown v. Ent. Merchants Ass'n,*
564 U.S. 786 (2011)............................................................................44

*Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics,*
29 F.4th 468 (9th Cir. 2022) .............................................................56

122085768.1 0099880-01499

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Cal. Pharm. Ass'n v. Maxwell-Jolly*,
  596 F.3d 1098 (9th Cir. 2010) .......................................................... 14

*Cal. Trucking Ass'n v. Bonta*,
  996 F.3d 644 (9th Cir. 2021) ............................................................ 23

*Clapper v. Amnesty International USA*,
  568 U.S. 398 (2013) .......................................................................... 24

*Cmty. House, Inc. v. City of Boise*,
  490 F.3d 1041 (9th Cir. 2007) .......................................................... 56

*CTIA – The Wireless Ass'n v. City of Berkley, Cal.*,
  928 F.3d 832 (9th Cir. 2019) ............................................................ 54

*Doe v. Harris*,
  772 F.3d 563 (9th Cir. 2014) ............................................... 39, 54, 56

*Drakes Bay Oyster Co. v. Jewell*,
  747 F.3d 1073 (9th Cir. 2014) .......................................................... 36

*Edge v. City of Everett*,
  929 F.3d 657 (9th Cir. 2019) ............................................................ 49

*Elrod v. Burns*,
  427 U.S. 347 (1976) .......................................................................... 54

*Friends of the Earth v. Laidlaw Env't Servs., Inc.*,
  528 U.S. 167 (2000) .......................................................................... 18

*Giboney v. Empire Storage & Ice Co.*,
  336 U.S. 490 (1949) .......................................................................... 47

*Grayned v. City of Rockford*,
  408 U.S. 104 (1972) .......................................................................... 49

*Greenberg v. Myers*,
  340 Or. 65 (2006) ............................................................................. 47

122085768.1 0099880-01499

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Holder v. Humanitarian Law Project*,
    561 U.S. 1 (2010)...................................................................23, 48, 49

*Ibrahim v. Dep't of Homeland Sec.*,
    669 F.3d 983 (9th Cir. 2012) .............................................................26

*Isaacson v. Mayes*,
    84 F.4th 1089 (9th Cir. 2023) ......................................15, 16, 19, 20

*Johnson v. United States*,
    576 U.S. 591 (2015)...........................................................................48

*Jordan v. De George*,
    341 U.S. 223 (1951)...........................................................................48

*Kolender v. Lawson*,
    461 U.S. 352 (1983)...........................................................................48

*LA All. for Hum. Rts. v. Cnty. of L.A.*,
    14 F.4th 947 (9th Cir. 2021) .............................................................16

*Larson v. Valente*,
    456 U.S. 228 (1982)...........................................................................26

*Lopez v. Candaele*,
    630 F.3d 775 (9th Cir. 2010) .............................................................19

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)....................................................................16, 25

*Massachusetts v. E.P.A.*,
    549 U.S. 497 (2007)...........................................................................26

*Mecinas v. Hobbs*,
    30 F.4th 890 (9th Cir. 2022) .....................................................passim

*Melendres v. Arpaio*,
    695 F.3d 990 (9th Cir. 2012) .............................................................56

122085768.1 0099880-01499

## TABLE OF AUTHORITIES
(continued)

**Page**

*N.Y. Times Co. v. Sullivan*,
376 U.S. 254 (1964)................................................................21

*Newman v. Lance*,
922 P.2d 395 (Idaho 1996) ...........................................7, 32

*Pierce v. Jacobsen*,
44 F.4th 853 (9th Cir. 2022) ...............................................44

*Pimentel v. Dreyfus*,
670 F.3d 1096 (9th Cir. 2012) .......................................14, 15

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Hum. Rels.*,
413 U.S. 376 (1973)................................................................47

*Planned Parenthood GNW v. Labrador*,
No. 1:23-cv-00142, 2023 WL 4864962 (D. Idaho July 31, 2023) ....................54

*Planned Parenthood of Idaho, Inc. v. Wasden*,
376 F.3d 908 (9th Cir. 2004) .......................................passim

*Planned Parenthood of Kan. & Mid-Mo., Inc. v. Nixon*,
220 S.W.3d 732 (Mo. 2007) ...............................................39

*Ray v. County of Los Angeles*,
935 F.3d 703 (9th Cir. 2019) ...............................................15

*Reed v. Town of Gilbert, Ariz.*,
576 U.S. 155 (2015)................................................................44

*Renee v. Duncan*,
686 F.3d 1002 (9th Cir. 2012) ...........................................26

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*,
108 S. Ct. 2667 (1988)...........................................................43

*Roberts v. U.S. Jaycees*,
465 U.S. 1077 (1984)........................................................42, 44

122085768.1 0099880-01499

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*,
  547 U.S. 47 (2006) ............................................................... 16

*Spirit of Aloha Temple v. County of Maui*,
  49 F.4th 1180 (9th Cir. 2022) ..................................... 38, 39

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ............................................................... 18

*State v. Koome*,
  84 Wn.2d 901 (1975) ......................................................... 47

*State v. Levicek*,
  131 Idaho 130 (1998) ......................................................... 27

*Steffel v. Thompson*,
  415 U.S. 452 (1974) ..................................................... 18, 46

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ............................................. 15, 18, 34

*Texas v. Johnson*,
  491 U.S. 397 (1989) ......................................................... 37

*Thomas v. Anchorage Equal Rts. Comm'n*,
  220 F.3d 1134 (9th Cir. 2000) (en banc) ................... 19, 23

*Tingley v. Ferguson*,
  47 F.4th 1055 (9th Cir. 2022), *cert. denied*, 144 S. Ct. 33 (2023) ............. passim

*Turner Broad. Sys., Inc. v. F.C.C.*,
  512 U.S. 622 (1994) ......................................................... 47

*United States v. Thompson*,
  896 F.3d 155 (2d Cir. 2018) ....................................... 45, 46

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
  455 U.S. 489 (1982) ......................................................... 48

122085768.1 0099880-01499

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Wash. Env't Council v. Bellon*,
 732 F.3d 1131 (9th Cir. 2013) ..........................................................15

*Winter v. Nat. Res. Def. Council, Inc.*,
 555 U.S. 7 (2008)..............................................................................36

*Wolfson v. Brammer*,
 616 F.3d 1045 (9th Cir. 2010) .....................................................25, 26

*Ex parte Young*,
 209 U.S. 123 (1908)....................................................................passim

**Statutes**

18 U.S.C. § 623 ....................................................................................28

18 U.S.C § 1591 ...................................................................................46

28 U.S.C. § 1292(a)(1) ...........................................................................3

28 U.S.C. § 1331 ....................................................................................2

28 U.S.C. § 1343 ....................................................................................2

Foreign Intelligence Service Act ........................................................24

Idaho Code Section 18-622...................................................................35

Idaho Code § 18-623.....................................................................passim

Idaho Code § 18-623(2) ...................................................................6, 51

Idaho Code § 18-623(3) .........................................................................6

Idaho Code § 18-623(4) ................................................................passim

Idaho Code § 18-1509............................................................................28

Idaho Code §§ 18-4501, *et seq.* .........................................................28

Idaho Code § 18-4506............................................................................27

-ix-

## TABLE OF AUTHORITIES
(continued)

**Page**

Idaho Code § 67-1401(7) ........................................................7, 32

ORS 109.640 ................................................................47

RCW 9.02.100(2) ...........................................................47

**Constitutional Provisions**

U.S. Const. ..............................................................4, 55

U.S. Const., amend. I ..................................................passim

U.S. Const., amend. XI .................................................passim

U.S. Const., amend. XIV ................................................passim

U.S. Const., amend. XIV, Due Process Clause ...............................20

U.S. Const., art. III .........................................12, 15, 16, 19

**Other Authorities**

Attorney General Opinion on the constitutionality of Idaho H.B. 242,
    March 13, 2023 .....................................................8

Testimony on Idaho H.B. 242, March 27, 2023, Senator Todd Lakey ..................49

Saleen Martin, *Idaho mother, son face kidnapping charges in 15-year-old girl's abortion in Oregon*, USA Today (Nov. 8, 2023),
    https://www.usatoday.com/story/news/nation/2023/11/08/idaho-family-oregon-abortion-kidnapping-sex-crime-charges/71435859007/ ..........................................29

122085768.1 0099880-01499

## INTRODUCTION

Plaintiffs are an individual and two organizations that assist pregnant people, including pregnant minors, obtain abortions. They do so in Idaho and, for the two organizations, also in other primarily western states. They advise pregnant minors, help them identify legal options for abortion care, and provide financial assistance and travel assistance. Many of the pregnant people, including pregnant minors, that they help are survivors of domestic abuse or sexual assault who simply do not have significant support structures.

Plaintiffs well understand that Idaho has criminalized abortions and has some of the most draconian abortion laws in the country. Plaintiffs do not seek to assist pregnant people, including pregnant minors, obtain unlawful abortions in Idaho. Rather, they seek to assist pregnant people obtain abortions in places where they are lawful. In an effort to stop them, Idaho sought to criminalize accessing health services that are legal in other jurisdictions by enacting Idaho Code § 18-623, a vague statute that infringes on Plaintiffs' constitutional protections.

Idaho Code § 18-623 seeks to criminalize providing an unclear amount of undefined assistance to minors, including information and travel assistance within Idaho, to help minors reach or cross Idaho's borders to access legal health care, without getting an undefined amount of permission from an unclearly designated adult. Ignoring that some minors may seek an abortion because they were sexually

abused by a parent or guardian, that they have consulted with trusted adults who support their position, or that they are actual victims of human trafficking, Idaho instead seeks to stop pregnant minors from reaching or crossing state lines to receive legal abortion health care.

Plaintiffs challenged Idaho Code § 18-623 through a lawsuit against the Idaho Attorney General who, at his discretion, has the sole authority to bring charges if a county prosecuting attorney does not. The statute is unconstitutional. It is poorly written. It is vague and unclear in the conduct it prohibits. It infringes on First Amendment rights to speak about abortion, and to associate and to engage in expressive conduct, including providing monies, transportation, and other support for pregnant minors traveling within and outside of Idaho to access out-of-state legal abortion care. The district court agreed that Plaintiffs had standing, that the Attorney General is a proper defendant, and that Plaintiffs were substantially likely to prevail on the merits of their constitutional claims. It enjoined the Attorney General from enforcing the statute, found the Plaintiffs had standing, denied his motion to dismiss and rejected his Eleventh Amendment arguments. This Court should affirm.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. The Attorney General filed a notice of appeal on November 22, 2023, appealing the district court's order granting a preliminary injunction against the Attorney General and appealing

the district court's order denying the Attorney General's motion to dismiss on sovereign immunity grounds. This Court has jurisdiction to review those orders under 28 U.S.C. § 1292(a)(1).

## STATEMENT OF ISSUES ON APPEAL

1. Whether Plaintiffs Have Standing to Challenge the Constitutionality of Idaho Code § 18-623 Where They Wish to Continue Assisting Pregnant Idaho Minors Obtain Lawful Abortion Care but Fear Prosecution.

2. Whether the Express Provision in Idaho Code § 18-623(4) Giving the Attorney General Authority to Prosecute Where a County Prosecuting Attorney Refuses to Do So Meets the *Ex parte Young* Exception to Eleventh Amendment Sovereign Immunity.

3. Whether the District Court Erred in Enjoining the Attorney General from Enforcing Idaho Code § 18-623 and Finding That Plaintiffs Were Substantially Likely to Prevail on Their First and Fourteenth Amendment Claims, and Would Be Irreparably Harmed Absent Injunctive Relief, and That the Public Interest Tipped in Their Favor.

122085768.1 0099880-01499

## STATEMENT OF THE CASE

### I.    Factual Overview

Plaintiffs Lourdes Matsumoto, Indigenous Idaho Alliance (IIA), and Northwest Abortion Access Fund (NWAAF) respond to requests for help from survivors of gender-based violence and assist minors in Idaho who, for whatever reason, find themselves pregnant but desire not to be. *See* 4-ER-405, ¶¶ 22–24; 4-ER-417, ¶¶ 34, 37–38; 4-ER-424, ¶¶ 5–9. This case is about a first-in-the-nation Idaho abortion law that targets adults who help minors obtain lawful abortion care, and restricts what Plaintiffs can say, who they can give their money to, and who they can associate with. *See* Idaho Code § 18-623.

On July 11, 2023, Plaintiffs brought a pre-enforcement challenge against Idaho Attorney General Raúl Labrador ("Defendant"). 4-ER-436. Plaintiffs' lawsuit alleges Idaho Code § 18-623 is vague and chills their lawful speech, expressive activities, and association. 4-ER-438. Plaintiffs pled that Idaho Code § 18-623 seeks to limit and, in some instances, eliminate, the help Plaintiffs give minors, in violation of the U.S. Constitution. 4-ER-438–440, ¶¶ 1–6.

On July 24, 2023, Plaintiffs moved for a temporary restraining order and in the alternative a preliminary injunction on two of their four constitutional claims (First Amendment and Fourteenth Amendment). 4-ER-355–385. With the motion, they submitted four declarations. 4-ER-386–430. On September 12, 2023,

- 4 -

Defendant moved to dismiss. 3-ER-195–97. Oral arguments were held for the preliminary injunction motion on September 14, 2023. 2-ER-079. On November 8, 2023, the district court granted the preliminary injunction motion, and mostly denied Defendant's motion to dismiss. 1-ER-020–77; 1-ER-002–19. Defendant filed this appeal challenging the denial of his motion to dismiss on Eleventh Amendment sovereign immunity grounds and appealing the preliminary injunction, including the district court's decision on standing therein. 4-ER-470–75.

## II.    The Challenged Law

Idaho Code § 18-623 makes it a felony for an adult to procure an abortion or obtain an abortion-inducing drug "*by* recruiting, harboring, or transporting" a pregnant minor, if done "with the intent to conceal an abortion from the parents or guardian of a pregnant, unemancipated minor."[1] Idaho Code § 18-623 (emphasis added). This is particularly confusing because it is unclear what is meant by the words that are modified throughout the text of the statute. For instance, an adult must obtain an abortion-inducing drug for a pregnant person's use *by* "recruiting, harboring, or transporting" but it is uncertain how those terms relate. *Id.* What do these words mean in such a context? What does it mean to "procure" an abortion "by recruiting, harboring, and transporting" in the first place? *Id.* What constitutes an

---

[1] Notably, Defendant mischaracterizes the elements of this crime by pretending the "by" is absent from the statute at Appellant's Br. 36–37.

intent to conceal in these circumstances? *Id.* Because the statute is so vague, Plaintiffs do not know what conduct is necessary to comply with the statute. *See* 4-ER-405, ¶¶ 26–27; 4-ER-406, ¶¶ 30–31; 4-ER-407–08, ¶¶ 35, 39, 42; 4-ER-420, ¶ 58; 4-ER-427, ¶ 30. Further, Idaho Code § 18-623 provides that it is not a defense that the abortion provider is located in another state—which means those who assist with abortions in the majority of states where abortion is lawful are still subject to this law. Idaho Code § 18-623(3).

A few politicians weighed in on what they thought the law they were passing or signing meant. During a March 27, 2023, Senate State Affairs Committee hearing, Representative Barbara Ehardt testified that "it's all about parental permission, taking a minor from Idaho and trafficking that minor to another state to receive an abortion." 4-ER-387, ¶ 2; 4-ER-390. Governor Little wrote that the law "seeks only to prevent unemancipated minor girls from being taken across state lines for an abortion without the knowledge and consent of her parent or guardian." 4-ER-366. Yet, whether a parent or guardian of the pregnant minor consents to the activity element of the offense under Idaho Code § 18-623 is only an affirmative defense. Idaho Code § 18-623(2). Further, it is unclear in the statute what role a parent's knowledge plays. These statements have increased Plaintiffs' confusion as to what the law covers.

This confusion has continued during this litigation. For instance, at oral argument on the underlying preliminary injunction, Defendant responded to what intent to conceal means, by saying:

> Well, the intent to conceal, I mean I'm just going to repeat the statute because it's plain. Means an intent to conceal from the parents and so, again, you'd look at the totality of the circumstances. Did they try to inform the parents or not? Do they have a pattern in over and over and over again of purposely not informing the parents?

2-ER-111.

## III.    Defendant's Enforcement Role

Plaintiffs are suing the Idaho Attorney General. In most Idaho criminal matters, "the attorney general may 'assist' county prosecutors" but may not assert control over prosecutions against the county prosecutor's wishes. *Newman v. Lance*, 922 P.2d 395, 399-401 (Idaho 1996); Idaho Code § 67-1401(7). The legislature took the unusual step of expanding Defendant's enforcement role for Idaho Code § 18-623. Defendant can prosecute under the new statute regardless of whether the county prosecutor wishes there to be a prosecution. Idaho Code § 18-623(4) ("The Idaho attorney general has the authority, at the attorney general's sole discretion, to prosecute a person for a criminal violation of this section if the prosecuting attorney authorized to prosecute criminal violations of this section refuses to prosecute violations of any of the provisions of this section by any person without regard to the facts or circumstances.").

- 7 -

Defendant issued an Attorney General Opinion to the House Minority Leader on March 13, 2023, on the constitutionality of House Bill 242—which enacted Idaho Code § 18-623. 4-ER-394–400. Defendant explained that where the abortion occurs is not an issue, and that the law would be constitutional. 4-ER-397. He also noted that it gives him the power to prosecute if a prosecutor does not do so. 4-ER-397 at n.2. Defendant has also taken outlier positions in favor of applying Idaho's abortion laws to lawful abortion care, increasing the threat that he will use this new authority. 4-ER-391–93. Defendant has also not disavowed his authority to prosecute. 2-ER-131–32.[2]

## IV.    Impact of Idaho Code § 18-623 on Plaintiffs

Plaintiff Matsumoto is an attorney who works for a non-profit that provides emergency assistance, counseling, and resources to victims of domestic and sexual violence. 4-ER-403, ¶¶ 8, 10; 4-ER-404, ¶ 11. She participates in trainings and provides advice on how pregnant people, including minors, can legally access abortions. 4-ER-405, ¶ 28; 4-ER-406–07, ¶¶ 30–33. She is also a trusted adult whom others have turned to with questions regarding how much help, advice, and support

---

[2] Defendant has plainly stated that he thinks Plaintiffs' conduct violates the statute. He has said that "it is clear that Plaintiffs want to violate the specific intent requirement," 3-ER-261, and that "Plaintiffs' front-end conduct is also illegal," 3-ER-159. He calls Plaintiffs—gender-based violence volunteers, non-profits, and those who help people who cannot afford medical care—criminals. 3-ER-155.

they can provide to pregnant minors in Idaho. 4-ER-407, ¶¶ 37–38. Plaintiff Matsumoto would like to provide information and options counseling to pregnant people, including pregnant minors, about abortion. 4-ER-404, ¶ 11; 4-ER-409, ¶ 47. She would also like to assist minors obtain abortions in states where abortion is legal, including by transporting them or assisting them obtain transportation from Idaho to those states. 4-ER-409, ¶ 48. Plaintiff Matsumoto fears prosecution under Idaho Code § 18-623. 4-ER-409, ¶ 48. Due to the proximity of her residence to the Oregon border, Plaintiff Matsumoto would also like to provide temporary shelter for pregnant minors within Idaho who are traveling to obtain reproductive counseling and abortion care in states where that care remains legal, whether those minors' parents know or do not know. 4-ER-409, ¶ 49. Such shelter may or may not be overnight. Additionally, Plaintiff Matsumoto has contributed financially to organizations that practically support pregnant minors, including those in Idaho, access abortion care, whether or not those minors' parents or guardian are aware of those groups' actions, and she would like to continue to provide this support. 4-ER-409, ¶ 50. Due to the lack of clarity in Idaho Code § 18-623, she is concerned that even this activity may subject her to criminal prosecution. *Id.* Plaintiff Matsumoto would also like to provide clear advice and support to organizations assisting pregnant minors who are domestic violence and sexual assault survivors and to minors themselves but is currently unable to do so because of the law at issue. 4-ER-

409, ¶ 51.

IIA is an Idaho non-profit organization that is centered around asserting the sovereignty of all Indigenous people. IIA's work serves the five tribes whose traditional, usual, and accustomed lands encompass territory within Idaho, and whose traditional, usual, and accustomed lands are often recognized as transecting and incorporating land within the U.S. state/Canadian provincial boundaries of Washington, Idaho, Montana, Nevada, Utah, Wyoming, California, British Columbia, and Alberta (the "region"). Among the organization's priorities is seeking justice for Missing and Murdered Indigenous People and their families. 4-ER-453, ¶ 53; 4-ER-414, ¶ 12. IIA is aware that in the United States, Indigenous women and girls are the victims of gender-based violence at a statistical rate twice that of Anglo-American women and girls. 4-ER-453, ¶ 53; 4-ER-414, ¶ 16. In its experience, unwanted or coercive pregnancy is often the result of the high rate of gender-based violence, which includes rape, experienced by Indigenous women and girls. 4-ER-453–454, ¶ 54. The Indigenous girls who face unwanted and coerced pregnancy are then often victims of further violence to conceal the crime of rape or to punish them for seeking protection, self-care, or reproductive health care including abortion care. 4-ER-453–454, ¶ 54. IIA co-founder and organizer tai simpson—and others affiliated with the IIA—have provided pregnant people, including minors, with reproductive health care information, including information about abortion. 4-ER-

- 10 -

450, ¶ 37. They have coordinated the travel of pregnant people, including minors, from locations across the region, including Idaho, to and across state lines to access abortion, and have provided financial assistance. 4-ER-418, ¶ 41–43. These minors' parents or guardians may or may not have been aware of these actions. 4-ER-419, ¶ 50–51.

Plaintiff NWAAF is a non-profit organization composed of a working board, paid staff, and trained volunteers. 4-ER-424, ¶ 4. NWAAF provides emotional, financial, logistical, practical, and informational assistance to pregnant persons, including minors, who may need or choose to consider abortion. *Id.* NWAAF is the only independent abortion fund in the Pacific Northwest and covers the largest geographic area of any abortion fund in the United States. 4-ER-424, ¶ 7. Its work includes booking and paying for bus tickets, plane tickets, and ride shares, and providing volunteers to drive patients to abortion appointments in states where abortion is legal. 4-ER-425, ¶ 15. NWAAF also provides food assistance, funding to abortion providers for their work, and lodging assistance. 4-ER-426, ¶¶ 17–18. NWAAF has provided this assistance to adults and minors within Idaho. 4-ER-426, ¶ 18. These minors' parents or guardians may or may not have known about or consented to these actions. 4-ER-426, ¶ 19.

Both NWAAF and IIA are funded by donors committed to supporting their mission. 4-ER-427, ¶¶ 25–26; 4-ER-418, ¶ 45. All Plaintiffs associate with pregnant

minors as a show of solidarity, communicating a message to the community at large and to minors who find themselves pregnant. That message is often that minors are not alone. Plaintiffs' support also communicates a message to those who may seek to isolate and abuse minors that these minors will have the support of trusted adults. 4-ER-404, ¶ 16; 4-ER-420, ¶¶ 55–57; 4-ER-428, ¶ 38.

## SUMMARY OF THE ARGUMENT

The district court applied the evidence before it logically—using the correct legal standards—before reaching its preliminary injunction decision. Its preliminary injunction and motion to dismiss orders should stand, and each of Defendant's arguments to the contrary lack merit: Plaintiffs have Article III standing, Defendant can be sued without running afoul of sovereign immunity, and the district court properly granted a preliminary injunction.

Plaintiffs satisfied the injury-in-fact requirement by demonstrating "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and that there exists a credible threat of prosecution thereunder." They also met their Article III requirements for traceability and redressability, because the injunction alleviates Plaintiffs' genuine concerns of being criminally prosecuted by Defendant for exercising their constitutionally protected rights.

- 12 -

The Idaho Attorney General is the proper defendant both because Plaintiffs' injuries are redressable by him and because the *Ex parte Young* exception to Eleventh Amendment sovereign immunity applies. The *Ex parte Young* exception applies because Idaho Code § 18-623(4) provides that the Idaho Attorney General, at his sole discretion, has the authority to prosecute a person for a violation of the statute if the county prosecutor does not do so. That is far more than the modest connection to enforcement of the statute required by this Court under *Mecinas* and *Wasden*.

The district court was well within its discretion in granting Plaintiffs preliminary relief and enjoining Defendant from enforcing Idaho Code § 18-623. The district court used and applied the correct legal standard. It determined that Plaintiffs were substantially likely to prevail on the merits of their First and Fourteenth Amendment claims, and that because they showed a likelihood of constitutional injury they would be irreparably harmed in the absence of injunctive relief. The court also correctly found that the balance of equities and public interest tipped in Plaintiffs' favor.

The district court correctly found that Idaho Code § 18-623 is a content-based regulation of protected speech and expression because it regulates only speech and expression that favors abortion and that the number of impermissible unconstitutional applications swept up in the statute's proscriptions are substantial

- 13 -

when viewed in relation to the statute's stated purpose of protecting parental rights. The district court also properly found that Idaho Code § 18-623 fails to provide fair notice or an ascertainable standard of what is and what is not abortion trafficking because its terms were undefined, legislators and Defendant themselves were unsure what certain terms meant in the context of this statute, and the statute's specific intent and affirmative defense provisions were at odds with each other.

This Court should affirm both the district court's order preliminarily enjoining Defendant from enforcing Idaho Code § 18-623 and the district court's order denying Defendant's motion to dismiss. The district court found the Plaintiffs had standing, enjoined the Attorney General from enforcing the statute, rejected his Eleventh Amendment arguments, and denied his motion to dismiss.

## STANDARD OF REVIEW

A district court's grant of a preliminary injunction is reviewed for an abuse of discretion. *See Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012). This Court reviews *de novo* whether the district court applied "'the correct legal standard'" and then "determine[s] 'if the district court's application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record.'" *Id.* (quoting *Cal. Pharm. Ass'n v. Maxwell-Jolly*, 596 F.3d 1098, 1104 (9th Cir. 2010)). An appellant meets this high bar only where the district court's ruling is "based on an erroneous legal standard or

a clearly erroneous finding of fact amounts to an abuse of discretion." *Id.* Jurisdictional questions are reviewed *de novo. Bolden-Hardge v. Office of Cal. State Controller*, 63 F.4th 1215, 1220 (9th Cir. 2023).

The Court reviews *de novo* issues of law underlying the preliminary injunction, including questions of jurisdiction over Plaintiffs' claims. *Wash. Env't Council v. Bellon*, 732 F.3d 1131, 1138 (9th Cir. 2013); *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1234 (9th Cir. 1999). In conducting a standing analysis, courts are to take all material allegations as true. *Isaacson v. Mayes*, 84 F.4th 1089, 1097 (9th Cir. 2023). The Court also reviews *de novo* the denial of Eleventh Amendment immunity. *Ray v. County of Los Angeles*, 935 F.3d 703, 708 (9th Cir. 2019).

## ARGUMENT

### I.    The district court properly found Article III standing.

The district court dedicated nearly 30 pages of its 58-page order to a comprehensive discussion of standing. It analyzed Plaintiffs' complaint, preliminary injunction motion, and declarations, and reached the correct conclusion—Plaintiffs have Article III standing. To have standing, a plaintiff must show a "'personal stake in the outcome of the controversy.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citation omitted). This is shown by presenting to a court: 1) an injury in fact that is concrete and particularized, and actual or imminent; 2) that is

122085768.1 0099880-01499

fairly traceable to the challenged conduct of the defendant; and 3) that the injury would likely be redressed by a favorable decision. *Id.* at 157–58; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (an injury in fact is "an invasion of a legally protected interest").[3] Plaintiffs demonstrated a personal stake in the outcome of this lawsuit, as discussed in extreme detail within the district court order.

Specifically, Plaintiffs established that they help survivors of gender-based violence and those who are, but do not wish to be, pregnant. 4-ER-404, ¶ 16; 4-ER-405, ¶¶ 22–24, 28–29; 4-ER-408–09, ¶ 46; 4-ER-414–15, ¶ 16–22; 4-ER-417, ¶ 37; 4-ER-418, ¶ 42; 4-ER-424, ¶ 4; 4-ER-425, ¶ 11; 4-ER-438–40, ¶¶ 1–6; 4-ER-451–52, ¶¶ 43–44; 4-ER-453, ¶¶ 53–54. Some of the people they help are minors, and the help they provide includes sharing information, funding, and other practical support as needed and requested by the pregnant person. 4-ER-408–09, ¶ 47; 4-ER-417–18, ¶ 40–43; 4-ER-424, ¶ 5–6; 4-ER-451, ¶ 41. They do so without requiring parental consent, and in some cases fearing that the parental relationship is unsafe or

---

[3] Defendant does not challenge the standard applied by the district court. Nor does Defendant challenge the district court's correct conclusion that only one party needs to establish sufficient Article III standing. *Biden v. Nebraska*, 143 S. Ct. 2355, 2365 (2023) (citing *Rumsfeld v. F. for Acad. & Institutional Rts., Inc*., 547 U.S. 47, 52 n.2 (2006) ("[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement.")); *Isaacson*, 84 F.4th at 1095 n.3; *LA All. for Hum. Rts. v. Cnty. of L.A.*, 14 F.4th 947, 959 (9th Cir. 2021). Instead, he disagrees with the conclusion the court reached, but with proper application of the law the court could reach no other conclusion.

unsupportive, and that their assistance may allow a young person to conceal an abortion. 4-ER-439–40, ¶¶ 2-6; 4-ER-451, ¶ 41; 4-ER-452–54, ¶¶ 44–57. NWAAF and IIA accept charitable donations given based on their work and use their funds in furtherance of their missions, on activities the statute seeks to proscribe. 4-ER-439, ¶ 3; 4-ER-461, ¶¶ 84, 86; 4-ER-418–19, ¶¶ 45–49; 4-ER-426–27, ¶¶ 24–27. Plaintiff Matsumoto donates to organizations that support pregnant minors seeking abortions with or without parental involvement and would like to continue doing so. 4-ER-409, ¶ 50.

They further demonstrated that last year, shortly before Plaintiffs filed this lawsuit, Idaho enacted a new law that sought to criminalize people who support young people in exactly this manner. 4-ER-441–43, ¶¶ 11–18. To ensure enforcement, the legislature enacted a scheme that goes beyond the enforcement mechanisms in most Idaho laws, and, in doing so, gave Defendant explicit powers, making him the catch-all enforcer of the law. 4-ER-442–43, ¶¶ 15–19. Not only that, but Defendant issued an advisory opinion that he could enforce the law and that the law was constitutional. 4-ER-443, ¶ 18. Plaintiffs demonstrated, and the lower court properly found, a personal interest here demonstrated by the circumstances of each Plaintiff. There is no real argument that Plaintiffs' past and desired conduct is not "arguably" proscribed by the statute, 1-ER-036–47, or that there is not a credible

- 17 -

threat of prosecution. *See* 1-ER-053–54. Plaintiffs' injuries are traceable and redressable.[4]

## A.    Plaintiffs have an injury in fact that is concrete and particularized.

"[T]he injury-in-fact requirement requires a plaintiff to allege an injury that is both 'concrete *and* particularized.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 334 (2016) (quoting *Friends of the Earth v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 180–81 (2000)). To be concrete, an injury must actually exist; it must be real and not abstract. *Id.* at 340. Notably, it is not necessary that Plaintiffs first expose themselves to actual arrest or prosecution to be entitled to challenge a statute that they claim deters the exercise of their constitutional rights. *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). In pre-enforcement challenges, "a plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Susan B. Anthony List*, 573 U.S. at 159 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

The Ninth Circuit applies a three-factor inquiry to assess threats of prosecution: "(1) whether the plaintiff has a 'concrete plan' to violate the law, (2)

---

[4] The Court found the organizations had associational standing. It could also have found organizational standing based on the missions of the organization and the financial impact and diversion of resources caused by this new law.

whether the enforcement authorities have 'communicated a specific warning or threat to initiate proceedings,' and (3) whether there is a 'history of past prosecution or enforcement.'" *Tingley v. Ferguson*, 47 F.4th 1055, 1067 (9th Cir. 2022) (quoting *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc)), *cert. denied*, 144 S. Ct. 33 (2023). Pre-enforcement plaintiffs must show an intention to violate the challenged law by giving "some degree of concrete detail" about future conduct. *Lopez v. Candaele*, 630 F.3d 775, 786 (9th Cir. 2010). Specific details of future plans are not required to establish a concrete plan to violate the law where plaintiff demonstrates having "already violated the law in the past" or describes "'specific past instances'" of having undertaken actions that would violate the law. *Tingley*, 47 F.4th at 1068 (citation omitted). A plaintiff may reasonably fear prosecution even if enforcement authorities have not communicated an explicit warning to the plaintiff. *Isaacson*, 84 F.4th at 1100. And there is "little need to show a 'history of past prosecution or enforcement,'" when a law is "recently enacted." *Id.* at 1099.

As the district court aptly recognized, the standard for Article III standing is even more relaxed in the First Amendment context. "The 'unique standing considerations' in the First Amendment context 'tilt dramatically toward a finding of standing' when a plaintiff brings a pre-enforcement challenge." *Tingley*, 47 F.4th at 1066–67 (quoting *Lopez*, 630 F.3d at 781). The Supreme Court has dispensed with

rigid standing requirements for First Amendment protected speech claims, endorsing a "'hold your tongue and challenge now'" approach, and the Ninth Circuit has held that a chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury. *Id.* at 1067 (citation omitted).

The same is true for vagueness claims. "[W]here the effect of a vague statute would infringe upon a party's First Amendment rights, standing requirements to challenge the statute under the Fourteenth Amendment Due Process Clause are broader than they otherwise might be." *Arce v. Douglas*, 793 F.3d 968, 987 (9th Cir. 2015). A plaintiff may establish injury in fact by alleging a vague statute imperils a plaintiff's liberty because violating the statute could result in imprisonment. *Issacson*, 84 F.4th at 1099.

### 1.    Plaintiffs meet the pre-enforcement standard for showing injury in fact.

In *Babbitt v. United Farm Workers National Union*, the U.S. Supreme Court considered a pre-enforcement challenge to a statute making it an unfair labor practice to encourage consumers to boycott an "'agricultural product by the use of dishonest, untruthful and deceptive publicity.'" 442 U.S. 289, 301 (1979) (citation omitted). The Court found that the law "on its face proscribe[d] dishonest, untruthful, and deceptive publicity." *Id.* at 302. It was sufficient that the plaintiff "actively engaged in consumer publicity campaigns in the past" and alleged "an intention to continue"

those campaigns. *Id.* at 301. In *Babbitt,* the plaintiffs did not even "plan to propagate untruths," but argued "'erroneous statement is inevitable in free debate.'" *Id.* (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 271 (1964)). The Court found this sufficient because the conduct the plaintiffs wanted to engage in would place them in the path of enforcement.

The district court performed a thorough review and found the same to be true here. Plaintiffs alleged that their past and desired future activities are affected with a constitutional interest proscribed by the newly enacted statute. 1-ER-039–047. Specifically, the district court found that "Idaho Code Section 18-623 causes Plaintiffs to self-censor their speech and expressive activities due to fear of prosecution in violation of the First Amendment, and because the statute is unconstitutionally vague in violation of the Fourteenth Amendment." 1-ER-036. The district court also properly found that the new law—which gives the Attorney General enforcement authority—puts the Plaintiffs in the path of law enforcement.

### 2.    Defendant's mens rea argument is frivolous.

Defendant has previously recognized that what Plaintiffs have done in the past, and desire to keep doing, would meet the mens rea requirements of the statute. 1-ER-037; 3-ER-261 (describing Plaintiffs' declarations of how they wish to continue their past activities as "clear" evidence "that Plaintiffs want to violate the specific intent requirement"). Now, Defendant reverses course and argues that

- 21 -

Plaintiffs have neither demonstrated a concrete plan to violate the law nor identified past instances of conduct that violate the law's mens rea requirements. Appellant's Br. at 30.[5] Such an argument is simply frivolous. There is no shortage of support that Plaintiffs' past conduct has likely met the vague and convoluted mens rea requirement. For instance, NWAAF pled that it does not seek or obtain parental consent, and it provides assistance regardless of whether parents may or may not know about or approve of its support of these minors. 4-ER-452, ¶ 47. It wishes to continue the assistance it provided in the same way. 4-ER-453, ¶¶ 49–51. IIA pled that it has provided assistance "with awareness that the pregnant minor's parents do not know about the minor's intent to seek abortion care" and wishes to continue to do so in the future. 4-ER-454, ¶ 55. Plaintiff Matsumoto shared a desire to act as she had regardless of whether minors' parents know or do not know. 4-ER-408–09, ¶ 47; 4-ER-409, ¶ 53. Considering how Defendant has argued the mens rea requirements, Defendant's argument lacks merit. *See, e.g.*, 2-ER-111 (suggesting a court would look to see if a person had "a pattern in over and over and over again of purposely not informing the parents" to establish mens rea).

---

[5] Citations to Appellant's Opening Brief, throughout, are to the page number in the document as a whole as set out at the top of each page, not the page number of the briefing.

- 22 -

### 3. Defendant is the final stop for enforcement and there is a threat of prosecution from his office.

The statute clearly gives Defendant statewide prosecution authority. The enforcement "buck" stops with the Attorney General. *See supra,* Statement of the Case, § III. As the district court explained, "Attorney General Labrador has not disavowed his authority to prosecute Plaintiffs under the statute if any county prosecutor refuses to do so, or refers a case." 1-ER-053 (citing *Holder v. Humanitarian Law Project*, 561 U.S. 1, 16 (2010) (government's non-disavowal of future enforcement is a relevant factor in determining standing)); *see also* 2-ER-131–32. This situation is different from cases like *Thomas v. Anchorage Equal Rights Commission*, where a law went unenforced for 25 years, making it questionable whether those plaintiffs were truly in the path of enforcement. 220 F.3d 1134 (9th Cir. 2000). And the history of enforcement is entitled to "little weight," where, as here, "the challenged law is relatively new and the record contains little information as to enforcement." *Tingley*, 47 F.4th at 1069 (cleaned up) (citing *Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2021)). This suit immediately followed the enactment of the law, and the Attorney General published his legal opinion about Idaho Code § 18-623 prior to its enactment. In that opinion he specifically recognized his prosecutorial authority under the law and expressed his intent to use this authority despite its clear constitutional flaws. 1-ER-054; 4-ER-397.

### B. Plaintiffs' harms are traceable.

Defendant clearly misunderstands the traceability requirement. Contrary to Defendant's assertion, *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013), did not create a rule that "[i]f Plaintiffs challenge one law arguably connected to their alleged injury but fail to challenge other laws that would also cause that same injury, they have not shown a traceable injury." Appellant's Br. at 32. The challenged act in that case was a surveillance provision of the Foreign Intelligence Service Act. There, standing depended upon a "speculative chain of possibilities." *Clapper*, 568 U.S. at 414. One of the links in the chain of possibilities upon which the theory of standing rested was speculation that the government would choose to target the respondents under that surveillance provision instead of utilizing one of its "numerous other methods of conducting surveillance." *Id.* at 412–13. The Court did not require future plaintiffs to challenge every statute under the sun that could conceivably cause them harm in order to prove traceability. In any event, Plaintiffs have sufficiently alleged that their injuries can be traced to the Abortion Travel Ban specifically—they do not have to rely on speculation like the respondents did in *Clapper*.

Like the inquiry above, the district court correctly concluded that Plaintiffs' injuries are fairly traceable to Idaho Code § 18-623. *See* 1-ER-055–56. To establish traceability, "'there must be a causal connection between the injury and the conduct

complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Mecinas v. Hobbs*, 30 F.4th 890, 899 (9th Cir. 2022) (quoting *Lujan*, 504 U.S. at 560). Here, the district court found that "Plaintiffs' alleged injury—violation of their First and Fourteenth Amendment rights—stems from their legitimate fear of prosecution by Attorney General Labrador if they engage in their past and intended future activities of assisting Idaho minors with obtaining legal abortion services without the knowledge or consent of the parents or guardians." 1-ER-055. Again, Idaho Code § 18-623 expressly grants Defendant the authority to prosecute, Defendant has not disavowed his authority or willingness to prosecute under the statute, and Defendant has indicated his intention to punish those who travel or assist others in travel for abortion. *See* 1-ER-053–54. Plaintiffs' injuries are thus fairly traceable to the credible threat of enforcement of Idaho Code § 18-623.

## C.    Plaintiffs' harms are redressable.

The district court also correctly determined that Plaintiffs' injuries would likely be redressed by a favorable decision. 1-ER-056. "A plaintiff meets the redressability requirement if it is likely, although not certain, that his injury can be redressed by a favorable decision." *Wolfson v. Brammer*, 616 F.3d 1045, 1056 (9th Cir. 2010). Plaintiffs meet this threshold. The injunction alleviates Plaintiffs' "genuine concerns of being prosecuted by Defendant for exercising their

constitutionally protected rights." 1-ER-056; *Wolfson*, 616 F.3d at 1056 (finding the redressability requirement met because "defendants have the power to discipline [plaintiff] and, if they are enjoined from enforcing the challenged provisions, [plaintiff] will have obtained redress in the form of freedom to engage in certain activities without fear of punishment").

Defendant argues that an injunction will not redress any injury that Plaintiffs have because no county prosecutor is enjoined from enforcing the law and because, in Defendant's view, Plaintiffs' desired conduct violates other criminal statutes. Defendant cites no authority for the assertion that an injury is not redressable if a plaintiff could be prosecuted under other statutes, *see* Appellant's Br. at 34–35, and misconstrues the redressability requirement of standing. Instead, the district court correctly observed that Plaintiffs are "not required to solve all roadblocks simultaneously and [are] entitled to tackle one roadblock at a time." 1-ER-057 (quoting *Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d 983, 993 (9th Cir. 2012)).

Plaintiffs' redressability burden is relatively modest, *Renee v. Duncan*, 686 F.3d 1002, 1013 (9th Cir. 2012), and they need not show that a favorable decision will redress *every* injury, *Massachusetts v. E.P.A.*, 549 U.S. 497, 525 (2007) (quoting *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982)). Plaintiffs have exceeded this

- 26 -

required showing: an injunction redresses their injury of not being able to engage in protected speech and conduct for fear of prosecution by the Attorney General.

**D.    Defendant's allegations of Plaintiffs' "criminality," while irrelevant, are also baseless.**

Defendant's numerous distractions and efforts to obfuscate the issue do not change the sufficient showing from Plaintiffs. Defendant's argument that Plaintiffs' conduct violates other Idaho criminal statutes is neither relevant nor accurate. Defendant's argument further underscores his threat to prosecute them. Whether Plaintiffs' past conduct, and the conduct in which they would continue to engage absent uncertainty over Idaho Code § 18-623, violates other statutes is not at issue in this case. Plaintiffs only wish to engage in legal, constitutionally protected conduct. They challenge only Idaho Code § 18-623.

Nor is Defendant correct when he argues Plaintiffs have violated the other statutes he identifies. For example, Defendant claims that Plaintiffs' actions in assisting a minor access a legal abortion already violate Idaho Code § 18-4506, child custody interference. This argument misunderstands Idaho Code § 18-4506, the purpose of which is to address issues of custody interference in divorce, domestic violence, and parental alienation situations. *See, e.g.*, *State v. Levicek,* 131 Idaho 130 (1998) (appeal on restitution amount in case where father pled guilty under § 18-4506 after improperly taking his daughter out of the United States). The other

- 27 -

statutes Defendant cites are equally inapplicable. Idaho Code § 18-1509, child enticement, and Idaho Code §§ 18-4501, *et seq.,* kidnapping, both prohibit conduct that is deceptive or against the victim's will. The circumstances surrounding Plaintiffs' past and desired future actions do not involve deception, holding a person against their will or forcing them to make a decision they do not want to make. To the contrary, Plaintiffs seek to help minors by sharing information and providing practical support for individuals who are, but do not wish to be, pregnant and who actively seek out Plaintiffs' assistance. Moreover, should any individual run afoul of the state's kidnapping statute, Defendant has been and remains free to prosecute those persons.

Finally, that Defendant would conclude from Plaintiffs' declarations and arguments, and nothing more, that Plaintiffs have violated criminal statutes not at issue raises significant concern about Defendant's role in prosecuting any crimes. Certainly, he knows that only evidence admissible in court that proves every element of an offense beyond a reasonable doubt shows that a person has violated a criminal statute. Defendant purports to rely on far less here.[6] And, at any rate, Defendant's

---

[6] Of equal concern here is Defendant's reference to and argument regarding two criminal cases currently pending in Bannock County, Idaho. Appellants' Br. at 18-19. Those cases are outside the record, do not involve charges under 18 U.S.C. § 623, have not been resolved, and even by Defendant's description, do not involve facts similar to Plaintiffs' prior and intended future conduct. Defendant's strongly

unsupported opinion that Plaintiffs violated another criminal statute has no impact on their standing here.

## II.     The Attorney General has express enforcement authority under Idaho Code § 18-623(4), and is not entitled to Eleventh Amendment immunity.

Ninth Circuit precedent forecloses Defendant's argument that he is entitled to immunity under the Eleventh Amendment. A state officer's Eleventh Amendment immunity from suit is subject to an exception under *Ex parte Young*, 209 U.S. 123 (1908), for claims that seek prospective declaratory or injunctive relief where the state officer has "some connection with enforcement of the act." *Mecinas*, 30 F.4th at 903–04 (internal quotation marks and citation omitted); *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004). Nothing more is required.

---

worded commentary on the above-referenced cases begs the question, is Defendant involved in those cases or does he plan to become involved soon? Although the deputy prosecutor in those cases has explicitly stated that "the Idaho Abortion Trafficking statute is not implicated," Saleen Martin, *Idaho mother, son face kidnapping charges in 15-year-old girl's abortion in Oregon*, USA Today (Nov. 8, 2023), https://www.usatoday.com/story/news/nation/2023/11/08/idaho-family-oregon-abortion-kidnapping-sex-crime-charges/71435859007/, what remains to be seen is whether Defendant interprets that prosecutor's statement as a refusal to enforce Idaho Code § 18-623 and thus plans to do so himself. Of equal concern is Defendant's reference to the persons charged in those cases as "traffickers," Appellants' Br. at 19, even though they have not been convicted and currently enjoy, as all criminal defendants do at this stage, the presumption of innocence.

### A. This case is a prime example of an appropriate exception to *Ex parte Young.*

The connection under *Ex parte Young* demands "merely that the implicated state official have a relevant role that goes beyond 'a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision.'" *Mecinas*, 30 F.4th at 903–04 (quoting *Wasden*, 376 F.3d at 919). The requisite connection exists for a state attorney general where the attorney general can "direct, in a binding fashion, the prosecutorial activities of the officers who actually enforce the law or bring his own prosecution." *Wasden*, 376 F.3d at 919. Concurrent legal authority to prosecute is sufficient to establish a connection with enforcement of the act being challenged. *Id.*

Idaho Code § 18-623(4) provides that the Idaho attorney general, at his sole discretion, has the authority to prosecute a person for a violation of the statute if the county prosecutor does not do so. Idaho Code § 18-623(4). As the district court properly held, that is sufficient for the exception from *Ex parte Young* to apply. 1-ER-026–27. This express statutory authority is far more than a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision. It is a direct role in enforcing the statute and ensures that county prosecutors alone cannot make the discretionary decision not to prosecute. The buck stops with the Attorney General. The *Ex parte Young* exception as interpreted by the Ninth Circuit is met. This Court should affirm.

- 30 -

**B.    Defendant's arguments about *Ex parte Young* lack merit.**

Defendant nonetheless makes three other arguments that the *Ex parte Young* exception should not apply, none of which undercut the district court's analysis. Those arguments also lack merit. First, Defendant focuses on an application of *Ex parte Young* that was not the basis of the district court's decision. Appellant's Br. at 24–25. Defendant contends that under Idaho statutes that outline the attorney general's authority, the attorney general lacks general criminal enforcement authority. *Id.* at 24. Defendant argues that in limited and specific circumstances he can assist a county prosecutor but that such assistance requires a number of steps, including a prosecutor making a request to the attorney general that the attorney general accepts. *Id.* at 24–25. Defendant argues that none of that has happened here.

Neither Plaintiffs below nor the district court in finding that Attorney General Labrador is a proper defendant relied on the general Idaho statutes that set out the attorney general's authority. 1-ER-027. The district court made clear that the express authority set out in Idaho Code § 18-623(4) was the basis for its finding that the *Ex parte Young* exception applied. *Id.*

Nonetheless, even absent the specific provision in the statute, *Wasden* makes clear that the attorney general is a proper defendant here under Idaho statutes that generally outline his duties. In *Wasden*, Planned Parenthood of Idaho sued the Idaho attorney general and the Ada County prosecutor to enjoin enforcement of an Idaho

- 31 -

abortion restriction. 376 F.3d at 914–15. The attorney general claimed that he was immune from suit under the Eleventh Amendment on the grounds that he did not "hav[e] authority to enforce any part of the statute." *Id.* at 919. This Court noted that pursuant to the Idaho statute that outlines the duties of the attorney general, Idaho Code § 67-1401(7), "the attorney general may 'assist' county prosecutors in a 'collaborative effort,' but may not 'assert[] dominion and control' over prosecutions against the county prosecutor's wishes." 376 F.3d at 919 (quoting *Newman*, 922 P.2d at 399–401). "However, and determinatively here," this Court continued, "unless the county prosecutor objects, '[t]he attorney general may, in his assistance, *do every act* that the county attorney can perform.'" *Id.* at 920 (quoting *Newman*, 922 P.2d at 399). In other words, in assisting a county prosecutor, "the attorney general may in effect deputize himself … to stand in the role of [the] county prosecutor, and in that role exercise the same power to enforce the statute the prosecutor would have. That power demonstrates the requisite causal connection for standing purposes" and "[f]or the same reasons," both the attorney general and the county prosecutor were "properly named [defendants] under *Ex parte Young*." *Id.*

*Wasden* continues to provide governing precedent here, even aside from the specific provision in Idaho Code § 18-623(4). The relevant portion of Idaho Code § 67-1401(7) analyzed in *Wasden* is unchanged today; thus, Defendant retains the power—by assisting a county prosecutor—to enforce the criminal penalties of Idaho

- 32 -

criminal statutes. *Wasden*, 376 F.3d at 920. The "assisting" power of the attorney general under clearly established Ninth Circuit precedent is sufficient to demonstrate the "requisite causal connection" for the Idaho attorney general to be a properly named defendant under *Ex parte Young* where, as here, a criminal statute creates a risk of prosecution.

Second, Defendant argues that enjoining him from enforcing Idaho Code § 18-623(4) does not provide any relief to plaintiffs. He argues that "[s]ince Idaho law grants enforcement authority to county prosecutors, and they are not parties to this case, enjoining the Attorney General offers Plaintiffs no relief." Appellant's Br. at 25. This argument goes to traceability and redressability, *Wasden*, 376 F.3d at 919; *Mecinas*, 30 F.4th at 903, which is addressed *supra,* Argument § I B, C. But, again, the statute makes clear that the attorney general has express statutory authority to prosecute where a county prosecuting attorney refuses to do so. Thus, in a situation where Plaintiffs would not face prosecution from a county prosecutor, they could still face prosecution from the attorney general—at his sole discretion. And Defendant has made clear that he views Plaintiffs as criminals who have violated multiple Idaho statutes, Appellant's Br. at 19–20, and are thus appropriate targets of prosecution under Idaho Code § 18-623(4). Defendant has also taken outlier positions in favor of applying Idaho's abortion laws to lawful abortion care, increasing the threat that he will use this new authority. 4-ER-391–93. And he has

- 33 -

not disavowed his authority to prosecute. 2-ER-131–32.

Finally, citing his own Attorney General Opinion, AG Opinion 23-01,[7] Defendant forwards the same argument made (and rejected) below that he has disavowed any authority to deputize himself to prosecute criminal laws in the absence of a county prosecutor's request for assistance. Appellant's Br. at 27. He argues that under *Ex parte Young*, Plaintiffs must show a "real likelihood" that the Attorney General will employ his authority "against plaintiffs' interests." *Id.* Defendant argues that because he has no independent prosecutorial authority, and has disavowed any authority to deputize himself, Plaintiffs cannot make this showing because his authority rests on other, independent public officials first making the decision not to prosecute. *Id.* at 27–28.

This argument fails for three reasons. First, it ignores the plain language of Idaho Code § 18-623(4). Second, the fact that no case has yet presented itself where a county prosecuting attorney has declined prosecution of conduct that falls under Idaho Code § 18-623, does not preclude a *pre-enforcement* challenge naming the attorney general. *See Susan B. Anthony List*, 573 U.S. at 159 (pre-enforcement challenge proper where the plaintiffs demonstrated "'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by

---

[7] AG Opinion 23-01 is different from Defendant's opinion issued to the Idaho State Legislature regarding the constitutionality of Idaho Code § 18-623.

a statute, and there exists a credible threat of prosecution thereunder'" (citation omitted)). Here, Defendant apparently concedes that Plaintiffs adequately express an intent to engage in conduct arguably in violation of the statute, and he expresses his opinion that they have already violated a number of other Idaho statutes. Appellant's Br. at 19–20. Thus, Defendant also makes clear that he will employ his authority against Plaintiffs' interest.

Finally, as the district court pointed out, AG Opinion 23-01, as well as the Attorney General's briefing and argument below, support a finding that the *Ex parte Young* exception applies. 1-ER-029–30. The district court stated that AG Opinion 23-01

> was written in response to a request related to a different statute, Idaho Code Section 18-622, not Idaho Code Section 18-623.[ ] In distinguishing the two statutes, the opinion expressly recognizes that the Idaho Legislature has conferred prosecutorial authority to the Attorney General to prosecute violations of Idaho Code Section 18-623 if the county prosecuting attorney refuses to do so. [ ] Defendant's briefing likewise recognizes the existence of the Attorney General's prosecutorial authority, albeit couched as a "limited legislative grant of prosecutorial authority." [ ] Further, during the hearing, defense counsel conceded that Attorney General Labrador has <u>not</u> disavowed his authority to prosecute should either circumstance provided for in the statute present itself. [ ] It is self-evident from AG Opinion 23-1, the plain language of the abortion trafficking statute, and Defendant's own arguments in this lawsuit, that the Attorney General does in fact possess the authority to prosecute violations of Idaho Code Section 18-623, under certain conditions.

1-ER-029–30. Attorney General Labrador is a proper defendant.

- 35 -

### III.   The district court properly enjoined the Attorney General from enforcing Idaho Code § 18-623.

A party seeking a preliminary injunction must establish: (1) a likelihood of success on the merits; (2) likely irreparable harm in the absence of a preliminary injunction; (3) that the balance of equities weighs in favor of an injunction; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). When the government is a party, the last two factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

The district court used this legal standard, 1-ER-024, 1-ER-062, and properly applied it. The district court found that Idaho Code § 18-623 is a content-based regulation of protected speech and expression (1-ER-063); that it "substantially affects Plaintiffs' First Amendment activities and is sweepingly overbroad" (1-ER-063, n. 20); that "the number of impermissible unconstitutional applications swept up in the statute's proscriptions are substantial when viewed in relation to the statute's stated purpose of protecting parental rights" (1-ER-067); and that "the statute's proscriptions are not narrowly tailored to serve a compelling government interest" (1-ER-067). The district court further found that Idaho Code § 18-623 fails to provide fair notice or an ascertainable standard of what is and what is not abortion trafficking. 1-ER-069. The district court did not abuse its discretion in entering preliminary injunctive relief.

- 36 -

**A.    Plaintiffs are likely to succeed on the merits of their First and Fourteenth Amendment claims.**

**1.    The district court properly found that Plaintiffs are likely to succeed on the merits of their claim that Idaho Code § 18-623 infringes on their First Amendment rights.**

There should be no doubt that Idaho Code § 18-623, on its face, improperly targets Plaintiffs' protected First Amendment activities, activities they have engaged in previously and, but for the specter of prison time threatened by this statute, would still be engaging in. As the district court correctly held, Idaho Code § 18-623 "plainly prevents Plaintiffs from engaging in their intended protected activities." 1-ER-044. The statute is a content-based infringement on numerous aspects of Plaintiffs' First Amendment rights: speech, expressive conduct, and association. *See, e.g.*, *Boy Scouts of Am. v. Dale,* 530 U.S. 640, 647–48 (2000) (recognizing that the First Amendment protects a right to associate with others in pursuit of commonly held ends); *Texas v. Johnson*, 491 U.S. 397 (1989) (recognizing that conduct may be communicative and fall within the protection of the First Amendment); *Bigelow v. Virginia*, 421 U.S. 809 (1975) (finding that Virginia newspaper could publish advertisements for abortion care legal in another state).

As Plaintiffs have shown a likelihood of success on the merits of their claims, they are entitled to the continuing protection of the preliminary injunction issued by the district court as the case is litigated.

### a. Idaho Code § 18-623 targets speech, expressive conduct, and association based on content, and thus is subject to strict scrutiny.

Idaho Code § 18-623 is aimed at speech, expressive conduct, and association. Defendant's arguments lean heavily on *Spirit of Aloha Temple v. County of Maui,* 49 F.4th 1180 (9th Cir. 2022), but fail, because Idaho Code § 18-623 "'seeks to regulate spoken words'" and "'significantly restricts opportunities for expression,'" and therefore can be subject to a facial challenge. 49 F.4th at 1188. Idaho Code § 18-623 has "'a close enough nexus to expression, or to conduct commonly associated with expression, to pose a real and substantial threat of the identified censorship risks.'" *Spirit of Aloha,* 49 F.4th at 1188 (citation omitted); *cf.* Appellant's Br. at 36.

Idaho Code § 18-623 directly targets Plaintiffs' speech, based on the content of what they are saying, when it forbids "recruiting" a minor. While the term is undefined by the statute, it is clear from Defendant himself that Plaintiffs' actions could be in violation of the "recruiting" prohibition of Idaho Code § 18-623 purely through speech. At the hearing before the district court, in answer to the court's question, "[H]ow do you recruit someone without speech?" Defendant responded, "Well, again, it could be through speech." 2-ER-114. Although, at the same hearing, Defendant also said that "simply talking" would not be "obtaining" or "procuring" an abortion. 2-ER-108; *see also* 2-ER-122.

And regardless of Defendant's shifting assertions, and as the district court noted, Plaintiffs' constitutional rights do not depend on Defendant's changing ideas about what First Amendment protections Plaintiffs may have. 1-ER-031, n. 11; *Doe v. Harris*, 772 F.3d 563, 580–81 (9th Cir. 2014) ("[T]he promise from the State that it will use the power appropriately is not sufficient: '[T]he First Amendment protects against the Government; it does not leave us at the mercy of *noblesse oblige*. We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly.'" (citation omitted)); *Spirit of Aloha*, 49 F.4th at 1192 ("We are not bound by officials' promises that they will enforce the guidelines responsibly."). Prohibitions on speech because that speech supports the decision to have an abortion, is an unconstitutional abridgement of Plaintiffs' First Amendment rights. *See Planned Parenthood of Kan. & Mid-Mo., Inc. v. Nixon*, 220 S.W.3d 732, 741 (Mo. 2007) (recognizing that providing information about abortion is core protected speech).

It is further clear that, regardless of Defendant's assertions at oral argument, "procure" and "obtain" target speech, too. This is evidenced by the language of the statute. Idaho Code § 18-623 carves out an exception from its proscriptions on communicating and supporting pregnant minors seeking legal health care when it states: "[a]s used in this subsection, the terms 'procure' [an abortion] and 'obtain' [an abortion-inducing drug] shall not include the providing of information regarding

- 39 -

a health benefit plan." This leaves all other information—outside of the health plan context—subject to prohibition including information about lawful abortion or expressing support.[8]

As the Supreme Court has stated, First Amendment rights are violated when one's choice is to either speak as the state demands (in the instant case, against reproductive freedom for minors), or face sanctions for expressing a contrary belief (in the instant case, how abortion health care can be accessed). *See 303 Creative LLC v. Elenis*, 143 S. Ct. 2298 (2023).[9] As the district court aptly noted, "the statute's restriction on 'recruiting' squarely quashes Plaintiffs' speech and expression about abortion as a viable and legal reproductive option." 1-ER-064.

Likewise, Idaho Code § 18-623's prohibitions on communicating with and assisting minors by "harboring" or "transporting" also improperly offend Plaintiffs' First Amendment rights to expressive conduct. These undefined terms seek to prevent Plaintiffs from engaging in expressive conduct solely because of the message these actions communicate: that pregnant minors who choose to avail

---

[8] In essence, this means that an adult, saying the same words that might result in a criminal prosecution in one context, can say those exact same words in another context without criminal consequences. The only difference between those two scenarios is the message being conveyed: in the impermissible example, the speaker is communicating a message of support for reproductive choice, in the second they are not.

[9] As noted by the district court, while *303 Creative* involved compelled speech, the First Amendment principles affirmed by the Supreme Court hold true in the instant case. 1-ER-036.

- 40 -

themselves of abortion health care where it is legal are not alone, and that their choices are deserving of practical and financial support from those, like Plaintiffs, who stand in public solidarity with them. Plaintiffs have long histories of advocating for reproductive justice and that message has been understood by the community, including by pregnant minors who have sought information, financial support and practical assistance from Plaintiffs based on their expressions of support. This is intentional: Plaintiffs' speech and actions are not only undertaken to assist the pregnant people themselves, but also to convey publicly understood messages of reproductive justice solidarity with minors, and with the *community at large*. *See* 4-ER-425, ¶ 11 ("NWAAF also provides these services as a way to let the community know that all pregnant persons, including minors in abusive situations, will have the support of trusted adults."); 4-ER-420, ¶ 56 ("I and IIA also undertake these actions as a visible sign of support and solidarity with the pregnant people, including the pregnant minors, that we serve, that they are not alone and have community support."). Plaintiffs have provided ample evidence proving that they engage in protected expressive activities. *See* 4-ER-418, ¶ 41; 4-ER-425–26, ¶¶ 12–13, 15–17. All Plaintiffs have submitted uncontroverted declarations explaining that their conduct is supportive of the message they intend to convey, and that others rely on that message.

Indeed, as the district court noted, Defendant submitted no counter-

declarations to controvert either the declarations submitted by Plaintiffs or the factual allegations in Plaintiffs' complaint. 1-ER-024, n. 5. And in fact, Defendant has acknowledged that Plaintiffs' declarations clearly provide evidence of their behavior. 4-ER-426, ¶ 18.

Idaho Code § 18-623 also targets Plaintiffs' protected First Amendment associational activity. *Roberts v. U.S. Jaycees,* 465 U.S. 1077 (1984). The Supreme Court has recognized that "'[e]ffective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association.'" *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2382 (2021) (citation omitted). Plaintiffs' expressive activity, which is understood by others to be in furtherance of their beliefs about reproductive integrity, is the basis upon which they attract volunteers and donors and communicate with like-minded others.[10] Without the ability to engage in First Amendment protected activities, Plaintiffs would be unable to communicate their messages in support of reproductive self-

---

[10] Many donors to organizational Plaintiffs are anonymous or wish their support to be private, in recognition of the reality that abortion support in Idaho is an unpopular view and can lead to harassment, and worse. *See* 4-ER-413; 4-ER-418, ¶ 46 ("A majority of our donors are anonymous."). In a case involving a California requirement that charities disclose contact information for certain donors, the Supreme Court acknowledged its long-held belief that, "'[i]t is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association as [other] forms of governmental action.'" *Ams. for Prosperity Found.*, 141 S. Ct. at 2382 (citation omitted).

determination. This would prevent them from associating with other individuals and groups that share their beliefs, however unpopular those beliefs may be. *See* 4-ER-420, ¶ 57. ("We also undertake these actions as a visible sign of support to others, that we serve as trusted community members supporting and centering the needs of our people, including the needs of pregnant minors seeking abortion care in places where that care is legal."). Idaho Code § 18-623 would also prevent both NWAAF and IIA from attracting the donors and volunteers who have supported them based on their message and who fear being prosecuted for their support. *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 108 S. Ct. 2667, 2673 (1988) ("Our prior cases teach that the solicitation of charitable contributions is protected speech[.]"); *see also* 4-ER-418, ¶ 45 ("The ability to provide these types of financial assistance comes through the receipt of unsolicited donations from individuals, as well as from local, regional, and national organizations who, through "word-of-mouth," have become aware of the work we do to ensure abortion care access by members of my community."); 4-ER-427, ¶ 25 ("NWAAF's donors contribute to our organization because they believe in and want to support our work ensuring that individuals in our region, including minors, are able to access abortion care, if that is the choice they make."); 4-ER-427, ¶ 28 ("Our work also relies on the support we have from volunteers, who work with us specifically to support our mission of ensuring that all persons, including minors in Idaho, are able to access the full range of reproductive

- 43 -

options, including abortion care."); 4-ER-409, ¶ 50 ("I have previously provided financial assistance to organizations and funds that support pregnant minors seeking abortions. I am unaware if the parents or guardians of the pregnant minor knew about the abortions that I helped to fund. In the future, I would like to continue to do this[.]").

### b. Defendant presented no evidence to suggest Idaho Code § 18-623 would survive strict scrutiny.

Idaho Code § 18-623 is a content- and viewpoint-based restriction on speech and expression because it targets speech and expression only about abortion, and it targets viewpoints that favor abortion access. Thus, this Court must subject the statute to strict scrutiny. *Roberts*, 468 U.S. at 623. Strict scrutiny requires that a law be narrowly tailored to serve a compelling state interest. *Reed v. Town of Gilbert, Ariz.,* 576 U.S. 155, 163 (2015). The state bears the burden of proving that the law meets this demanding standard. *Pierce v. Jacobsen*, 44 F.4th 853, 862 (9th Cir. 2022). "The State must specifically identify an 'actual problem' in need of solving, and the curtailment of free speech must be actually necessary to the solution." *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 799 (2011) (citations omitted). "[A]mbiguous proof will not suffice," and the state cannot rely on the legislature's "predictive judgment" that such a link exists between the problem and the solution. *Id.* at 799–800.

- 44 -

Defendant makes only passing reference to strict scrutiny in his opening brief to this Court, *see* Appellant's Br. at 41, and has made no attempt to meet his high burden. He has offered no evidence here or before the district court to prove that this law is necessary to protect parental rights. Instead, the district court correctly determined that Idaho Code § 18-623 encompasses "a wide swath of protected activities" and is not "narrowly tailored to serve the state's stated interests in protecting parental rights." 1-ER-065. Idaho Code § 18-623 does not further the right to parent; in fact, parental rights and First Amendment rights "are not competing rights, nor are they at odds. . . . [T]hese rights can co-exist in harmony as they have for decades with existing child protection laws and criminal laws protecting the important rights of parents, while still preserving the fundamental rights of all individuals to due process and freedom of expression." 1-ER-076. Defendant has offered no evidence to this Court or the district court to suggest Idaho Code § 18-623 would survive strict scrutiny.

### c. Defendant cannot skirt the First Amendment by saying the speech is criminal.

Defendant mistakenly conflates acts that he wants to be illegal with acts that are indeed illegal, relying heavily on *United States v. Thompson*, 896 F.3d 155 (2d Cir. 2018), to try and make the case that because Idaho Code § 18-623 uses the word "trafficking" in its title, it can be supported by cases involving actual human

- 45 -

trafficking. *See* Appellant's Br. at 39 (stating that the *Thompson* court's reasoning "is especially instructive" in the instant case).

In *Thompson*, Alvaun Thompson challenged his convictions under, *inter alia*, 18 U.S.C § 1591, as it read then, related to his prostitution and control of two minors. Thompson made a First Amendment associational activity overbreadth challenge, as a third party, on behalf of unnamed charities and family members of victims, who could, he posited, in the future, be prosecuted under Section 1591 for providing practical support to youth engaged in prostitution. In holding that "the specter of unconstitutionality that Thompson sketch[ed was] largely illusory," *Thompson*, 896 F.3d at 163, the court was forced to state the obvious: Section 1591 is violated when a person entices a minor so that they will be caused to engage in an illegal act, *id.* at 167.[11] Here, by contrast, no minor is being controlled and no illegal activity is being pursued. *Thompson* stands in sharp contrast to the case before this Court. Here, Plaintiffs are engaging in expressive activities that are intended to, and do, convey a particular message. Additionally, their activities do not culminate in an illegal act—

---

[11] The *Thompson* court also recognized that associational rights under the First Amendment speak to expressive association, not conduct that is not meant to convey a particular message. 896 F.3d at 164. The court rightly found that to the extent Section 1591 could even be read to restrict organizations providing support to prostituted youth, such activities were "non-expressive." *Id.* at 165. In other words, even assuming that Section 1591 could, by some reading, restrict the ability of a charity to provide meals to youth engaged in prostitution, such conduct would be outside the purview of the First Amendment, as it would not be expressive associational conduct designed to express a viewpoint.

- 46 -

abortion health care is legal in the localities in which that procedure occurs.[12]

Speech about unlawful activity is generally protected by the First Amendment unless: (1) it is commercial speech; (2) it is likely to incite imminent, unlawful action; or (3) it is integral to criminal conduct. *Pittsburgh Press Co. v. Pittsburgh Comm'n on Hum. Rels.*, 413 U.S. 376, 389 (1973); *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) (per curiam); *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949). But procuring an abortion in a state where abortion is legal is not an unlawful activity, and Idaho's legislature cannot make it so. Therefore, the speech restrictions placed by Idaho Code § 18-623, are an effort to stop people from procuring lawful out-of-state abortion care by criminalizing the sharing of information or resources about this lawful conduct.

Idaho Code § 18-623 runs afoul of basic First Amendment principles. The First Amendment protects the right of all people to make their own decisions about "the ideas and beliefs deserving of expression, consideration, and adherence," *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 641 (1994), even when those ideas and beliefs are unpopular. *See 303 Creative*, 600 U.S. 570 (2023). The plain language of Idaho Code § 18-623 demonstrates how the statute infringes on Plaintiffs' First Amendment rights. The district court appropriately dismissed

---

[12] In Washington state, an individual of any age may access abortion services. RCW 9.02.100(2); *State v. Koome*, 84 Wn.2d 901 (1975). In Oregon, the age of consent to abortion is 15. ORS 109.640; *Greenberg v. Myers*, 340 Or. 65 (2006).

Defendant's arguments, because if Defendant's arguments were true, and taken to their natural conclusion, no criminal statute could ever be challenged under the First Amendment.

> **2.    The district court properly found that Plaintiffs are likely to succeed on the merits of their claim that Idaho Code § 18-623 is unconstitutionally vague.**

The government violates the Fourteenth Amendment's due process guarantee through a criminal law that is so vague that it "fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015) (citing *Kolender v. Lawson*, 461 U.S. 352, 357–58 (1983)).

Criminal laws are subject to exacting scrutiny because "[t]he essential purpose of the 'void for vagueness' doctrine is to warn individuals of the criminal consequences of their conduct." *Jordan v. De George*, 341 U.S. 223, 230 (1951). And vagueness concerns are heightened where a statute "threatens to inhibit the exercise of constitutionally protected rights." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc*., 455 U.S. 489, 499 (1982). "[W]hen a statute 'interferes with the right of free speech or of association, a more stringent vagueness test should apply.'" *Holder*, 561 U.S. at 18 (quoting *Vill. of Hoffman*, 455 U.S. at 499). "The operative question under the fair notice theory is whether a reasonable person would know what is prohibited by the law." *Tingley*, 47 F.4th at 1089. "The terms of a law cannot

require 'wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings.'" *Id.* (quoting *Holder*, 561 U.S. at 20).

The vagueness doctrine's restriction on "arbitrary and discriminatory enforcement" demands that laws "provide explicit standards for those who apply them." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). A law that "relies on a subjective standard," or "lacks any ascertainable standard for inclusion and exclusion" is "constitutionally suspect." *Tingley*, 47 F.4th at 1090 (cleaned up); *Edge v. City of Everett*, 929 F.3d 657, 665 (9th Cir. 2019).

The district court, applying these legal standards, properly held that Idaho Code § 18-623 is unconstitutionally vague. 1-ER-067–71. The district court specifically identified why the statute was unconstitutionally vague and cited evidence to support those findings. It did not abuse its discretion.

The district court first concluded that Idaho Code § 18-623 "fails to provide fair notice or ascertainable standard of what is and what is not abortion trafficking." 1-ER-069. It determined that the terms "'recruiting, harboring or transporting' are undefined, overbroad, and vague, making it impossible for a reasonable person to distinguish between permissible and impermissible activities." 1-ER-069. The district court pointed out that the statute's co-sponsor recognized as much during testimony to the Idaho Senate State Affairs Committee. 1-ER-069–70 (citing Senator Todd Lakey's March 27, 2023 Testimony on Idaho H.B. 242 that "recruiting,

- 49 -

harboring, and transporting, those are descriptive words, I guess the court would have to decide if the conduct constitutes one of those three things").

The district court also emphasized that the statute contains no definition for what constitutes "recruiting," and that the explanations provided were inconsistent, and noted Defendant's hearing argument that something more than merely providing information about abortion services is required, listing examples of conduct that he believed could amount to recruiting—offering rides to abortion clinics, paying for an abortion, and encouraging or offering to help an individual get an abortion. 1-ER-070.

The district court also found that the statute's intent to conceal element and affirmative defense were inconsistent and unconstitutionally vague. 1-ER-071. The district court pointed to the Attorney General's own arguments in its briefing and at the hearing to support its finding:

> The lack of clarity in these provisions is best evidenced by Defendant's varied and conflating arguments concerning when culpability attaches. Defendant's briefing asserts the statute's specific intent requirement is violated where the minor's parents are not notified, informed, or have knowledge that their minor child is seeking to procure abortion services. [ ] During the hearing, defense counsel argued that intent to conceal required a union of act and intent determined by looking at the totality of circumstances – suggesting that intent to conceal requires something more than failure to notify the parents and that a parent's knowledge would defeat finding an intent to conceal. [ ]. However, the intent to conceal an abortion turns on the mind of the individual charged, not notification or knowledge of the minor's parent. Further, parental notification or knowledge does not save an individual from being convicted under Idaho Code Section 18-623. The only

- 50 -

affirmative defense to the statute requires that a parent consented to trafficking of the minor. Idaho Code § 18-623(2).

1-ER-071.

The district court identified the correct legal standard and properly applied it. The district court's conclusions were logical and relied on facts in the record.

Defendant argues that the district court erred in its Fourteenth Amendment analysis in three respects: (1) by concluding that the words "recruit, harbor, or transport" were vague because they were not in a definitions section, Appellant's Br. at 45; (2) by ignoring that the words have clear meaning both contextually and from dictionary definitions, Appellant's Br. at 45–46; and (3) because the words are used in other criminal statutes. Appellant's Br. at 46–47. These arguments ignore or misunderstand the district court's opinion.

First, although the district court noted that "recruit, harbor, or transport" are not defined in the statute, that was not the sole basis for its conclusion that the statute, or those terms, were unconstitutionally vague. 1-ER-069–71. Rather, the district court reasoned that the statute lacked a definitions section and was overbroad. The district court also found that the statute was vague because its specific intent element and its affirmative defense were inconsistent and unconstitutionally vague. 1-ER-071.

Second, the district court pointed out that, particularly with respect to "recruiting," that the words did not have clear meaning, either contextually or

- 51 -

through dictionary definitions. 1-ER-071. As set forth above, the district court pointed to the statute's co-sponsor's own statement to support that conclusion. The district court also pointed out that Defendant, in oral argument, provided his own perspective on what would constitute recruiting, and what might not, but that those definitions are not in the statute. 1-ER-071. Where the statute's legislative sponsor and Defendant's counsel cannot agree or offer a consistent interpretation of what recruiting means within the statute, Defendant cannot truly expect Plaintiffs—or any other reasonable person—to do so.

Third, that the words "recruit, harbor, or transport" are used in human trafficking or sex trafficking criminal statutes does not preclude them from being unconstitutional in Idaho Code § 18-623. Abortion care remains legal in the majority of states, including both of Idaho's neighboring states to the west, Oregon and Washington. Traveling to receive abortion care in a state where it is legal is not trafficking. It is simply travel to engage in lawful conduct. Idaho Code § 18-623 is not like a sex trafficking or human trafficking statute. Sex trafficking statutes prohibit conduct that brings vulnerable people, usually women, into the commercial sex trade through some sort of coercion or force. Human trafficking statutes prohibit conduct that forces people into conditions of labor through force, fraud, or coercion. The conduct into which the person is brought is illegal, and it is done in some fashion against the will of the trafficked person. Here, by contrast, Defendant seeks to punish

- 52 -

Plaintiffs who assist pregnant minors obtain *lawful* abortion care the pregnant minor seeks to obtain. Moreover, Plaintiffs, unlike sex traffickers, are not scouting for vulnerable young women to bring into illegal activity. The people they assist in obtaining abortions seek Plaintiffs' assistance. Idaho Code § 18-623 purports to criminalize conduct that is lawful in the state where it occurs. It is in that context, which is unlike the human trafficking or sex trafficking context, that "harboring," "recruiting," and "transporting" are unconstitutionally vague. Plaintiffs, and other adults who wish to assist pregnant Idaho minors, must discern how or when ordinary acts of assistance become "harboring," "recruiting," and "transporting" for purposes of the statute.

Moreover, the statute prohibits procuring an abortion or obtaining medication abortion "by" recruiting, harboring or transporting. All terms that make no sense when modifying assistance for lawful abortion. Defendant chides the district court's statement that "abortion trafficking" is not a thing, but these words simply have no meaning in the form they are presented. Additionally, the intent to conceal, as described supra, Statement of the Case § II, has no clear meaning as evidenced by the many inconsistent meanings it has been given.

Finally, Defendant argues that the district court erred in its Fourteenth Amendment analysis because Plaintiffs, by arguing for purposes of standing that they intend to engage in conduct proscribed by the law, admit that Idaho Code § 18-

623 is not vague as applied to their intended conduct. Appellant's Br. at 43. Plaintiffs, of course, make no such admission, and the case Defendant cites is inapposite. Plaintiffs describe, in detail, the activities that they previously have engaged in, their desire to continue to engage in them, and their concern that if they do so, they may be prosecuted. They allege that they are unsure what the statute proscribes, so they intend to refrain from their usual activities for fear of prosecution. *See* 4-ER-404, ¶ 11; 4-ER-408–09, ¶ 47; 4-ER-409, ¶ 48; 4-ER-451, ¶ 41; 4-ER-451–52, ¶ 43; 4-ER-425–26, ¶¶ 16–20.

### B.    Plaintiffs will be irreparably harmed absent preliminary injunctive relief that prevents constitutional injury.

"Irreparable harm is relatively easy to establish in a First Amendment case." *CTIA – The Wireless Ass'n v. City of Berkley, Cal.*, 928 F.3d 832, 851 (9th Cir. 2019). "'The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury[.]'" *Planned Parenthood GNW v. Labrador*, No. 1:23-cv-00142, 2023 WL 4864962, at *22 (D. Idaho July 31, 2023) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Where a plaintiff establishes "a colorable First Amendment claim, they have demonstrated that they likely will suffer irreparable harm." *Am. Beverage Ass'n v. City & Cnty. of S.F.*, 916 F.3d 749, 758 (9th Cir. 2019) (citing *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014)).

Each plaintiff wishes to be able to speak and act freely on a matter of paramount importance to them and on which they have publicly held themselves out

- 54 -

for years preceding enactment of Idaho Code § 18-623. They wish to continue to hold themselves out in alignment with their missions, they wish to continue soliciting public support for these missions, they wish to continue to provide information, money, and practical support in accordance with their missions, and they wish to continue to associate freely with others who share their viewpoint. And they wish to do this for all persons, including minors who may be survivors of violence, who may not have trusted adults in their lives, and who may be in danger. *See* 4-ER-408, ¶ 43 ("I want to be able to provide reliable advice, including advice about abortion, to pregnant minors and to those who want to support them. I know that it is not always safe for minor survivors or for me to seek or obtain parental consent."); 4-ER-425, ¶ 11 ("NWAAF also provides these services as a way to let the community know that all pregnant persons, including minors in abusive situations, will have the support of trusted adults."); 4-ER-417, ¶ 34 (noting the IIA provides support for Indigenous women and girls who are victims of gender-based violence that results in pregnancy). As the district court recognized, Plaintiffs intended communicative activities fall within the protection of the U.S. Constitution. 1-ER-038–39 ("[T]he assistance and supportive activities Plaintiffs provide to pregnant minors clearly encompass expressive activity in furtherance of Plaintiffs' beliefs, missions, and purposes."). The injunction is allowing Plaintiffs to engage in this assistance without fear of the Defendant prosecuting and the irreparable harm is

clearly in the self-censoring that has followed the adoption of this law.

### C. The balance of equities and public interest weigh in favor of enjoining the statute and preventing constitutional injury.

The district court properly found that the balance of equities and public interest weigh in favor of granting preliminary injunctive relief to prevent constitutional injury. 1-ER-071–72. It determined that Plaintiffs had made strong showings that Idaho Code § 18-623 violated their First Amendment rights and that it was unconstitutionally vague. "It is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (internal quotation marks and citations omitted). Moreover, where, as here, Plaintiffs raise serious First Amendment questions, the balance of hardships tips sharply in Plaintiffs' favor. *Am. Beverage Ass'n*, 916 F.3d at 758 (citing *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007)). There is significant public interest in upholding First Amendment principles. *Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468 (9th Cir. 2022) (citing *Doe*, 772 F.3d at 583).

The district court weighed those interests against that asserted by Defendant in protecting parental rights. In concluded that that right, "while important, cannot be advanced by enacting and enforcing an unconstitutional statute . . . the determination here is based on the strong showing that the statute does not pass constitutional muster and, as such, cannot be upheld even if it was intended to

- 56 -

promote and secure recognized and important parental rights and interests." 1-ER-074–75.

On appeal, Defendant provides no reason for this Court to find that the district court abused its discretion. It simply repeats the rights it asserted below, and dismisses the rights asserted by Plaintiffs, rights the district court found Idaho Code § 18-623 violated. Appellant's Br. at 50. Defendant makes no argument that its asserted interests outweigh the interest in not enforcing an unconstitutional statute. Thus, preliminary injunctive relief was proper.

## CONCLUSION

This Court should affirm the district court in all respects.

DATED:  January 17, 2024.

STOEL RIVES LLP

/s/ Wendy J. Olson

Wendy J. Olson

LEGAL VOICE

/s/ Wendy S. Heipt

Wendy S. Heipt
Kelly O'Neill

THE LAWYERING PROJECT

/s/ Jamila A. Johnson

Jamila A. Johnson
Paige Suelzle

*Attorneys for Appellees*

## CERTIFICATE OF COMPLIANCE

9th Circuit Case No.:   23-3787

I am the attorney representing Appellees.

**This brief contains 13,711 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f).  The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief complies with the word limit of Cir. R. 32-1.

January 17, 2024.

/s/ Wendy J. Olson
Wendy J. Olson

- 59 -

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 17, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following person:

James E.M. Craig
james.craig@ag.idaho.gov

Cristina Sepe
cristina.sepe@atg.wa.gov

Emma Grunberg
Emma.grunberg@atg.wa.gov

Emily MacMaster
emily@macmasterlaw.com

/s/ Wendy J. Olson
Wendy J. Olson

- 60 -